FILED

2003 DEC 15 A 9:40

DISTRICT COURT
[ILLEGIBLE] CT

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBRA COSENTINO, ET AL, | : | 301CV2129 (AVC) |
| Plaintiffs, | : | |
| v. | : | |
| PITNEY BOWES, INC. and | : | CONSOLIDATED CASES |
| IMAGISTICS INTERNATIONAL, INC., | : | |
| Defendants. | : | |
| | : | December 12, 2003 |

**AFFIDAVIT OF PLAINTIFFS'
COUNSEL IN SUPPORT OF CONSENT
MOTION FOR EXTENSION OF TIME**

Now Comes WILLIAM B. BARNES, who having first being duly sworn, does hereby depose and say:

1. I am over the age of eighteen years and understand the obligation of an oath.

2. I am an attorney admitted to practice in the State of Connecticut and before this court. I was admitted to the Connecticut bar in 1979, to the bar of this court in 1980, to the bar of the Second Circuit Court of Appeals in 1983 and to the United States Supreme Court bar in 1991. I have twenty-three years of experience in federal litigation.

1

3. I represent the plaintiffs herein. I am familiar with the facts and circumstances of these five consolidated cases.

4. Rosenstein & Barnes is a small law office consisting of two attorneys, a full time secretary, a clerk working thirty hours a week and a part time IT manager.

5. This affidavit is made in support of Plaintiffs motion to extend time to respond to Defendants' motion for summary judgment.

6. On Dec. 11, 2003 I spoke with Atty. Lawrence Peikes, counsel for the Defendants in this action, on the telephone. I asked him if he had any objection to an extension of time until Jan. 16, 2004, for Plaintiffs to respond to the Defendants' motion for summary judgment. He said that Defendants did not object to the motion.

7. The memorandum in support of Defendants' summary judgment motion has 34 pages and is accompanied by 436 pages of affidavits and other exhibits. This is not the entire record. There are, by counsel's count, 1817 pages of deposition transcript as well as several thousand pages of other transcript and documents. I have spent many hours searching the record, discussing the issues and the record with the Plaintiffs, and

drafting the Plaintiffs' reply memorandum and Rule 56(a)2 statement.

8. Due to unanticipated circumstances beyond my control, further described below, I have had a large amount of other work to accomplish during the period in which I would have to prepare the summary judgment response in this case. I am working on two other large Title VII cases. I am involved in active discovery in several large cases, including a multi-plaintiff ERISA denial of benefits case pending before Judge Goettel with a December discovery cutoff date. I am scheduled to begin a trial on breach of contract and civil rights claims in the New Haven Superior Court in January, 2004, and a sexual harassment trial in Bridgeport Superior Court in early March, 2004.

9. Three of the five Plaintiffs have full time jobs. It is hard for me to see them during the working hours. One Plaintiff works at night. I see the Plaintiffs at night and on weekends. This has delayed completion of Plaintiffs' reply to Defendants' summary judgment motion.

10. The ability of my office to meet court deadlines, process work in a normal manner, and retrieve information about court matters, was disrupted due to circumstances which were not

only beyond my control, but the full dimensions of which were unknown to me until after Oct. 1, 2003.

11.  In the summer of 2003 I realized that one of my long time employees had just stopped working.  She did not perform the tasks assigned to her and took extensive personal time.  She left the office early and even failed to show up for work altogether.  This individual had worked for me for almost ten years.  She had never acted like this before.  I spent July, August and September trying to improve the situation and get the employee back on track.  I did not want to let her go.  Unfortunately nothing worked.  We separated the employee at the beginning of October, 2003.

12.  After this employee was separated my partner and I discovered serious problems in the office.  Court calendars were missing.  The paper office calendar was out of date.  Important documents had not been filed or had been placed in the wrong files.  Important dates, such as court appearances, deadlines, statutes of limitations and the like, had either not been entered into the computerized calendar system or had been entered under the wrong dates.  Worst of all, many files generated or used by my former employee had been deleted from the office network.

13. My partner and I replaced our former employee as soon as possible but for approximately two weeks I had no assistance. The new employee arrived Oct. 13, 2003. She has over twenty years experience in the legal field. She is working hard but is not yet fully familiar with my office and my files. To help this employee we have had the IT manager work extra hours. We have also hired a file clerk with years of law experience, hired a law office computer consultant, replaced the computerized calendar program in use with a better one, and paid to have the data in the old system transferred and updated. The file clerk and the new employee have spent a large part of every day since Oct. 13, 2003, cleaning and reorganizing the office.

14. Rosenstein & Barnes handles primarily employment litigation, civil rights, and domestic and family matters. The firm's two attorneys are specialists. My litigation case load consists of thirty matters, all civil rights and employment related with the exception of a few pieces of commercial, insurance and securities litigation. All are active and contested. My cases involve research in employment law, civil rights law, pension and benefits law, covenants not to compete, trade secret law, insurance law and securities law.

15. The underlying problem with workflow in our office has been identified and resolved, but notwithstanding it will take a reasonable amount of time to get my pending cases back on schedule.

16. Despite diligent efforts it is simply not possible for me to prepare and file a proper response to Defendant's motion for summary judgment before Jan. 16, 2004.

17. No disrespect for this court or its rulings, deadlines or authority, is intended. No harm will be done to any party by the extension, which will assist the court in determining the motion on its merits.

*/s/ Barnes*
WILLIAM B. BARNES

STATE OF CONNECTICUT      )
                          )   COUNTY OF FAIRFIELD
TOWN OF FAIRFIELD         )

Now comes WILLIAM B. BARNES, known or satisfactorily proven, and subscribed and swore to the truth of the foregoing before me as his free act and deed for the purposes therein contained.

*/s/ Diane E. Lally*
DIANE E. LALLY
Notary Public
My commission expires: 12/31/03