FILED

2004 FEB 17 P 2: 46

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

DEBRA COSENTINO, ET AL,                    :    301CV2129 (AVC)

    *Plaintiffs*,                         :

v.                                         :

                                           :    CONSOLIDATED CASES
PITNEY BOWES, INC. and                     :
IMAGISTICS INTERNATIONAL, INC.,
                                           :

    *Defendants*.                         :

                                           :    Feb. _16_ , 2004


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


    Plaintiffs Geraldine Benton, Patricia Buonincontra, Kimberly
Cifatte, Debra Cosentino and Donna Moore respectfully submit this
memorandum in opposition to the Aug. 4, 2003 motion of Defendants
Pitney Bowes, Inc., and Imagistics International, Inc., for
summary judgment on all counts in these five consolidated
actions.

    Plaintiffs' version of the facts of the case, with record
references, appears in Part II of Plaintiffs' Local Rule 56(a)(2)
Statement.  References to Part II are "MF ¶ __."  Defendant

Pitney Bowes, Inc. is "Pitney Bowes."  Defendant Imagistics

International, Inc. is "Imagistics."  The Memorandum of Law in

Support of Defendants' Motion for Summary Judgment, dated Aug. 4,

2003, at 20-25 is "Defendants' Memo."

### Summary of Argument

Defendants' motion should be denied in all respects.

Whether Gary Simpson's harassment of the Plaintiffs was

sufficiently severe and pervasive to create a hostile environment

is a jury issue.  The conduct, taken as a whole, was frequent and

severe; many of the acts were physically threatening and

humiliating, not merely offensive; the conduct unreasonably

interfered with the victims' work performance; and severe

psychological harm with physical consequences resulted.  Whether

Mr. Simpson's harassment of the Plaintiffs was because of their

sex is likewise a jury issue.  Plaintiffs were subjected to

hostile working conditions not imposed upon the opposite sex.

Mr. Simpson's hostile actions were sexual in nature, his

attacking remarks mentioned the victims' sex, and the male

employees were not subjected to such attacks.  Finally, whether

Defendants are liable for negligent supervision is a jury issue.

There is evidence that Defendants had warning of Mr. Simpson's

dangerous proclivities and could reasonably have foreseen that he would sexually harass the Plaintiffs.  There is also evidence that Defendants did not do enough to protect Plaintiffs.

<u>Argument</u>

<b>Whether Simpson's Harassment Was<br>Sufficiently Severe and Pervasive to Create<br>a Hostile Environment Is an Issue for the Jury</b>

Simpson's harassment was sufficiently severe and pervasive to create an issue for the jury.[1]

Under Title VII a hostile work environment is one form of disparate treatment on the basis of sex.[2]  The fact finder examines the workplace environment as a whole to determine whether it is abusive.[3]  The work environment is abusive when the harassment has reached a certain qualitative level in which it is severe or pervasive enough to alter the conditions of the victim's employment.[4]

---

[1]   Defendants' Memo, at 20-25.

[2]   42 U.S.C. § 2000e-2(a)(1).

[3]   <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); <u>Raniola v. Bratton</u>, 243 F.3d 610, 617 (2d Cir. 2001).

[4]   <u>Meritor</u>, 477 U.S. at 67.

There must be evidence not only that the victim subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's work environment.[5]

The allegations of a plaintiff claiming disparate treatment on the basis of sex through a hostile environment should be evaluated to determine whether a reasonable person who is the target of discrimination would find the alteration of the plaintiff's working conditions by harassment so severe or pervasive as to alter the terms and conditions of her employment for the worse.[6]

Making a hostility determination entails examining the totality of the circumstances, including the frequency of the

---

[5] Harris, 510 U.S. at 21; Meritor Sav. Bank, FSB, 477 U.S. at 65; see also Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

[6] Harris, 510 U.S. at 21; Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999); Richardson v. Metro. Dist. Comm'n, Civil Action No. 3-00-CV-062 (JCH), 2003 U.S. Dist. LEXIS 12757, *9-*11 (D. Conn. July 23, 2003).

4

discriminatory conduct; its severity; whether it was physically

threatening or humiliating, or a mere offensive utterance;

whether it unreasonably interfered with the victim's work

performance; and whether psychological harm resulted.[7]  No single

factor is required.[8]  Finding the harassment "pervasive" means

that the challenged incidents are more than isolated or episodic;

they must be sufficiently continuous and concerted.[9]  Generally

speaking, the hostility and pervasiveness analysis is fact-

specific and therefore best left for trial.[10]

The trier of fact must determine the existence of sexual

harassment in light of the record as a whole and the totality of

---

[7]  See Harris, 510 U.S. at 23; Richardson, 180 F.3d at 437;
Richardson v. Metro. Dist. Comm'n, *11.

[8]  See Harris, 510 U.S. at 23.

[9]  Richardson, 180 F.3d at 437; Kotcher v. Rosa and Sullivan
Appliance Ctr., 957 F.2d 59, 62 (2d Cir. 1992); Carrero v. New
York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989);
Richardson v. Metro. Dist. Comm'n, *11.

[10]  Hayut v. State Univ. of New York, 352 F.3d 733, 745 (2d
Cir. 2003) (reversing summary judgment for employer on hostility
and pervasiveness issue); Ayers v. State of Connecticut, Civ. No.
3:99cv935(AHN), 20 U.S. Dist. LEXIS 26108, *3-*5 (D. Conn. Mar.
28, 2002) (denying summary judgment because determining whether
harassment is sufficient to produce a hostile environment is a
mixed question of law and fact especially well-suited to jury
determination).

the circumstances.[11]  The factors must be considered cumulatively
so that the court may obtain a realistic view of the work
environment.[12]  The focus of the inquiry is the nature of the
environment itself.[13]

The plaintiff's evidence must be taken as a whole.[14]  The
trier should not take a myopic view of each incident, saying
"This was not offensive enough to alter the conditions of
employment" and "That was not offensive enough to alter the
conditions of employment," until the plaintiff has no case.[15]

---

[11]  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88,
118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); Meritor, 477 U.S. at 66.

[12]  Raniola, 243 F.3d at 617; Richardson, 180 F.3d at 437.

[13]  Raniola, 243 F.3d at 617; Perry v. Ethan Allen, Inc.,
115 F.3d 143, 150 (2d Cir. 1997).

[14]  Raniola, 243 F.3d at 617; Williams, 187 F.3d at 564-66;
O'Shea v. Yellow Technical Servs., Inc., 185 F.3d 1093, 1096
(10th Cir. 1999) ("[W]e must view the evidence in context, not
simply in its segmented parts."); Carter v. Chrysler Corp., 173
F.3d 693, 702 (8th Cir. 1999) ("A work environment is shaped by
the accumulation of abusive conduct, and the resulting harm
cannot be measured by carving it into a series of discrete
incidents." (quotation marks omitted)); 29 C.F.R. § 1604.11(b)
("In determining whether alleged conduct constitutes sexual
harassment, the Commission will look at the record as a whole and
at the totality of the circumstances, such as the nature of the
sexual advances and the context in which the alleged incidents
occurred.  The determination of the legality of a particular
action will be made from the facts, on a case by case basis.").

[15]  Williams, 187 F.3d at 564; cf. Bennett v. New York City
(continued...)

All of the incidents combined may produce a hostile work environment though no one of them alone would do so.[16]

A rigid approach which determines hostility and pervasiveness purely on the number of incidents is similarly inappropriate.[17]  The question is not the number of incidents, but whether the harassment pervaded and colored the environment; permeated the atmosphere and set the tone.[18]

Hostile environment analysis is not, and by its nature cannot be, a mathematically precise test.[19]  Because of the fact-specific and circumstance-driven nature of hostile environment claims, courts must be mindful that the appalling conduct alleged in prior cases should not be taken to mark the boundary of what

---

[15]  (...continued)
Dept. of Corrections, 705 F.Supp. 979, 986 (S.D.N.Y. 1989) (summary judgment denied; the court will consider all of the incidents even though some of them "seem of little probative value").

[16]  Raniola, 243 F.3d at 617; Williams, 187 F.3d at 564.

[17]  See Hayut, 352 F.3d at 746.  The Second Circuit found that vulgar comments in about half of the plaintiff's classes, in addition to some comments made outside her presence, satisfied the hostility and pervasiveness tests.  352 F.3d at 746-48.

[18]  Hayut, 352 F.3d at 745; Ayers, *5.

[19]  Harris, 510 U.S. at 22.

7

is actionable.[20]  Courts should not attempt to establish an
absolute baseline for actionable behavior.[21]

The incidents described in Plaintiffs' Rule 56(a)(2)
statement are, when taken together, more than sufficient to
create a jury issue on hostility and pervasiveness.  The
offensive behavior was very frequent and quite severe.  Many
incidents described by Plaintiffs - Mr. Simpson flying into a
red-faced rage, screaming, hitting file cabinets and doors,
slamming doors, slamming large file drawers shut, pounding his
fists on the table, and physically restraining female employees
while he screamed at them from only a few inches away - were
physically threatening and humiliating.  It is clear that Mr.
Simpson's behavior interfered with the Plaintiff's work
performance.  Indeed, if Plaintiff Moore's account of her
conversations with Mr. Simpson are credited, it was designed to
do so.  Finally, Plaintiffs suffered severe psychological harm
resulting in physical symptoms as a result of Mr. Simpson's

---

[20]  Hayut, 352 F.3d at 746; Whidbee v. Garzarelli Food
Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000); Richardson,
180 F.3d at 439.

[21]  Hayut, 352 F.3d at 746; Whidbee, 223 F.3d at 70.

conduct.[22]  Defendants' arguments are either the hairsplitting condemned in Hayut and Raniola or fact arguments which Defendants are free to present to a jury when this case goes to trial.

Defendants argue that as a matter of law Plaintiff Moore could not have been exposed to a hostile environment because she could not have been affected by hostile acts directed to the other Plaintiffs outside her presence.[23]  This argument fails for several reasons.  A number of harassing acts, such as the "straddle" remark and rubbing Plaintiff Moore's behind, were aimed at Plaintiff Moore herself.  Plaintiff Moore personally observed Mr. Simpson harassing the other women by verbal attacks, lying and dirty tricks.  Mr. Simpson told Plaintiff Moore that he hated the women, grossly insulted them in conversations with Plaintiff Moore and disclosed to her his plans to make them

_____

[22]  There has been a great deal of sociological research recently into bullying in the workplace.  See David C. Yamada, The Phenomenon of "Workplace Bullying" and the Need for Status-Blind Hostile Work Environment Protection, 88 Geo. L. J. 475 (2000) (hereinafter "Yamada").  A male supervisor typically bullies lower status female employees.  Id. at 481.  Title VII hostile environment sexual harassment claims are one legal route to address bullying in the workplace.  Id. at 509-15.  Mr. Simpson is a classic bully, id. at 480-82, and the intense and painful psychological harm suffered by Plaintiffs is characteristic of the harm suffered by the victims of workplace bullying.  Id., at 483-85.

[23]  Defendants' Memo, at 21.

9

miserable.  Finally, Plaintiff Moore was made very upset and frightened when she learned the things that Mr. Simpson had done to harass the other women before she arrived.[24]  This was enough to create a hostile environment for Plaintiff Moore.

### Whether Simpson's Harassment Was Based on Sex Is an Issue for the Jury

Defendants wrongly claim that Plaintiffs cannot show that they were harassed "because of" their sex.  Defendants' Memo, at 25-31.  Defendants are again splitting hairs.

To establish a hostile sexual environment claim, the complainant must show that "but for the fact of her sex, she would not have been the object of harassment." [25]  The issue is

---

[24]  Liebovitz v. New York City Trans. Auth., 252 F.3d 179 (2d Cir. 2001), relied upon by Defendants, is distinguishable. The plaintiff in Liebovitz neither suffered any harassment herself nor witnessed anyone being harassed.  Her entire claim was based upon what other employees told her about what they had suffered. 252 F.3d 189-90.  Here Plaintiff Moore both experienced harassment and witnessed other women in the same workplace being harassed.  The Second Circuit has held that in such circumstances evidence that other employees in the same workplace were harassed is relevant, Liebovitz, at 190; Whidbee, 223 F.3d at 70 n.9, and evidence of hostile remarks out of the plaintiffs' hearing is admissible. Liebovitz, at 190; Torres v. Pisano, 116 F.3d 625, 623 (2d Cir. 1997).

[25]  42 U.S.C. § 2000e-2(a)(1) (discrimination "because of" sex" prohibited); Harris, 510 at 21; Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982); 1 Barbara Lindemann and Paul Grossman, Employment Discrimination Law 783 (3d ed. 1996)
(continued...)

thus whether members of one sex are exposed to disadvantageous terms and conditions of employment to which members of the other sex are not exposed.[26]

Incidents motivated by sexual desire, sexual hostility, gender-based hostility and/or facially neutral hostility may and should be aggregated so long as, when taken as a whole, they show that the female plaintiff was subjected to disadvantageous terms and conditions of employment to which male employees were not exposed.[27]

Gender based harassment need not be motivated by sexual desire,[28] or be sexual in nature.[29]  Facially neutral abusive

---

[25] (...continued)
(hereafter "Lindemann & Grossman"); 1 Lindemann & Grossman 594 (2002 Cum. Supp.) (hereafter "L & G 2002 Cum. Supp.").

[26] Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); Harris, 510 U.S. at 25; L & G 2002 Cum. Supp. at 592-93.

[27] See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 148 (3d Cir. 1999).  Refusing to aggregate hostile, but not explicitly sexual, harassment with explicitly sexual harassment seriously undermines the effectiveness of hostile environment claims under Title VII.  See Yamada, at 510-20; Vicki Schultz, Reconceptualizing Sexual Harassment, 107 Yale L. J. 1683, 1710-29 (1998) (hereafter "Schultz").

[28] Oncale, 523 U.S. at 80; Raniola, 243 F.3d at 617; L & G 2002 Cum. Supp. at 593 & n. 85.

[29] Oncale, 523 U.S. at 80; Raniola, 243 F.3d at 617 & n.6;
(continued...)

conduct can support a finding of gender animus sufficient to
sustain a hostile work environment claim when that conduct is
viewed in the context of other, overtly gender-discriminatory
conduct.[30]  Abusive conduct which might appear to be merely the

---

[29]  (...continued)
Smith v. First Union Nat'l Bank, 202 F.3d 234, 242 (4th Cir.
2000); Smith v. Sheahan, 189 F.3d 529, 533 (7th Cir. 1999);
Williams, 187 F.3d at 564-66  ("[T]he law recognizes that non-
sexual conduct may be illegally sex-based where it evinces anti-
female animus, and therefore could be found to have contributed
significantly to the hostile environment. ... ." (quotation marks
omitted)); O'Shea, 185 F.3d at 1097 ("even if some of the alleged
conduct was not explicitly sexual in nature, if it reasonably
could be inferred that the conduct was related to gender or arose
out of a context in which admittedly sex- and gender-related
conduct occurred, then it is for the fact finder to decide
whether such an inference should be drawn. (quotation marks and
citation omitted)); Carter, 173 F.3d at 701-02; Smith v. St.
Louis University, 109 F.3d 1261, 1265 (8th Cir. 1997); Burns v.
McGregor Elec. Indus., 989 F.2d 959, 964 (8th Cir. 1993)
("Intimidation and hostility toward women because they are women
can obviously result from conduct other than explicit sexual
advances."); Lipsett v. University of Puerto Rico, 864 F.2d 881,
905 (1st Cir. 1988); Hall v. Gus Constr. Co., 842 F.2d 1010,
1013-14 (8th Cir. 1988); McKinney v. Dole, 765 F.2d 1129, 1139
(D.C. Cir. 1985) ("A pattern of threatened force or verbal abuse,
if based on the employee's sex, may be illegally discriminatory.
In fact, any discriminatory treatment, even if not facially
objectionable, may violate Title VII."), rev'd in part on other
grounds sub nom., Stevens v. Dept. of Treasury, 500 U.S. 1, 111
S.Ct. 1562, 114 L.Ed.2d 1 (1991); L & G Cum. Supp. at 593-94.

[30]  O'Shea, 185 F.3d at 1097; Carter, 173 F.3d at 701 ("All
instances of harassment need not be stamped with signs of overt
discrimination to be relevant under Title VII if they are part of
a course of conduct which is tied to evidence of discriminatory
animus."); Hall, 842 F.2d at 1014.

result of a personality conflict will support a hostile
environment claim where there is evidence that the conflict is
related to sex or gender.[31]

A plaintiff may establish unlawful sexual harassment from
harassment directed at her because of her gender even without
inappropriate sexual comments and no overtly sexual conduct or
touching.[32]  "Title VII affords employees the right to work in an
environment free from discriminatory intimidation, ridicule, and
insult." [33]

One method of demonstrating that harassing acts which are
not obviously gender based were in fact performed due to the

---

[31]  See, e.g., Green v. Adm'rs of Tulane Educ. Fund, 284
F.3d 642, 656 (5th Cir. 2002).

[32]  See Townsend v. New York Div. of State Police, 95-CV-
0807 (RSP/GJD), 1997 U.S.D.C. LEXIS 2819, *13 (N.D.N.Y. Mar. 13,
1997) (motion to dismiss denied; plaintiff adequately pled sexual
harassment by alleging derogatory messages, insubordination by
male subordinates and vandalism); 1 Lindemann and Grossman at 786
(threatening, intimidating or hostile acts are harassing conduct
on the basis of sex just as much as epithets, slurs and negative
stereotyping on the basis of sex, and written or graphic material
that denigrates or shows hostility or aversion towards an
individual or group because of gender); Schultz, at 1759-60,
1762-1766 & nn. 412-37 (Harassment is forced subordination of
women by acts designed to reinforce gender difference and claim
competence and authority in the workplace as masculine preserves;
it labels women as incompetent and enforces the lesson by
sabotaging their performance).

[33]  Meritor, 477 U.S. at 65.

13

victim's sex is to provide evidence of discrepancies in the way that the alleged harasser treated members of each sex in a mixed-sex workplace. Harassment is likely to be "because of sex" if the harasser did not treat female employees in the same way as male employees.[34] A claim that a supervisor attacked all of his employees, i.e., that he was an "equal opportunity harasser," will fail when the hostile actions were sexual in nature, the

---

[34] *Oncale*, 523 U.S. at 80; *Smith v. Sheahan*, 189 F.3d at 533 (while many employees attacked by hostile individual, female employees especially targeted); *Williams*, 187 F.3d at 559; *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994) (sexually offensive statements to women were qualitatively different from the offensive remarks made to men; "It is one thing to call a woman "worthless," and another to call her a 'worthless broad.'"); *Kopp v. Samaritan Health Sys., Inc.*, 13 F.3d 264, 269-70 (8th Cir. 1993) (summary judgment denied; incidents where male supervisor verbally and physically abused female employees greatly outnumbered those where he abused male employees); *EEOC v. A. Sam & Sons Produce Co.*, 872 F.Supp. 29, 35 (W.D.N.Y. 1994) (word "whore", though it could be used to denigrate both sexes, is usually gender specific and particularly offensive to women).

attacking remarks mentioned the victim's sex,[35] or there was no
evidence that male employees were subjected to such attacks.[36]

The incidents described in Plaintiffs' Rule 56(a)(2)
Statement provide ample basis for a finder of fact to conclude
that the Plaintiffs were harassed "because of" their sex.

Some of the hostile actions, such as the touching of
Plaintiffs Moore and Cifatte, were overtly sexual in nature.  In
many of his hostile remarks, moreover, Mr. Simpson referred to
the sex of the victim.  Mr. Simpson's attacks on "you women,"
"the women" and "you girls" were attacks on women defined as such
and were so understood by the victims.

---

[35]   Smith v. First Union Nat'l Bank, 202 F.3d at 242; Smith
v. Sheahan, 189 F.3d at 533 (explicitly gendered and sexually
charged remarks supported conclusion that female employees
targeted due to sex); Carter, 173 F.3d at 700-01 ("gender-based
insults, including the term 'bitch,' may give rise to an
inference of discrimination based on sex... ."); Smith v. St.
Louis Univ., 109 F.3d at 1265 (use of "genderconscious terms"
supports inference that criticisms directed at plaintiff due to
her sex); Lipsett, 864 F.2d at 905 (constant attacks on female
employees, though not explicitly sexual, were charged with "anti-
female animus" and therefore could have contributed significantly
to the hostile environment).

[36]   See Dortz v. City of New York, 904 F.Supp. 127, 149-150
(S.D.N.Y. 1995) (a factfinder could conclude, from the absence of
evidence that a supervisor referred to male employees in
humiliating ways, such as saying that they acted as "children,"
that these comments were directed at plaintiff because she was a
woman.); EEOC v. A. Sam & Sons Produce Co., 872 F.Supp. at 35 (no
evidence that manager called male employees "whores").

There was no need for Mr. Simpson to use the words "women" or "girls" in speaking of or to the reps in the ECO room. He could have used gender neutral phrases which covered the same territory, such as "people," or, if he was angry, "fools," "jerks" or "idiots."[37] This would have been come naturally to Mr. Simpson if he lacked gender animus since for part of the time that he was referring to "you women," "the women" or "the girls" one rep, Darryl Schneider, was not a woman. Mr. Simpson's persistent attacks on a small group of female employees which he identified by gender shows that the harassment was because of sex.

Mr. Simpson's discriminatory motivation is clearly shown by his Aug. 30, 2000 attack on Plaintiff Cosentino. The afternoon of the day that he sent Plaintiffs Cifatte and Benton home in tears and physically ill, Mr. Simpson called Plaintiff Cosentino into his office and repeatedly debased the "women" by insults which included calling them a "cancer". When Plaintiff Cosentino asked why she was being attacked – she was an excellent rep, better than anyone in the ECO room – Mr. Simpson told her that he was going to say the same things to all of "them," the female

---

[37]  Mr. Simpson did call the reps "you fucking people" on occasion.  See MF ¶s 49, 74.

reps, as eventually he did.   This conduct showed strong animus against women.

Additional evidence that Mr. Simpson harassed the Plaintiffs on account of their sex is that he treated Darryl Schneider, a less successful male rep, well while brutally harassing, not only reps with ordinary records like Plaintiffs Benton, Buonincontra and Cifatte, but Plaintiff Cosentino, a far better rep than Darryl.

Defendants argue that most of the harassment (to the extent that they admit that it took place) was not sexual and thus did not violate Title VII.   But, as stated above, the hostile acts did not need to be sexual provided they were meted out because the Plaintiffs were female.   The many incidents in which Mr. Simpson revealed gender animus allow the fact finder to connect the gender based acts with the non gender based acts into a single pattern of sex discrimination.

### Whether Defendants Were Guilty of
### Negligent Supervision Is an Issue for the Jury

Defendants say that Plaintiffs cannot prove negligent supervision because they did not know of Mr. Simpson's dangerous proclivities; the harm suffered by Plaintiffs was not foreseeable; and their supervision of Mr. Simpson was not negligent.[38]  None of these claims holds water.

Whether Defendants were aware of Mr. Simpson's propensity to harass women is an issue of fact.  Pitney Bowes Human Resources personnel and the Pitney Bowes employee advocate made statements to Plaintiffs which, if credited, would indicate knowledge. Furthermore, from Plaintiffs' perspective, the harassment continued from before Aug. 31, 2000, when Plaintiff Buonincontra made the first complaint to Human Resources, until the Plaintiffs left or were fired, the last by Dec. 13, 2001 – approximately sixteen months later.[39]  Plaintiffs repeatedly complained to Human Resources, and Human Resources worked on the ECO room

---

[38]  Defendants' Memo, at 31-33.

[39]  Although Mr. Simpson had been transferred to another department, he was able to continue harassing Plaintiffs Cifatte and Moore by telling his replacement, Brenda West, which customers they could call upon, which prices they could quote, and what points they should receive.  MF ¶ 16.

problems, after August 30, 2000.  Defendants could be found to
have been negligent during that time period.

Defendants say that they could not have foreseen the harm to
Plaintiffs because even if they knew that Mr. Simpson pounded on
tables, shouted and the like, they could not have known either
that his conduct was sexual harassment or that he was causing the
them any injury.[40]  Whether this is true is an issue of fact.
The jury could find that Pitney Bowes employees knew from the
August 30, 2000 incident forward that Mr. Simpson's harassment
was gender based since he was attacking "the women" and "you
women."  The jury could also find that Plaintiffs repeatedly told
Human Resources personnel about incidents of harassment, and told
them how unhappy they were and described the harm that Mr.
Simpson had caused.

Defendants say that they were not negligent as a matter of
law.  Plaintiffs point to the fact that despite their complaints
the harassment continued.  Plaintiffs also point to evidence that
Defendants saw the Plaintiffs' complaints as a nuisance and did
not do all they could do to stop Mr. Simpson.

---

[40]  Defendants' Memo, at 32.

19

## Conclusion

For all of the foregoing reasons Defendants' motion for summary judgment should be denied.

THE PLAINTIFFS
DEBRA COSENTINO, ET AL

BY: _____

WILLIAM B. BARNES, ESQ.
  (CT0268)
Rosenstein & Barnes
1100 Kings Hwy. East
P.O. Box 687
Fairfield, CT 06432
Tel (203) 367-7922
Fax (203) 367-8110
E-mail wbarnes@rosenbar.com

## CERTIFICATION

A copy of the foregoing was mailed first class mail to the following persons on Feb. 17, 2004:

Lawrence Peikes, Esq.
Wiggin & Dana, LLP
400 Atlantic St.,
P.O. Box 110325
Stamford, CT 06911-0325

_____

WILLIAM B. BARNES, ESQ.

20