Exhibit A

5 of 6 DOCUMENTS

**FRANCES AYERS v. STATE OF CONNECTICUT JUDICIAL BRANCH**

Civ. No. 3:99cv935(AHN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*2002 U.S. Dist. LEXIS 26108; 91 Fair Empl. Prac. Cas. (BNA) 1161*

**March 28, 2002, Filed**

**DISPOSITION:** Defendant's motion for summary judgment granted in part and denied in part.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**COUNSEL:** [*1] For Frances Ayers, PLAINTIFF: John R Williams, Williams & Pattis, New Haven, CT USA.

For Judicial Branch, Connecticut, State of, DEFENDANT: Susan Quinn Cobb, Attorney General's Office, Hartford, CT USA. William M Brown, Jr, Attorney General's Office, Hartford, CT USA.

**JUDGES:** Alan H. Nevas, United States District Judge.

**OPINIONBY:** Alan H. Nevas

**OPINION:**

RULING ON MOTION FOR SUMMARY JUDGMENT

In this employment discrimination action, the plaintiff, Frances Ayres ("Ayres") asserts claims under Title VII, *42 U.S.C. § 2000e, 42 U.S.C. § 1983*, and the Connecticut Unfair Employment Practices Act, *Conn. Gen. Stat. § 46a-60* ("CFEPA"). Presently pending is the motion of the defendant, State of Connecticut Judicial Branch ("Judicial Branch") for summary judgment.

For the following reasons, the motion [doc. # 24] is GRANTED in part and DENIED in part.

BACKGROUND

Ayres, a court reporter for the Judicial Branch, alleges that she was the victim of repeated incidents of sexual harassment and abuse including one incident of physical assault by Stanley Kubovy ("Kubovy"), a maintenance worker who was also employed by the Judicial Branch. She alleges [*2] that she repeatedly complained about the harassment to her superiors, but that they rejected her complaints and sided with the harasser and retaliated against her for complaining.

The Judicial Branch has moved for summary judgment on all three of Ayres's claims. Specifically, it asserts that the CFEPA and *§ 1983* claims are barred by the *Eleventh Amendment*. It moves for summary judgment on the Title VII claim on the grounds that the undisputed facts do not establish that the alleged harassment was sufficiently severe or pervasive and did not alter the conditions of Ayres's work environment. It also maintains that it cannot be held liable as a matter of law because there is no basis for imputing Kubovy's conduct to it.

Ayres does not dispute the Judicial Branch's claim that this court lacks jurisdiction over the *§ 1983* and CFEPA claims. She consents to the dismissal of the *§ 1983* claim with prejudice and dismissal of the CFEPA claim without prejudice to refiling in state court. She opposes the Judicial Branch's motion for summary judgment on the Title VII claim on the grounds that there are material factual issues in dispute which require resolution at trial.

STANDARD

In reviewing [*3] the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)*. To defeat summary judgment, the non-movant's must present more than speculation and conjecture, but the evidence she does present must be accepted as true. See *Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997)*. The court must view the evidence as a whole and take into account all of the circumstances and then decide if the evidence can reasonably and logically give rise to an inference of discrimination. See *Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999)*, cert denied, *530 U.S. 1242, 147 L. Ed. 2d 960, 120 S. Ct. 2688 (2000)*. Determining whether harassment causes a hostile work environment involves an application of the facts—the specific discriminatory conditions alleged by the plaintiff—to the law. Such mixed questions of law and fact are "es-

Case 3:01-cv-02129-AVC    Document 45-2    Filed 02/17/2004    Page 3 of 17

2002 U.S. Dist. LEXIS 26108, *3; 91 Fair Empl. Prac. Cas. (BNA) 1161

Page 2

pecially well-suited for jury determination and summary judgment may be granted only where application [*4] of the law to the undisputed facts reasonably supports only one ultimate conclusion." See *Richardson v. New York State Dept. of Corr. Serv., 180 F.3d 426, 438 (2d Cir. 1999)*.

## DISCUSSION

The Supreme Court has held that a Title VII hostile environment claim can succeed only where the conduct at issue is so severe or pervasive that it creates an objectively hostile or abusive work environment and where the victim subjectively perceives the environment to be abusive. See *Harris v. Forklift Sys., 510 U.S. 17, 21-22, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)*. To prevail on summary judgment, an employer must establish that no reasonable jury could find that the victim subjectively perceived her environment to be hostile and abusive and that a reasonable person who was the target of such sexual harassment would find the conditions so severe and pervasive as to alter the terms and conditions of employment and create an abusive working environment. See e.g., *Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000)*; *Richardson, 180 F.3d at 436 & n.3.*

In other words, to establish a claim under a hostile work environment [*5] theory, the plaintiff must show more than a few isolated or sporadic minor incidents. See *Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)*. But, "by its nature, a hostile environment analysis does not lend itself to a mathematically precise test and there is neither a threshold magic number of harassing incidents that give rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Williams v. Board of Hudson River/Black River Regulating Dist., No. 99cv1282, 2001 U.S. Dist. LEXIS 16124, at * 13 (N.D.N.Y. Sept. 23, 2001)* (quoting *Richardson, 180 F.3d at 439*). "Although a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice if it is sufficiently egregious." *Ferris v. Delta Air Lines, 277 F.3d 128, 135 (2d Cir. 2001)*.

As a general rule, the totality of the circumstances must be considered and the quantity, frequency and severity of the incidents must be evaluated. See *Schwapp, 118 F.3d at 111*. In addition, to obtain a realistic [*6] view of the working environment the court should also consider whether the conduct was physically threatening or humiliating, whether it unreasonably interfered with the plaintiff's work, and whether it caused any psychological harm. See *Quinn v. Green Tree Credit Corp., 159 F.3d 759, 767-68 (2d Cir. 1998)*.

Here, Ayres submits evidence showing that the first of Kubovy's acts of harassment occurred in 1994, when he followed her into the woman's bathroom. She claims that she reported this act, but that Kubovy's harassing conduct continued. He followed her, hovered around her work space, made repeated comments concerning her hair, her legs and her weight, gave her gifts and asked her out on dates, and then, in July, 1997, he physically assaulted her by striking her on her buttocks with his hand in the presence of her young son. Ayres also submits evidence that Kubovy's conduct caused her to suffer psychological harm for which she sought and received treatment.

Viewing this evidence in its totality and in a light most favorable to Ayres, the court cannot conclude as a matter of law that Kubovy's conduct was not so severe and pervasive as to alter the terms and conditions [*7] of Ayres's employment for the worse. Indeed, the one incident of assault alone could be sufficient to support a finding of a hostile work environment. See *Ferris v. Delta Air Lines, 277 F.3d at 135* (noting that a single incident of hostile or abusive behavior can suffice to create a hostile environment if it is sufficiently severe) (citing *Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995))* ("Even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive environment for purposes of Title VII liability"), abrogated on other grounds by *Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998).*

There is also no merit to the Judicial Branch's claim that Kubovy's conduct cannot be attributed to it because it responded in a reasonable and adequate manner to Ayres's complaints.

It is well settled that an employer can only be liable for harassment by a victim's co-worker if the employer was negligent—that is, only if it failed to provide a reasonable avenue for complaint or knew of the harassment but did nothing about it. See [*8] *Quinn, 159 F.3d at 766*. If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate. *Richardson, 180 F.3d at 441* (noting that the employer is liable for any hostile work environment created by a victim's co-worker unless it can show that it took immediate and appropriate remedial action) (quoting *Gallagher v. Delaney, 139 F.3d 338, 348 (2d Cir. 1997))*.

Here, Ayres has created a triable issue as to whether the Judicial Branch took appropriate action. Her evidence shows that four days after the incident involving the physical assault she reported it to the Judicial Branch's local administrators, but heard nothing from them for one month. When she then inquired into the status of her complaint

Case 3:01-cv-02129-AVC   Document 45-2   Filed 02/17/2004   Page 4 of 17

Page 3
2002 U.S. Dist. LEXIS 26108, *8; 91 Fair Empl. Prac. Cas. (BNA) 1161

she received nothing but a hostile reaction. A month later she filed a grievance with the Judicial Branch complaining about its failure to properly investigate her claim and the unfair treatment she had received. She waited one more month before making another inquiry, but did not receive any response until another month passed. At that time, she was notified that [*9] her complaint had been reviewed and no remedial or disciplinary action would be taken against Kubovy. Ayres further claims that after she filed the complaint she was treated unfairly by the local branch administrators and was subjected to such severe retaliation that she was forced to leave her employment.

The Judicial Branch does not dispute Ayres's chronology of events surrounding the filing of her complaint, but maintains that its response was sufficiently and effectively remedial and prompt to shield it from liability as a matter of law. The court disagrees. While a factfinder may conclude that the Judicial Branch's response was reasonable and adequate, the record evidence does not compel only that conclusion and thus summary judgment is not appropriate. See *Richardson, 180 F.3d at 442*.

Finally, the court also does not agree with the Judicial Branch's assertion that Ayres's claims alleging conduct that occurred more than 300 days prior to January 8, 1998, the date she filed her EEOC complaint, are time barred by Title VII's limitations period. There is no merit to its assertion that the continuing violation theory is not available to Ayres because it only "applies [*10] to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists . . . and that even several incidents of discrimination which are not part of a mechanism or policy do not constitute a continuing violation." The Second Circuit expressly rejected this assertion in *Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)*.

In Fitzgerald, the court had, inter alia, "doctrinal" difficulties with the district court's ruling that the plaintiff was not entitled to invoke the continuing violation theory because she had not alleged a formal or widespread identifiable discriminatory practice or policy in her administrative complaint. Further, the court "most fundamentally disagreed with the assumption that [the plaintiff] could not avail herself of the continuing violation theory unless she could prove that [her employer] had a formal discriminatory practice or policy." *Id. at 362*. To the contrary, the court ruled that "the continuing violation theory may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that [*11] its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Id*. The court further held that a plaintiff could invoke the continuing violation theory without showing that the discrimination was widespread. See id.

Under the continuing violation doctrine, the commencement of the limitations period is delayed until the last act in a series constituting the alleged harassment. See *id. at 359*. Application of the doctrine gives the court jurisdiction over claims that are not pursued before the administrative agency so long as they are reasonably related to the claims that were asserted. See *id*. A claim is reasonably related if the conduct complained of would fall within the scope of the EEOC investigation that could reasonably be expected to grow out of the charge that was made. See *id*. Successive conduct that is part of a continuing wrong is by its very nature reasonably related to the earlier conduct. But the plaintiff may not claim a continuing violation unless she asserted it in the administrative proceedings. See id.

Here, the plaintiff asserted a continuing violation in her administrative proceeding [*12] and her factual account shows repeated and related instances of harassment which depict a continuous pattern of allegedly unlawful conduct. Accordingly, she is entitled to present to a jury all acts of harassment that are reasonably related to the claims raised in her EEOC proceeding.

CONCLUSION

For all of the foregoing reasons, the motion of the Judicial Branch for summary judgment [doc. # 24] is GRANTED in part and DENIED in part. The Judicial Branch has not sustained its burden of establishing that it is entitled to judgment as a matter of law on Ayres's sexual harassment claim and its motion as to that claim is DENIED. As to Ayres's claim under § 1983, the motion is GRANTED absent objection. In addition, the motion for summary judgment on Ayres's CFEPA claim is GRANTED without prejudice to refiling in state court.

SO ORDERED this day of March, 2002 at Bridgeport, Connecticut.

Alan H. Nevas

United States District Judge

1 of 6 DOCUMENTS

**TAMMY D. RICHARDSON, Plaintiff v. METROPOLITAN DISTRICT COMMISSION, ET Al., Defendants.**

CIVIL ACTION NO. 3-00-CV-1062 (JCH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*2003 U.S. Dist. LEXIS 12757*

July 23, 2003, Decided

**DISPOSITION:** Plaintiff's motion for summary judgment denied. Plaintiff's motion to strike denied.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**COUNSEL:** [*1] Tammy D Richardson, PLAINTIFF, Pro se, East Hartford, CT USA.

For Metroplitan District Commission, DEFENDANT: Anthony J Palermino, Hartford, CT USA.

**JUDGES:** Janet C. Hall, United States District Judge.

**OPINIONBY:** Janet C. Hall

**OPINION: RULING ON MOTION FOR SUMMARY JUDGMENT [DKT. NO. 62] AND MOTION TO STRIKE [DKT. NO. 69]**

**I. INTRODUCTION**

This case concerns claims for money damages and equitable relief brought pursuant to *42 U.S.C. § 1983*, Title VII of the Civil Rights Act of 1964 ("Title VII"), the *Family Medical Leave Act of 1993* ("FMLA"), and the state common law of intentional infliction of emotional distress. The plaintiff, Tammy D. Richardson ("Richardson"), alleges that the defendants, the Metropolitan District Commission ("MDC"), n1 unlawfully discriminated and retaliated against her on the basis of her race, religion, and sex.

> n1 In addition to the Metropolitan District Commission, the plaintiff also names Norman LeBlanc, Jeffrey Johnson, John J. McAuliffe, Dawn Fiorentino and Margaret Roughan as defendants. Each of these individuals are sued solely in their official capacities, because the court previously dismissed, for lack of proper service, the plaintiff's claims against these named defendants in their individual capacities. [Dkt. No. 19].

The Supreme Court has held that official capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo, 502 U.S. 21, 25, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991)* (quoting *Kentucky v. Graham, 473 U.S. 159, 165, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985))*. Thus, suits against state officials in their official capacity should be treated as suits against the state. *Id.* "An official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" *Id. at 26.*

[*2]

On August 7, 2002, the court granted partial summary judgment for the defendants on some of the plaintiff's claims. [Dkt. No. 58]. The plaintiff subsequently moved for reconsideration of the court's grant of partial summary judgment for the defendants. [Dkt. No. 59]. In its ruling on the plaintiff's motion for reconsideration, the court found that the earlier dismissal of the plaintiff's *section 1983* sexual discrimination claim was in error. The court found that the issue of sexual discrimination under *Section 1983* had not been adequately briefed by the parties, and *sua sponte*, granted the defendants leave to file a motion for summary judgment solely on the plaintiff's *section 1983* sex discrimination claim. As a consequence, the defendants filed their current motion for summary judgment on the *section 1983* sexual discrimination claim. Richardson opposes their motion.

**II. FACTUAL BACKGROUND n2**

> n2 According to the parties' Rule 9(c) Statements, these facts are undisputed for purposes of the motion for summary judgment.

[*3]

Richardson is an African-American woman, who is a practicing Jehovah's Witness. On February 26, 1996, Metropolitan District Commission ("MDC") hired Richardson as a clerk typist in the Treasury Department. On or about October 26, 1996, MDC promoted Richardson to Account Clerk.

On September 20, 1997, Richardson was involved in a non-work-related automobile accident that resulted in a 22% disability of the lower back. Richardson Aff. [Dkt. No. 46], Ex. A, at 5. As a result of the accident, Richardson was out from work from September 20, 1997 through December 8, 1997. On several occasions between 1998 and 1999, Richardson took medical absences because of the injuries sustained in the accident.

In October 1998, Richardson received an evaluation that rated her performance as unsatisfactory, based in part on her absences from work, and her annual increment was withheld. MDC placed Richardson on a six-month probationary period. The comment section of the evaluation referenced Richardson's use of FMLA absences, but noted that her lack of attendance beyond the FMLA absences resulted in an inconsistent volume of work. All Richardson's prior evaluations were satisfactory.

On March 31, 1999, Richardson [*4] left work on a medical leave of absence because of pain from the September 1997 accident. On June 1, 1999, MDC processed an FMLA certification from Richardson's chiropractor that stated the need for medical leave. On June 4, 1999, MDC acknowledged receipt of the chiropractor's certification, but sent a letter to Richardson requesting additional medical documentation that projected the length of absence necessary and described Richardson's ability to return to work.

On July 1, 1999, Richardson attempted to return to work, but her supervisor, Jeffrey Johnson ("Johnson"), sent her home. On July 1, 1999, Richardson's chiropractor faxed a "Return to Work" form to MDC that explained that Richardson could return to regular duties with a few limitations: she could not lift or carry more than ten pounds; she should work half-days until further notice; and she requires chiropractic care twice a week. On July 9, 1999, when she returned from the March 31, 1999 medical leave, MDC reduced Richardson's responsibilities at work and elevated a less qualified white employee to her position. Richardson filed another "Return to Work" form on July 13, 1999 that stated she should only work part-time until [*5] July 23, 1999.

On July 23, 1999, Richardson attended a religious convention. Richardson had requested the day off in March, and Johnson approved the use of vacation time. On the day before the convention, Johnson informed Richardson that he revoked his approval. When Richardson returned to work on July 26, 1999, MDC suspended her for two days without pay for her absence on July 23 and part-time attendance from July 12 through July 21. On August 6, 1999, Richardson filed a complaint with the Connecticut Commission on Human Rights and Opportunities.

Because of her medical absences, Richardson's six-month probationary period extended until August 1999. On August 30, 1999, MDC reviewed Richardson's performance and concluded that it continued to be unsatisfactory. Accordingly, MDC denied Richardson a step increment.

Richardson took a medical absence for injuries from the accident and job-related stress on November 3, 1999, until her voluntary resignation on December 7, 1999. On December 2, 1999, Richardson had received a letter from Northeast Utilities System confirming her employment starting December 13, 1999.

While Richardson was employed at MDC, her supervisor, Jeffrey Johnson ("Johnson"), [*6] swore at her and called her names. She complained about his conduct to the Director of Human Resources and the president of her union.

## III. DISCUSSION

A. Summary Judgment Standard

Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2nd Cir. 2000)*. The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000)* (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994))*. However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)* (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968))* [*7] (alteration in original and internal quotations omitted). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo, 22 F.3d at 1223-24*.

In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved,

Case 3:01-cv-02129-AVC   Document 45-2   Filed 02/17/2004   Page 7 of 17

2003 U.S. Dist. LEXIS 12757, *7                                          Page 3

and all inferences drawn, in favor of the party against whom summary judgment is sought. *Anderson, 477 U.S. at 255*; *Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 721 (2d Cir. 1994)*. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson, 477 U.S. at 255*. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000)*.

B. *Section 1983* Hostile Work Environment and Sex Discrimination

Richardson claims that *section 1983* was violated as a result of the hostile [*8] work environment created by Jeffrey Johnson, her supervisor, and by the adverse employment actions which were taken as a result of her complaints regarding Johnson's sex discrimination. The Supreme Court declared twenty-four years ago that individuals have a constitutional right under the *equal protection clause* to be free from sex discrimination in public employment. *Annis v. County of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir. 1994)* (citing *Davis v. Passman, 442 U.S. 228, 234-35, 60 L. Ed. 2d 846, 99 S. Ct. 2264 (1979))*. Harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort. *Id.* (citing *Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir. 1994)* ("In some circumstances a *§ 1983* claim may be properly grounded on a violation of the *Equal Protection Clause of the Fourteenth Amendment* based on sexual harassment in the workplace."). When sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination. *Id.*

1. Hostile Work Environment

A claim for harassment which creates a hostile [*9] work environment is cognizable under *section 1983*. *Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143-44 (2d Cir. 1993)*. Workplace harassment claims brought under *section 1983* parallel those brought under Title VII, and therefore, courts have applied the same requirements of severity and pervasiveness. See, e.g., *McPhaul v. Board of Comm'rs of Madison County, 226 F.3d 558, 566 n.6 (7th Cir. 2000)*("Because *section 1983* claims generally follow the contours of Title VII claims, we will apply the same hostile environment standard that is applied in Title VII cases."); *Rafiy v. Nassau County Medical Center, 218 F. Supp. 2d 295, 305 (E.D.N.Y. 2002)*(requiring harassment to be severe and pervasive to be cognizable under the *equal protection clause*); *Lange v. Town of Monroe, 213 F. Supp. 2d 411, 423 (S.D.N.Y. 2002)*(same); *Ericson v. City of Meriden, 113 F. Supp. 2d 276, 290 (D. Conn. 2000)*(same).

To establish a hostile work environment, the plaintiff must show that she was subjected to harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create a hostile [*10] working environment," *Harris v. Forklift Systems, 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)*, and that the harassing conduct occurred because of her sex, *Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)*. In order for the harassment of the plaintiff to be actionable, the harassing conduct must have been "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id. at 373*. The workplace must have been both objectively and subjectively hostile.

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Harris, 510 U.S. at 21-22*. In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances [*11] of the workplace and the alleged harassment, circumstances which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id. at 23*. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano, 294 F.3d at 374* (quoting *Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997))*.

As evidence of a hostile environment, Richards cites to the fact that after her automobile accident in 1997, Johnson began a campaign of harassment which included but was not limited to "belittling the plaintiff, verbally abusing plaintiff and constantly calling her a 'bitch' and repeatedly threatening to terminate the plaintiff's employment." Am. Compl. [Dkt. No. 15] P 22. Richardson testified in her deposition that Johnson punctuated his references to her with phrases such as "fuck this, or you're going to do whatever the fuck I tell you to do." Richardson Depo. Def.'s Memo. in Supp. of [*12] Summ. J. [Dkt. No. 63] Ex. C at 27. Richardson argues that she specifically

informed the human resources department that Johnson constantly referred to her and other women in the office as a "bitch" or "bitches" and that the language was offensive and distressing. Am. Compl. [Dkt. No. 15] P 28. Based on this evidence, Richardson has created a material issue of fact as to whether Johnson's conduct created a hostile work environment.

2. Sex Discrimination

Richardson also argues that she suffered sexual discrimination. The initial burden in a sex discrimination claim is on the plaintiff to establish a prima facie case of discrimination. To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000)* (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973))*. Once a plaintiff has established a prima facie case, a rebuttable presumption [*13] of discrimination arises and the burden shifts to the defendants to offer a legitimate, non-discriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)*. Upon the articulation of such a nondiscriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the prima facie case drops out. *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993)*.

Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment decision. *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)*. In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendants was not the employer's true reason, but was a pretext for discrimination. *Id.* As the Supreme Court explained in Reeves:

> Proof [*14] that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

*530 U.S. at 147* (citations omitted). Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. *Id.*; see also *Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 38182 (2d Cir. 2001)*. A finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendant's reason is pretextual, and any other evidence presented in [*15] the case when determining if the plaintiff has sustained her burden. *Zimmerman, 251 F.3d at 381-82*.

Richardson's status as a woman places her in a protected class for a sex discrimination claim, thereby satisfying the first prong of a prima facie case. The second prong, that Richards was qualified for the position, has not been disputed by MDC, and is therefore satisfied. As for the third prong, that she suffered an adverse employment action, Richardson cites to the denial of step increases on two occasions, the reassignment of her job responsibilities, and the denial of a vacation day to attend, and suspension for attending, a religious convention. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. No. 67] at 45 . Such evidence is sufficient to satisfy the third prong of a prima facie case. *Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000)*. Richardson has also satisfied the fourth prong, that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. For instance, Richardson alleges that "on or about October 13, 1998, [she] was denied a merit pay increase as a result of a poor performance [*16] evaluation given to her by Johnson." Am. Compl. [Dkt. No. 15] P 23. Richardson also alleges that as a result of the complaints she filed concerning Johnson's conduct she was denied a step increment in her pay. Id. P 29(a). She further states that prior to her complaints against Johnson she was granted reasonable accommodation of her religious beliefs, but that after her complaint, the defendants acted in a retaliatory and malicious manner to deny her request to attend a religious convention. Id. P 29(e). Richardson also argues that the fact that she filed a complaint against Johnson with the defendants' Human Resources Department on or about March 26, 1999, demonstrates that Roughan, LeBlanc, Fiorentino and McAuliffe n3 were aware of the unconstitutional conduct of Johnson. Pl.'s Local 9(c)(2) Statement [Dkt. No. 54] P10. After Richardson filed a report with Roughan addressing Johnson's conduct, Roughan responded by ask-

Case 3:01-cv-02129-AVC    Document 45-2    Filed 02/17/2004    Page 9 of 17

2003 U.S. Dist. LEXIS 12757, *16                                    Page 5

ing, "what do you want us to do about it?" Richardson Depo. Def.'s Memo. in Supp. of Summ. J. [Dkt. No. 63] Ex. C at 27. Taking the facts in the light most favorable to the plaintiff, Richardson has established a prima facie case as to whether she suffered [*17] an adverse employment action as a result of Johnson's sex discrimination. The defendants do not specifically articulate a non-discriminatory reason for the employment actions taken against Richardson, but rather dispute that she suffered sex discrimination at all, and also dispute that MDC, as a municipal entity, can be held liable for the actions of any of the named individuals. Richardson has, however, established a material issue of fact as to whether she suffered sex discrimination, and therefore summary judgment is not appropriate on this ground. As for municipal liability, the court will address this argument next.

> n3 Johnson was Richardson's immediate supervisor in the treasury department. Def.'s Statement of Material Facts Local 9(c)(1) Statement [Dkt. No. 41]. Margaret Roughan was the Director of Human Resources and reported directly to the District Manager. Id. LeBlanc was the Manager of Treasury, and reported directly to the District Manager. Id. McAuliffe was the Customer Accounting and Risk Services Administrator and reported to LeBLanc. Id. Fiorentino was the Risk Services Analyst and reported to McAuliffe, until his retirement on July 1, 1999, and which point she was elevated to his position. Id.

[*18]

C. Municipal Liability

Although Richardson has created a prima facie case as to whether she was forced to work in a hostile work environment and suffered sex discrimination, MDC may not be held liable under *section 1983* for the actions of individuals solely on a theory or respondeat superior. *Jeffes v. Barnes, 208 F.3d 49, 56-57 (2d Cir. 2000)* (citing *Monell v. Department of Social Services, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978))*. MDC may only be held liable if the conduct that caused the constitutional violation was undertaken pursuant to an MDC policy or custom. *Id.* As Richardson's suit is properly characterized as one against the state, she may only recover if a policy or custom played some part in the discrimination. *Hafer, 502 U.S. at 25.* The defendants argue that Richardson's complaint fails, because she cannot demonstrate that the alleged violations of *section 1983* occurred as a result of a policy or custom of MDC. Richardson, however, argues that a local government unit may be liable when the person was injured by a local government official or employee with final policy making authority. Pl. [*19] 's Memo. In Opp'n to Mot. for Summ. J. [Dkt. No. 67] at 2.

The Second Circuit has found that a municipality may be held liable under *section 1983* when the injury was inflicted by its "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Jeffes, 208 F.3d at 57.* Additionally, a supervisor's acquiescence to the actions of his subordinates may amount to a policy or custom, if the subordinate's "discriminatory practice [is] so manifest as to imply the constructive acquiescence of senior policy-making officials." *Wimmer v. Suffolk County Police Department, 176 F.3d 125, 137 (2d Cir. 1999)* (citing *Sorlucco v. New York City Police Department, 971 F.2d 864, 870 (2d Cir. 1992)*. When a subordinate's decision is subject to review by the municipality's authorized policy makers, "their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988).* Thus, to determine whether MDC can be held liable for the discrimination suffered by Richardson, the court must decide who had [*20] policymaking authority at MDC and must determine if there is a material issue of fact as to whether this person, or group, participated in, or ratified the discriminatory conduct.

Determining whether an official had final policymaking authority is a legal question, to be answered on the basis of state law. *Jeffes, 208 F.3d at 57.* "The matter of whether the official is a final policymaker under state law is 'to be resolved by the trial judge *before* the case is submitted to the jury.'" *Id.* (quoting, *Jett v. Dallas Independent School District, 491 U.S. 701, 737, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1989)* (emphasis original). Mere discretion in the performance of his duties is not sufficient. However, the official need only have the power to make official policy on a particular issue. *Id.* For example, in Jeffes, the Second Circuit found that a county sheriff had final policymaking authority with respect to matters of personnel because there was no provision of state or local law that required the sheriff to answer to any other entity in the management of his jail staff. Id.

MDC is a municipal corporation chartered under the laws of [*21] the state of Connecticut, and it performs water supply maintenance, sewer services, and resource recovery. Second Am. Compl. [Dkt. No. 15]. It is composed of eight member towns in Connecticut that include Hartford, West Hartford, East Hartford, Rocky Hill, Wethersfield, Newington, Bloomfield, and Windsor. The affairs of the MDC are managed by a board of commissioners, which is composed of twenty-nine electors. Def.'s Ex. A [Dkt. No. 65] Part 1 at §§ 2-1, 2-2. Upon a review of the charter and by-laws of the MDC, it is clear that the board is the policymaking authority for MDC. Officers and employees of MDC may be removed by

Case 3:01-cv-02129-AVC    Document 45-2    Filed 02/17/2004    Page 10 of 17

2003 U.S. Dist. LEXIS 12757, *21                                                              Page 6

the board at pleasure, and the board may also appoint to any deputy any powers as the board deems necessary. Id. at §§ 2-8, 2-9. Further, the board is responsible for the development and implementation of policy concerning personnel matters. Id. Part 3 at § B6g. Although MDC has a Personnel, Pension and Insurance Committee ("Committee"), consisting of eleven commissioners of the district, this Committee only makes recommendations to the Board on matters related to salaries and wages. Id. Part 3 at § B3h. As such, it is the Board that is the policymaking [*22] authority for MDC. See *Mandell v. County of Suffolk,, 316 F.3d 368, 385* ("Here, plaintiff challenges as retaliatory employment decisions made by Gallagher, who, as the Suffolk County police commissioner, had authority to set department-wide personnel policies."); cf. *Looby v. City of Hartford, 152 F. Supp. 2d 181, 188 (D.Conn. 2001)* (finding no evidence that defendant fire chief had power to create policy with respect to employment decisions); *DeLeon v. Little, 981 F. Supp. 728, 741 (D.Conn. 1997)* (finding no municipal liability where defendant had "lack of final decision making authority over employment/personnel matters"). George Sparks, the Chief Executive Officers and Chief Operating Officer for MDC, confirms that it is the Board that has the policymaking authority. "The District Board is responsible for the development and implementation of policy concerning personnel matters." Sparks Aff. Def.'s Addendum to Rule 9(c) Stat. [Dkt. No. 64] P 9.

The defendants argue that, because Johnson, Roughan, LeBlanc, McAuliffe, and Fiorentino are not members of the board, and because all personnel policy must be authorized by the board, MDC can not be held liable [*23] for the individual actions of any of the named defendants. Id. Despite the defendants' argument that none of the individuals who Richardson alleges were responsible for the discriminatory conduct were in a position of policymaking authority, MDC may nonetheless be liable if the board ratified the discriminatory conduct and the discriminatorily-based personnel recommendations of these individuals. *City of St. Louis, 485 U.S. at 127* ("ratification would be chargeable to the municipality because their decision is final").

Taking the facts in the light most favorable to the plaintiff, there is a material issue of fact as to whether the continued harassment by Johnson was ratified by and acquiesced to by the board. The Second Circuit has previously ruled that "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials . . . and that 'municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct,'" *Zahra v. Town of Southold, 48 F.3d 674,* 685 *(2d Cir. 1995)* [*24] (citing *Batista v. Rodriguez,, 702 F.2d 393, 397*). See also *Ricciuti v. N.Y.C. Transit Auth.,, 941 F.2d 119, 123* (policy may be inferred from "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); *Turpin v. Mailet,, 619 F.2d 196, 201* ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts").

The facts presented by Richardson show that she complained about Johnson's conduct, that his supervisors knew of the problem, but that no disciplinary or corrective action was taken. Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. [Dkt. No. 67] at 3. Richardson also stated that no actions were ever taken by MDC regarding complaints as to Johnson's behavior, and that Johnson "himself told me that because he was Mr. Johnson and that his mother was the commissioner, they were not going to [*25] do shit to him and that I was only making it worse for myself." Id. at 72. Richardson also claims that, after she filed a grievance, MDC refused to hold a hearing or to process her grievance at all. Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. [Dkt. No. 51] at 33. The MDC Charter specifically states that the board is responsible for investigating any charges brought against any employee, and that the board is responsible for disciplining employees. Charter [Dkt. No. 65] § 2-17 ("The district board shall have power to supervise and investigate all . . . employees . . . and to inquire into any charges preferred against any of the . . . employees . . . ."). Given the facts presented by Richardson detailing the complaint she filed against Johnson, there is a material issue of fact as to whether the board knew of the complaint lodged against Johnson, and whether the board ratified Johnson's conduct by failing to investigate or appropriately discipline him after this formal complaint had been filed.

As evidence that the board ratified the sexual discrimination by Johnson, Richardson cites to the fact that on April 1, 1999, five days after her complaint against Johnson was filed, [*26] she was denied a step-increment. Pl.'s Rule 9(c) Statement [Dkt. No. 54] P 12. She also states that her job responsibilities were reassigned, and that she was denied a previously approved vacation day. Pl's Mem. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. No. 67] at 45 . Richardson argues that "shortly after [she] was forced to file a formal complaint because of Johnson's continued harassment, she was disciplined, suspended without pay, threatened with termination, and ultimately forced to quit her position."

Case 3:01-cv-02129-AVC   Document 45-2   Filed 02/17/2004   Page 11 of 17

2003 U.S. Dist. LEXIS 12757, *26                                              Page 7

Id. at 7. It was Johnson who was responsible for supervising Richardson, and Johnson who also evaluated her performance. Second Am. Compl. [Dkt. No. 15] P 15. It was Johnson's poor evaluations of Richardson which contributed to Richardson's denial of a step increment. Pl.'s Rule 9(c) Statement [Dkt. No. 54] P 5. Richardson has established a material issue of fact that the board had actual or constructive knowledge of Johnson's sexual discrimination, but nevertheless accepted his recommendations as a basis for denying Richardson a step increment. Such knowledge, if proven at trial, would create liability of the board. *City of St. Louis, 485 U.S. at 127.* [*27]

The MDC by-laws state that all employment decisions, including the salary classification levels of employees, are decided by the board. Def.'s Ex. A [Dkt. No. 65] Part 3 at §§ B3h, B4b. Therefore, taking the facts in the light most favorable to the plaintiff, there is a material issue of fact as to whether the adverse employment actions, such as the decision to deny Richardson pay increases, to suspend her, and to reduce her job responsibilities, were based on Johnson's discriminatorily-based recommendations, and whether the board knew of this basis, but nonetheless ratified his recommendations. *St. Louis, 485 U.S. at 127* ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

## V. MOTION TO STRIKE

The plaintiff has also moved to strike the defendants' motion for summary judgment, arguing that the motion was untimely served upon the plaintiff, and that the defendants failed to attach a Local Rule 9(c)(1) statement. "A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment [*28] motion." *Newport Elec., Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208 (D. Conn. 2001).* The moving party must be specific in regards to what it is seeking to have striken and must set forth reasons for why the materials should not be considered by the court. E.g., *FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986).* A party can make a motion to strike affidavits if they are not made on the basis of personal knowledge. *Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988).* A motion to strike can also be used to challenge documentary evidence that has not been properly authenticated. E.g., *Dedyo v. Baker Eng'g N.Y., Inc., 1998 U.S. Dist. LEXIS 132, 1998 WL 9376,* at *4 (S.D.N.Y. Jan. 13, 1998). However, "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett, 477 U.S. 317, 324-25, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).*

The plaintiff's motion to strike is hereby denied. The court does not find that the plaintiff was prejudiced by the defendants' untimely service of their motion upon the plaintiff, nor [*29] does the court find that the plaintiff was prejudiced by the defendants' reference to their earlier-filed 9(c)(1) statement. The defendants did file their motion within the time limit set by the court in its ruling on the motion for reconsideration, [Dkt. No. 61], and the plaintiff's request to file her Rule 9(c) statement out of time was granted by the court. [Dkt. No. 66]. Further, the court does not find that the defendants' reference to their earlier filed Rule 9(c) statement was prejudicial to the plaintiff, as the plaintiff had already responded to the defendants' earlier filed statement of facts. [Dkt. No. 54].

## VI. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Dkt. No. 62] is DENIED. The plaintiff's motion to strike [Dkt. No. 69] is also DENIED.

## SO ORDERED.

Dated at Bridgeport, Connecticut this 23rd day of July, 2003.

_____/s/_____ Janet C. Hall

United States District Judge

LEXSEE 1997 U.S. DIST. LEXIS 2819

JOSEPHINE C. TOWNSEND, Plaintiff, v. STATE OF NEW YORK DIVISION OF STATE POLICE, JAMES P. McMAHON, in his Official Capacity as Superintendent of the NEW YORK STATE DIVISION OF STATE POLICE, DAVID M. LUITWEILER, in his Official Capacity as former First Deputy Superintendent of the NEW YORK STATE DIVISION OF STATE POLICE, FRANCIS A. DEFRANCESCO, in his Official Capacity as Chief Inspector of the NEW YORK STATE DIVISION OF STATE POLICE, and THOMAS A. CONSTANTINE, in his Official Capacity as former Superintendent of the NEW YORK STATE DIVISION OF STATE POLICE, Defendants.

95-CV-0807 (RSP/GJD)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

*1997 U.S. Dist. LEXIS 2819*

**March 13, 1997, Decided**
**March 13, 1997, FILED**

**DISPOSITION:** [*1] The 12(b)(1) motion to dismiss plaintiff's claims contained in paragraphs 23, 24, 25, 27, 37, 38, 60, 61, 62, and 64 GRANTED. The 12(b)(1) motion to dismiss plaintiff's claims contained in paragraphs 26, 28, 29, 30, 31, 32, 33, 34, 35, 36, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, and 75 DENIED. The 12(b)(6) motion to dismiss plaintiff's first amendment claim as to defendants Constantine and Luitweiler GRANTED. The 12(b)(6) motion to dismiss plaintiff's first amendment claims as to defendants McMahon and DeFrancesco DENIED. The 12(b)(6) motion to dismiss plaintiff's claims of sexual harassment, sexual discrimination, and unlawful retaliation DENIED.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**COUNSEL:** APPEARANCES:

GREGG T. JOHNSON, ESQ., RUBERTI, GIRVIN & FERLAZZO, P.C., Attorneys for Plaintiff, Albany, New York.

MEREDITH H. SAVITT, ESQ., DAVID ROBERTS, ESQ., HON. DENNIS C. VACCO, Attorney General of the State of New York, Attorney for Defendants, Albany, New York.

**JUDGES:** ROSEMARY S. POOLER, United States District Judge

**OPINIONBY:** ROSEMARY S. POOLER

**OPINION:**

**MEMORANDUM-DECISION & ORDER**

In this civil rights action, plaintiff Josephine C. Townsend alleges that defendants harassed [*2] her and discriminated and retaliated against her in violation of Title VII and New York State's companion Human Rights Law. Townsend also seeks an injunction to prohibit defendants' use of a policy allegedly designed to prohibit her from speaking publicly about discrimination within the Division in violation of her First and Fourteenth Amendment rights. Defendants move to dismiss arguing that Townsend (1) failed to exhaust her administrative remedies and thus deprived this court of subject matter jurisdiction and (2) failed to state a claim upon which relief may be granted. Defendants' motion is granted in part and denied in part.

**BACKGROUND**

Townsend is employed as a uniformed member of the New York State Division of State Police ("Division"). Compl. P 2. In her complaint, Townsend alleged that between 1983 and 1993 certain Division employees subjected her to gender based discrimination and harassment in the form of (1) inappropriate sexual advances, compl. P 23; (2) offensive and derogatory notes, id. PP 24, 27; (3) urination on her clothing, id. P 25; (4) insubordination from male officers, id. P 27; (5) denial of timely promotions, id. PP 28, 29, 35; (6) [*3] removal of personal belongings from her locker, id. P 30; (7) a warning that filing a complaint would be detrimental to her career, id. P 32; (8) an uninvestigated complaint, id. P 34; (9) not

Case 3:01-cv-02129-AVC   Document 45-2   Filed 02/17/2004   Page 13 of 17

1997 U.S. Dist. LEXIS 2819, *3                                                    Page 2

properly pursuing disciplinary actions against offending male officers, id. P 34; (10) scheduling an unnecessary physical examination id. P 36; (11) instigating an unwarranted complaint and investigation against her, P 37; and (12) warning her against filing a complaint with the Equal Employment Opportunity Commission ("EEOC") or the State Department of Human Rights ("SDHR"), id. P 38. In addition, Townsend alleged that her supervisors were aware of some of these incidents and failed to take corrective action. Id. PP 24, 27, 31, 34.

In January 1993, Townsend filed a complaint with the EEOC and the SDHR. Compl. P 39. According to Townsend, after she filed her complaint, Division employees continued to subject her to discriminatory employment practices and also began to retaliate against her for opposing discriminatory policies. Specifically, Townsend alleged Division employees (1) refused to investigate an allegedly discriminatory selection process for the Division's [*4] masters degree program, id. PP 49, 50, 71, 72; (2) countenanced insubordination from male officers id. PP 51, 52, 58; (3) denied plaintiff a transfer to Division's Affirmative Action office, id. P 53; (4) removed and damaged Townsend's personal belongings and refused to investigate the individuals responsible, id. PP 54, 57, 59, 65; (5) failed to investigate or discipline the officer or officers involved in sending Townsend a derogatory teletype message, id. P 55; (6) failed to investigate a purposeful misdirection of Townsend's pay stub, id. P 56; (7) intimidated Townsend following her appearance on a nationally televised program, id. PP 61, 62; (8) gave her an unwarranted suspension, id. PP 63, 66, 67, 68, 69; 70; (9) denied her promotions id PP 73, 74; and (10) dismissed a valid complaint Townsend filed id. P 75.

In addition, Townsend alleged that Division's gender biased policies lead to male employees being promoted in disproportionate numbers, female complaints going uninvestigated, greater tolerance for male insubordination towards females, and disproportionate assignment preferences for male officers. Id. P 76.

**DISCUSSION** [*5]

**I. Jurisdiction**

This court has jurisdiction to hear Townsend's Title VII claims that were either "included in [her] EEOC charge or are based on conduct subsequent to the EEOC charge which is reasonably related to that alleged in the EEOC charge." *Butts v. City of New York, 990 F.2d 1397, 1401 (2d Cir. 1993)* (internal quotation omitted). Conduct is considered "reasonably related" when (1) the conduct would reasonably fall within the expected scope of an EEOC investigation of the administrative charge; (2) the employer retaliates against the employee for filing the EEOC charge; or (3) there are "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id. at 1402-03*.

Defendants argue that this court lacks jurisdiction over all claims in Townsend's federal complaint, except for her failure to promote claim. n1 As to the remainder of the claims, defendants contend that they either (1) occurred after Townsend filed her EEOC charge but are not reasonably related to her failure to promote charge, or (2) occurred before Townsend filed her EEOC charge but were not included in her EEOC charge. n2

> n1 As I discuss, defendants argue that plaintiff's failure to promote claim should be dismissed for failure to state a claim pursuant to *Fed. R. Civ. P. 12(b)(6)*.

[*6]

> n2 Defendants also argue that Townsend failed to exhaust her administrative remedies by adding defendants to the federal complaint that were not included in her EEOC charge. In her EEOC charge Townsend named only Division, while her federal complaint included defendants McMahon, Luitweiler, DeFrancesco and Constantine. The additional defendants, however, are named only in Townsend's First and Fourteenth Amendment claim that is premised on *42 U.S.C. § 1983*. Unlike Title VII claims, Section 1983 claims do not require administrative exhaustion. *Felder v. Casey, 487 U.S. 131, 148, 101 L. Ed. 2d 123, 108 S. Ct. 2302 (1988)*. Defendants' argument is therefore without merit.

**A. Townsend's Administrative Charge**

Townsend filed her charge with the EEOC on January 21, 1993. Def.'s Mem. Ex. A. In her charge, Townsend alleged that (1) her Troop Commander told her that he would not "endorse" a women for Zone Sergeant, id. P 3; (2) Townsend decided to tape record all subsequent conversations with her Troop Commander, id.; (3) a subordinate of her Troop Commander's "riffled" through her [*7] personal belongings and discovered a tape, id.; (4) the Troop Commander and the subordinate confronted her and insisted that she write a memorandum admitting that she intended to use the tape against the Troop Commander, id.; (5) an Affirmative Action Officer refused to intervene and conduct an investigation of the Troop Commander's discrimination towards her, id. P 4; and (6) her Troop Commander insisted that she undergo a physical examination and then canceled the examination when Townsend reported to the physician, id. P 5.

Case 3:01-cv-02129-AVC    Document 45-2    Filed 02/17/2004    Page 14 of 17

1997 U.S. Dist. LEXIS 2819, *7                                                      Page 3

### B. Reasonably Related

I must examine each claim in Townsend's federal complaint and determine if it was included in her EEOC charges or is "reasonably related" to that charge. See *Butts, 990 F.2d at 1402.*

#### 1. Retaliation

In paragraphs 33, 48, 49, 50, 71, and 72 of her complaint, Townsend alleged that following the filing of her EEOC charge, defendants denied her the opportunity to participate in the Division's masters degree program in retaliation for opposing Division's discriminatory polices. Because Townsend alleged that these events occurred in retaliation for her opposition to Division's alleged discriminatory policies, [*8] I find that they are reasonably related. Likewise, in paragraphs 51, 52, 54 through 59, 65, and 75, of her complaint, Townsend claimed that after she filed her EEOC charge, male officers were insubordinate, her personal belongings were tampered with, and her pay stub was purposely misdirected. Townsend alleged that in each case, Division either inadequately investigated her claim or refused to investigate her claim in retaliation for opposing the Division's discriminatory polices. Because these claims are based on a theory of retaliation, I again find that they are reasonably related to the claims alleged in the EEOC charge. I reach the same conclusion as to the factual allegations contained in paragraphs 63, and 66 through 70. In these paragraphs, Townsend alleged that defendants fabricated a charge against her and suspended her in retaliation for her opposition to the department's discriminatory polices. Therefore, defendants' motion to dismiss these factual allegations is also denied.

#### 2. Expected Scope of an EEOC Investigation

Paragraphs 53, 73, and 74, of the complaint address Division's refusal to transfer Townsend to a position in its Affirmative Action office or in its [*9] Human Resources Unit. These claims survive because they are factually similar to Townsend's failure to promote claim and would likely have been the subject of an investigation by the EEOC. Finally, the allegations raised in paragraph 35 concern Division's failure to thoroughly investigate Townsend's claims of discrimination and is retained because it logically flows from the EEOC charge.

### C. Not Reasonably Related

The claims contained in paragraphs 60, 61, and 62, do not survive as Title VII claims. In these paragraphs, Townsend discussed her appearance on a national television program and her supervisors' alleged threats of retaliation for appearing on that television program. These claims are not factually similar to the allegations contained in Townsend's EEOC charge, and the alleged retaliation is for appearing on the television program, not for filing the EEOC charge. I also do not find that these claims would be subject to the logical outgrowth of an EEOC investigation. I therefore find that Townsend failed to exhaust her administrative remedies as to these claims and, therefore, any Title VII claims based on paragraphs 60, 61, and 62 are dismissed for lack of subject [*10] matter jurisdiction. In addition, I grant defendants' motion insofar as it addresses the allegations of paragraph 64. Paragraph 64 discusses a supervisor's favorable evaluation of an individual Townsend accused of insubordination. This claim is not reasonably related to Townsend's EEOC charge.

### D. Pre-EEOC Filing Claims

In her federal complaint, Townsend also included acts which occurred prior to her EEOC filing but were not contained in the EEOC charge and are not factually similar to the allegations presented in her EEOC charge. These claims concern: (1) unwelcome sexual advances from a male counselor during Townsend's training at Division's police academy in 1983, compl. P 23; (2) harassment by the same male counselor while Townsend was stationed at Division's North Syracuse station in 1983 id. P 24; (3) urination in her Stetson hat in 1984, id. P 25; (4) an uninvestigated and unpunished incident of insubordination by a male trooper against Townsend in 1992 id. P 27, (5) an allegedly unfounded complaint filed against Townsend in November 1992, id. P 37, and (6) a warning by the Division's affirmative action officer not to file her EEOC charge in December 1992, [*11] id. P 38.

The three-factor reasonably-related exception I applied to Townsend's post-EEOC claims does not apply to her pre-EEOC claims. *Butts, 990 F.2d at 1401.* Because the claims discussed in paragraphs 23, 24, 25, 27, 37, and 38 were not included in Townsend's EEOC charge, I am without jurisdiction to consider them and they are dismissed. *Id. at 1401.*

However, paragraphs 26, 28, 29, 30, 34, and 36, contain allegations made in the EEOC charge or describe events leading up to the filing of the EEOC charge and therefore survive defendants' Rule 12(b)(1) motion. Likewise, the claims contained in paragraphs 31 and 32 concern the failure of the Affirmative Action officer to consider Townsend's claims against her Troop Commander and are included in the EEOC charge.

### E. Conclusion

Based on this discussion plaintiff's Title VII claim is dismissed to the extent it rests on factual allegations contained in paragraphs 23, 24, 25, 27, 37, 38, 60, 61, 62, and 64. However, her Title VII claim survives to the extent it rests on the factual allegations contained in paragraphs

26, 28, 29, 30, 31, 32, 33, 34, 35, 36, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 63, 65, 66, 67, [*12] 68, 69, 70, 71, 72, 73, 74, and 75.

## II. Statute of Limitations

Under Title VII, a plaintiff in New York must bring an administrative charge within 300 days of an allegedly unlawful employment practice. See Butts, at 1401. Defendants, therefore, argue that Townsend's claims of sexual harassment in 1983 and 1984, compl. PP 23-25, are barred by the applicable statute of limitations. However, defendants' argument is now moot in light of my dismissal of the Title VII claim insofar as it rests on allegations contained in paragraphs 23, 24, and 25 for lack of subject matter jurisdiction.

## III. Failure to State a Claim

Defendants also argue that Townsend failed to state a claim for sexual harassment, sexual discrimination, and unlawful retaliation, and move to dismiss these claims pursuant to *Fed. R. Civ. P. 12(b)(6)*. The purpose of a motion to dismiss is to determine the legal feasibility of the complaint and not to weigh the evidence which might be offered in its support. *Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)*. The plaintiff need not come forward with proof of her allegations, however, she must allege facts that, taken as true, constitute a claim. [*13] See *Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)*, cert. denied, *503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992)*. The court is further required to view all allegations raised in the complaint in the light most favorable to the non-moving party, *Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)*, and "must accept as true all the factual allegations in the complaint." *Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 164, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993)*. Moreover, in the context of Title VII, a plaintiff does not need to identify in her EEOC charge the precise theory of discrimination she will pursue in her civil complaint. *Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992)*.

### A. Townsend's Claim for Sexual Harassment

In order to state a claim for sexual harassment based on a hostile environment, Townsend must show that: (1) she belongs to a protected class, (2) she was the subject of unwelcome harassment, (3) the harassment was based on her sex, (4) the sexual harassment affected a term, condition or privilege of her employment, and (5) her employer knew or should have known of the harassment and failed to take remedial action. *Trotta* [*14] *v. Mobil Oil Corp., 788 F. Supp. 1336, 1348, 1351 (S.D.N.Y. 1992)*.

I find that Townsend has stated a claim for sexual harassment. First, she belongs to a protected class. Second, she alleged that on repeated occasions following the filing of her EEOC charge, she was subjected to unwelcome sexual harassment in the form of derogatory messages, insubordination by male officers, and vandalism. Compl. PP 54-59, 65. Third, defendants allegedly failed to investigate the incidents, failed to take corrective action, and failed to punish those responsible because of plaintiff's gender. Id. PP 54-59. Fourth, this harassment allegedly affected the way in which she interacted with both superiors and subordinates. Id. P 51. Fifth, plaintiff's supervisors at Division were allegedly notified of the harassing conduct and failed to take remedial action. Id. at PP 51, 52, 54-59, 65, and 75. n3

> n3 Defendants also argue that plaintiff's sexual harassment claim is barred by the applicable statute of limitations because the instances of harassment occurred in 1983 and 1984. I disagree. Plaintiff has alleged sufficient harassing conduct following the filing of her EEOC charge to sustain her claim without relying on the alleged 1983-84 conduct.

[*15]

### B. Townsend's Claim of Gender Discrimination

Defendants argued that Townsend failed to state a claim for gender discrimination because she did not satisfy the fourth prong of the McDonnell Douglas prima facie case. See *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)* (race discrimination). According to McDonnell Douglas, in order to state a prima facie case of gender discrimination, Townsend must show that (1) she belongs in a protected class, (2) she applied for and was qualified for a job for which Division was seeking applicants, (3) despite her qualifications, she was rejected, and (4) the position remained open and Division continued to seek applicants from persons of complainant's qualifications. Id.

There is no dispute that Townsend satisfied prongs one through three. First, as a women Townsend belongs to the protected class. Second, she alleges that in May, 1992, defendants promised her a promotion to Zone Sergeant. Compl. P 26. Third, despite Townsend's qualifications for the position of Zone Sergeant, defendants allegedly denied her the promotion based on her gender. Id. P 28. However, defendants contend [*16] that Townsend did not satisfy the fourth prong because she failed to allege that Division promoted a male in her place.

I reject defendants' argument. First, it is now well established that the "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248,*

*253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)*. Second, Townsend need not establish the fourth prong of McDonnell Douglas, because she alleged direct evidence of discriminatory animus. *Abbasi v. Herzfeld & Rubin, P. C., 1995 WL 303603 at *3 (S.D.N.Y.)* (citing *Thermidor v. Beth Israel Medical Ctr., 683 F. Supp. 403, 409-10 (S.D.N.Y. 1988))*. In her complaint, Townsend alleged that her Troop Commander told her that he would not "endorse" a women as Zone Sergeant. Def.'s Mem. Ex. A P 3. At the pleadings stage, Townsend's disparate treatment claim requires only that she allege that "she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." See *Burdine, 450 U.S. at 253*. Townsend has stated a prima facie claim.

### C. Townsend's Claim [*17] of Retaliation

Defendants also contend that Townsend failed to state a claim for unlawful retaliation. In order to state a claim of unlawful retaliation, Townsend must show that (1) she was engaged in a protected activity, (2) her employer was aware of the activity, (3) an adverse employment action occurred, and (4) a causal connection existed between the protected activity and the adverse employment action. *Hollander v. American Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990)*.

I find that Townsend stated a claim of unlawful retaliation. First, the filing of Townsend's internal complaint in December of 1992 and the filing of her EEOC charge were protected activities. *Kotcher v. Rosa and Sullivan Appliance Center, Inc. 957 F.2d 59, 65 (2d Cir. 1992); Yerdon v. Henry, 91 F.3d 370, 378 (2d Cir. 1996)*. Second, her employer knew of the internal charges and the EEOC charge. Compl. PP 31, 34, 40-47. Third, defendants allegedly denied plaintiff a transfer in September 1993, denied her the opportunity to become senior investigator or Staff Sergeant in October and November 1994, and denied her the opportunity to participate in the 1994-95 Masters Degree program. Compl. PP 53, 71, [*18] 73. Finally, Townsend alleged the requisite causal connection by claiming that as a result of her charges she did not receive a timely promotion and was not hired for other jobs for which she applied. Compl. PP 31, 35, 53, 73, 74.

### D. Townsend's First Amendment Claim

In her First Amendment claim, Townsend sought prospective relief in the form of an injunction to prohibit defendants from continuing a policy allegedly designed to stop her from speaking publicly about discrimination within the Division. See Compl. PP 78-98. Defendants do not challenge the existence of the policy, but rather, argue that Townsend was merely required to afford the "Division the courtesy of notifying it before contacting outside entities regarding complaints of discrimination." Def.'s Mem. at 18.

A Section 1983 claim "is not precluded by a concurrent Title VII claim, when the former is based on substantive rights distinct from Title VII." *Carrero v. New York City Hous. Auth., 890 F.2d 569, 576 (2d Cir. 1989)*. In the area of First Amendment speech, it is established that "when an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of [*19] a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993)* (quoting *Connick v. Myers, 461 U.S. 138, 147, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983))*, cert. denied, *510 U.S. 1164 (1994))*.

However, the Second Circuit has recognized that a First Amendment claim may exist against a public employer where (1) there is an "indication that the plaintiff wanted to debate issues of sex discrimination," (2) the plaintiff sought "relief against pervasive or systematic misconduct by a public agency or public officials," or (3) the plaintiff's suit was "part of an overall effort to correct allegedly unlawful practices or bring them to public attention." *Saulpaugh, 4 F.3d at 143* (quoting *Yatvin v. Madison Metro School Dist., 840 F.2d 412 (7th Cir. 1988))*.

In her complaint, Townsend alleged (1) that Division's discriminatory policies affect a wide range of female employees, compl. PP 42-47, 76, and (2) that the policy enacted to curtail speech [*20] was designed specifically to stop Townsend and others from discussing alleged discriminatory practices within the department. Id. at PP 80-95. Townsend also argued that the offending policies are "so broad in scope, so vague in definition, and so obviously targeted towards employees like [her] . . . they are facially unconstitutional." Pl.'s Mem. 22-23.

I can grant defendants' 12(b)(6) motion only if "it appears beyond doubt that [Townsend] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*. At this stage of the proceedings, Townsend has stated a First Amendment claim and defendants motion is denied.

### E. First Amendment Claim Against Defendants Constantine and Luitweiler

Townsend has failed, however, to state a First Amendment claim against defendants Constantine and Luitweiler. Townsend's First Amendment claim seeks only injunctive relief and names as defendants (1) McMahon, in his official capacity as Superintendent

Case 3:01-cv-02129-AVC   Document 45-2   Filed 02/17/2004   Page 17 of 17

1997 U.S. Dist. LEXIS 2819, *20                                      Page 6

of the New York State Division of State Police, (2) Luitweiler, in his official capacity as former First Deputy Superintendent of the [*21] New York State Division of State Police, (3) DeFrancesco, in his official capacity as Chief Inspector of the New York State Division of State Police, and (4) Constantine, in his official capacity as former Superintendent of the New York State Division of State Police. Compl. PP 96-98. Pursuant to the Federal Rules of Civil Procedure, when a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party." *Fed. R. Civ. P. 25(d)(1)*. In this case, defendant McMahon has replaced Constantine in his official capacity. As such, injunctive relief if it lies at all, lies against McMahon. Therefore, I must dismiss the claim against Constantine. Likewise, because injunctive relief cannot lie against Luitweiler in his former official capacity, I dismiss the claim against him. n4

> n4 Plaintiff has not provided the court with the name of Luitweiler's successor. If plaintiff intends to substitute a different defendant for Luitweiler, she has 20 days from the date of this Memorandum Decision and Order in which to do so.

[*22]

### IV. Supplemental State Law Claims

Finally, claims five, six, and seven of Townsend's complaint are New York State's equivalent to plaintiff's Title VII claims. A district court should exercise jurisdiction over supplemental state claims it they derive from a common nucleus of operative facts and judicial economy and fairness would be achieved. *United Mine Workers v. Gibbs, 383 U.S. 715, 725-27, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966)*; see also *Promisel v. First American Artificial Flowers, Inc., 943 F.2d 251, 254 (2d Cir. 1991)*, cert. denied, *502 U.S. 1060, 117 L. Ed. 2d 110, 112 S. Ct. 939 (1992)* (holding that district courts are empowered to hear a state law claims under New York Human Rights Law when they "clearly derive from the same nucleus of operative fact."). I find the exercise of supplemental jurisdiction is appropriate as the claims share a common nucleus of operative facts and judicial economy would be advanced by their joint trial.

### CONCLUSION

Based on the foregoing discussion, it is

**ORDERED** that the 12(b)(1) motion to dismiss plaintiff's claims contained in paragraphs 23, 24, 25, 27, 37, 38, 60, 61, 62, and 64 is **GRANTED,** and [*23] it is further

**ORDERED** that the 12(b)(1) motion to dismiss plaintiff's claims contained in paragraphs 26, 28, 29, 30, 31, 32, 33, 34, 35, 36, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 63, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, and 75 is **DENIED,** and it is further

**ORDERED** that the 12(b)(6) motion to dismiss plaintiff's first amendment claim as to defendants Constantine and Luitweiler is **GRANTED,** and it is further

**ORDERED** that the 12(b)(6) motion to dismiss plaintiff's first amendment claims as to defendants McMahon and DeFrancesco is **DENIED,** and it is further

**ORDERED** that the 12(b)(6) motion to dismiss plaintiff's claims of sexual harassment, sexual discrimination, and unlawful retaliation is **DENIED,** and it is further

**ORDERED** that this court has supplemental jurisdiction to hear plaintiff's state law claims.

**IT IS SO ORDERED.**

Dated: March 13, 1997

Syracuse, New York

ROSEMARY S. POOLER

United States District Judge