UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DEBRA COSENTINO, et al., | X : | MASTER CAPTION |
|  | : | CASE NO. 3:01CV2129 (AVC) |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| PITNEY BOWES INC, and IMAGISTICS INTERNATIONAL, INC., | : : | MARCH 11, 2004 |
|  | : |  |
| Defendants. | : |  |
|  | X |  |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Lawrence Peikes (ct07913)
Wiggin and Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600
(203) 363-7676 (fax)

Attorneys for Defendants
PITNEY BOWES INC. and
IMAGISTICS INTERNATIONAL INC.

To the extent plaintiffs purport to deny any of the material facts set out in defendants' Local Rule 56(a)1 Statement, the record evidence cited by plaintiffs does not establish a *genuine* dispute within the meaning of Fed. R. Civ. P. 56.[1] (See Defendants' Response to Plaintiffs' Local Rule 56(a)2 Statement, filed herewith). And, plaintiffs' portrayal of virtually every factual allegation to surface from their deposition testimony as *material* runs directly counter to fundamental principles of summary judgment jurisprudence.[2] In the end, there is no *genuine* issue of *material* fact because plaintiffs' "complete failure of proof concerning an essential element of [their] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

### I.  Sexual Harassment Claim – The "Severe or Pervasive" Proof Requirement

Plaintiffs cite not a single case supportive of the proposition that momentary physical contact of the sort alleged by Ms. Cifatte and Ms. Moore, unaccompanied by any indicia of predatory intent, somehow equates with sexual harassment. Rather, the fundamental precept that emerges from the case law in this Circuit is that, in and of itself, "[h]armless body contact of an inadvertent non-sexual nature falls outside the broadest parameters of sexual harassment." Lucas v. South Nassau Communities Hospital, 54 F. Supp. 2d 141, 147 (E.D.N.Y 1998).

For instance, the Second Circuit held in Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998) that a far more offensive incident of physical touching than anything alleged by Ms. Cifatte or Ms. Moore -- namely, a male supervisor's "use of papers held in his hand to touch [the plaintiff's] breasts" -- even when coupled with a sexually explicit comment "regarding [the plaintiff's] posterior" was "sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded [the plaintiff's] work environment," nor were they

---

[1] Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003)( "A fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'")(Citation omitted).

[2] Id. ("[A] fact is 'material' if it 'might affect the outcome of the suit under the governing law.'")(Citation omitted).

1

"together or separately, of sufficient severity to alter the conditions of [the plaintiff's] employment without regard to frequency or regularity." Id. at 768.

More recently, in Payano v. Fordham Tremont CMHC, 287 F. Supp. 2d 470 (S.D.N.Y. 2003), the district court rejected a sexual harassment claim predicated on the male plaintiff's allegations that his female supervisor "pulled [his] cheeks on one occasion, and she put her arms around [his] waist on several occasions in the summer of 2001," explaining that "the Court can make no reasonable inference[] that such conduct is particularly 'sever[e],' 'physically threatening or humiliating,' or that it 'unreasonably interfere[d] with [plaintiff's] work performance.'" Id. at 476 (Citation omitted).

Similarly, in Winiarski v. Connecticut Dep't of Public Health, 273 F. Supp. 2d 189 (D. Conn. 2003), Judge Chatigny found the following improprieties by the plaintiff's supervisor "not sufficiently pervasive or severe to create a hostile working environment under Title VII": (1) the supervisor jokingly accused plaintiff of flirting; (2) "on a few occasions when [plaintiff] spoke with [her supervisor], he spread his legs in a way she found suggestive;" and (3) "at a retirement party, [the supervisor] picked food off [plaintiff's] plate, put his arm around her, pulled her toward him, tickled her waist, and called her 'a difficult woman' when she pulled away." Id. at 192-93 (Citations omitted).

According to settled precedent, therefore, the isolated instances of incidental contact alleged by Ms. Cifatte and Ms. Moore does not raise the specter of a Title VII or FEPA violation. (Defs' Mem. at pp. 20-24). Beyond that, plaintiffs do no more than artificially magnify the incidence and gravity of the sporadic incidents of alleged abusive conduct depicted in their sworn testimony via conclusory allegations that Mr. Simpson's "offensive behavior was very frequent and quite severe" (Pltfs' Mem. at p. 8), and that he "had temper tantrums and went into rages" (Pltfs' 56(a)2 Statement (hereinafter "Statement") ¶ 23), and "had a habit of raising his voice in general" (Statement ¶ 24), and "hitting the file cabinets" (Statement ¶ 31). On summary

judgment, however, "[o]nce the moving party has met its burden, in order to defeat the motion the nonmoving party must 'set forth *specific facts* showing that there is a genuine issue for trial,' and present such evidence that would allow a jury to find in his favor." Lyon v. Jones, 260 F. Supp. 2d 507, 510-11 (D. Conn. 2003)(Emphasis added)(Citations omitted). Merely citing a select few examples of allegedly harassing conduct, buttressed by a generic characterization of the offending behavior as commonplace, with nothing further in the way of particulars, is not enough because such a proffer is "lacking in the 'concrete particulars' required to defeat summary judgment." Cameron v. Community Aid For Retarded Children, Inc., 335 F.32 60, 66 (2d Cir. 2003)(Citation omitted).[3]

"To overcome summary judgment on [their] hostile work environment claim, [plaintiffs] must present evidence from which a reasonable jury could find that [Mr. Simpson's] conduct towards [them] *was more than merely offensive, immature or unprofessional*, for conduct that does not exceed that threshold of severity is insufficient to constitute a prima facie case of sexual harassment. The conduct 'must be extreme and not merely rude or unpleasant' before it can be said to have, in an objective sense, affected the terms and conditions of employment." Henthorn v. Capitol Communications, Inc., __ F.3d __, 2004 WL 405730, at *3 (8th Cir. March 5, 2004) (Emphasis added)(Citations and footnote omitted). At worst, the evidence of record, viewed in a

---

[3] Dawson v. County of Westchester, 274 F. Supp. 2d 364, 375 (S.D.N.Y. 2003)(plaintiff could not defeat summary judgment by simply characterizing harassing behavior as "constant"); Hodoh-Drummond v. Summit County, 84 F. Supp. 2d 874, 882 (N.D. Ohio 2000)(plaintiff's allegations that she was subjected to slurs on "numerous occasions" and "verbally harassed ... 'nonstop for approximately eight (8) years,'" were "too vague to support a claim that the alleged comments were severe or pervasive enough to create a hostile work environment. Although general allegations may suffice to survive a motion to dismiss, it is the plaintiff's burden on summary judgment to come forward with sufficiently particularized evidence to support her claims.").

3

light most favorable to plaintiffs, does not allow for a determination that plaintiffs were subjected to "severe or pervasive" harassment within the meaning of Title VII and the FEPA.[4]

## II. Sexual Harassment Claim – The "Because of Sex" Proof Requirement

Plaintiffs' reliance on isolated examples of Mr. Simpson's alleged momentary physical contact with Ms. Cifatte and Ms. Moore, and negative remarks ostensibly uttered by him about plaintiffs as a group, as evidence that his alleged mistreatment of plaintiffs was motivated by anti-female animus is legally misplaced.

Merely "touching a person briefly in conversation is not inherently sexual." Moran v. Fashion Institute of Technology, 2002 WL 31288272, at *6 (S.D.N.Y. Oct. 7, 2002). And plaintiffs do not cite so much as one objective example of a sexual overture by Mr. Simpson, a salacious remark, a request for sexual favors, a hint of an interest in pursuing a personal or sexual relationship, or any other indicator of a lewd quality to the incidents of fleeting contact complained of by Ms. Cifatte and Ms. Moore. Rose v. Panolam Industries Int'l, Inc., __ F. Supp. 2d __, 2004 WL 212914, at *5 (D. Conn. Feb. 1, 2004)(dismissing racial harassment claim on summary judgment for failure to demonstrate required nexus between coarse language and plaintiff's race where "neither [plaintiff's supervisor] nor her co-worker ... used any racial slurs, told any racial jokes, or used any racial stereotypes.").

Plaintiffs' contention that Mr. Simpson's alleged gender bias is implicit in his reference to them collectively as "you women" or "the women" or "you girls" finds no support in either

---

[4] See also Bailey v. Synthes, 295 F. Supp. 2d 344, 358 (S.D.N.Y. 2003)(incidents including CEO's "display of images of male genitalia in his slides from Bhutan," his "sexually suggestive dancing with another female staff member," and supervisor's "recounting to [plaintiff] of his sexual experience with a nurse ... are neither severe nor pervasive enough to meet [plaintiff's] burden of showing that her work conditions were thereby altered."); Pagan v. New York State Div. of Parole, 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003)("Even if Cohen called Pagan a 'fat Puerto Rican' twice rather than once, the series of disparaging remarks attributed to him clearly does not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment under Title VII.")(Citations omitted); DeMars v. O'Flynn, 287 F. Supp. 2d 230, 245 (W.D.N.Y. 2003)(singular sexual remark coupled with "question to plaintiff about whether or not she watched soap operas, and [a] passing reference to plaintiff's 'pretty face,' do not, separately or together, rise to the level of a hostile work environment.")(Citation omitted).

4

law or logic.[5] Indeed, at deposition, plaintiffs repeatedly referred to themselves as the "girls" or the "women." (See, e.g., Moore Dep. at pp. 97, 127, 131, 148, 162, 172, 173; Cifatte Dep. at pp. 193, 198; Cosentino Dep. at pp. 268-69; Buonincontra Dep. at pp. 84, 169, 234; Benton Dep. at pp. 82, 92, 101, 105, 172, 181, 208). Just like plaintiffs, Mr. Simpson used the term "women" or "girls" as a descriptor of this particular group of persons, and not as some expression of disdain for the opposite sex as a whole.[6]

Part II of plaintiffs' Local Rule 56(a)2 Statement only serves to confirm that each of the abusive actions attributed to Mr. Simpson, and cast in the garb of sexual harassment, were as a matter of undisputed fact triggered by business-related concerns, not gender. For example:

- The lynchpin of plaintiffs' case is the incident of August 30, 2000, when Mr. Simpson allegedly berated Ms. Cifatte in the ECO Cartridge work area and again in his office. (Statement ¶¶ 36-37). This outburst was, all agree, immediately preceded by Ms. Cifatte's tired excuse that her computer was down, about which Mr. Simpson had been hearing for weeks. (Simpson Aff. ¶¶ 10-11; Cifatte Dep. at p. 180). Mr. Simpson's reaction, even if extreme, plainly was reflexive. Nothing about this exchange suggests Mr. Simpson became angry at Ms. Cifatte because she is a woman.

- In depicting an incident when Mr. Simpson supposedly lashed out at Ms. Buonincontra (Statement ¶ 41), plaintiffs neglect to mention that Mr. Simpson only turned angry after Ms. Buonincontra described him as a "Chinese water torture," which she admits was wholly inappropriate. (Buonincontra Dep. at pp. 129-32). Again, it is undisputed that Mr. Simpson was reacting in a knee-jerk fashion to a display of disrespect by a subordinate, not singling out Ms. Buonincontra on account of her gender.

- Similarly, it is undisputed that a separate angry outburst by Mr. Simpson directed at Ms. Buonincontra was precipitated by his discovery that Ms. Buonincontra had gone outside the Office Systems division and registered a complaint about him

---

[5] Steinhauer v. DeGolier, __ F.3d __, 2004 WL 343518, at *1, 3-4 (7th Cir. Feb. 24, 2004)(affirming summary judgment on reverse gender discrimination claim and finding no indicia of anti-male bias in (i) a female supervisor's pronouncement "that she wanted to replace the male project team leaders" because, akin to the matter *sub judice*, "the project department consisted of all men" or (ii) the fact that the female supervisor "used the word 'guys' and the phrase 'good old boys' club,'" because "even assuming she used those terms to refer only to men, there is nothing inherently anti-male about those phrases, and their use in no way creates a reasonable inference that sex motivated an employment decision, any more than the use of 'gals' or 'good old girls' club' would indicate an anti-female animus.")(Citations omitted).

[6] To illustrate the point, Ms. Moore, in recounting a discussion she and Mr. Simpson had with a representative of the human resources department, testified that: "And Gary even said to her, '*These women* are like a cancer. They're just poison." (Moore Dep. at p. 145)(Emphasis added).

5

with the corporate human resources department. (Statement ¶ 44). Here, too, by plaintiffs' own account, Mr. Simpson's disaffection bears no logical connection to gender.

- Plaintiffs' allegation that Mr. Simpson responded to a question posed by Ms. Benton by rhetorically asking whether she had Alzheimer's disease (Statement ¶ 46) likewise generates no inference of discriminatory animus. While perhaps insensitive and uncalled for, this impromptu dig is unquestionably gender-neutral.

The balance of plaintiffs' Local Rule 56(a)2 Statement reads like a laundry list of grievances about Mr. Simpson's management style. For instance, plaintiffs complain that Mr. Simpson offered commission incentives and then reneged (Statement ¶¶ 61-62); refused to address the problems with the customer database (¶¶ 74-75); nitpicked when it came to awarding commission credit (¶¶ 68, 70, 72); unexpectedly became angry and occasionally used foul language (¶¶ 26, 36, 41, 45); gave them a hard time about taking extended breaks (¶ 57); was overly critical of their performance (¶¶ 81-84, 87, 90-91); was insensitive to their personal needs (¶ 54); permitted Ms. Cifatte and Ms. Benton to resign on two days, rather than the customary two weeks, notice (¶ 55); unfairly accused Ms. Cifatte and Ms. Benton of unprofessional conduct (¶ 59), and so on. Whether plaintiffs' complaints about Mr. Simpson are well-founded or not, "this evidence begs the question of why []he criticized and put down the [wo]men ..." Steinhauer, at *3.[7]

Plaintiffs' allegations that Mr. Simpson singled out Mr. Schneider for praise more often than he did any of them, that he and Mr. Schneider discussed sports in the office, and that the two of them attended a sporting event together, does nothing to bridge the evidentiary divide and indeed runs counter to the U.S. Supreme Court's mandate that "courts and juries [ ] not mistake

---

[7] The only truly sexist remark attributed to Mr. Simpson was, as recounted by Ms. Cifatte, to the effect that: "Women were made to stay home and take care of their children and cook for their husbands." Ms. Cifatte, however, characterized Mr. Simpson's alleged comment in this regard, ostensibly made at a social lunch attended by all of the ECO Cartridge Group employees, as "sarcastic." (Cifatte Dep. at pp. 291-92). Considering the undisputed fact that Mr. Simpson hired an almost exclusively female staff, no reasonable juror could possibly conclude that the sentiment allegedly expressed by him at this particular lunch gathering was genuine as opposed to a poor attempt at humor.

6

ordinary socializing in the workplace ... for discriminatory 'conditions of employment.'" <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). In the absence of evidence that Mr. Simpson treated Mr. Schneider better than plaintiffs in some tangible way -- such as by giving him relatively favorable evaluations, or awarding him commission credits under circumstances where credit was denied to plaintiffs, or relaxing the quotas in Mr. Schneider's case, or allowing Mr. Schneider access to a superior customer database -- of which there is none (Simpson Aff. ¶¶ 6-8), the mere fact that Mr. Simpson got along with Mr. Schneider, and butted heads with plaintiffs, cannot possibly give rise to an inference of gender-based discrimination. <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001)("In determining whether an employee has been discriminated against 'because of *such individual's* ... sex,' the courts have consistently emphasized that the ultimate issue is the reason for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace.")(Emphasis in original)(Citations omitted); <u>Grey v. City of Norwalk</u>, __ F. Supp. 2d __, 2004 WL 231171, at *10 (D. Conn. Feb. 4, 2004)("... Grey's bare allegation that she was treated differently from males ... is insufficient support for her case to go to a jury on sex discrimination.").[8]

---

[8] The Second Circuit's recent decision in <u>Hayut v. State University of New York</u>, 352 F.3d 733 (2d Cir. 2003), upon which plaintiffs heavily rely, is entirely inapposite. There, unlike here, the abusive conduct in question was, as the Court explained, inherently sex-based: "Targeting Hayut for her likeness to [Monica] Lewinsky was, without question, driven by Hayut's gender. The 'Monica' nickname served as a springboard for yet more vulgar 'cigar,' 'weekend,' and 'lipstick' comments, which were also not likely to have been uttered but for Hayut's gender." <u>Id.</u> at 748. The Court of Appeals further "note[d] that Young's remarks were potentially taking advantage of an offensive societal stereotype of the woman underling who uses her sexuality with a person in authority to further her career. The existence and arguable reference to such a stereotype makes Young's comments more likely to be gender-based than sexually-charged comments which would as readily be addressed to males as well as females." <u>Id.</u> at 748, n.7 (Citations omitted). While "the Nation's antidiscrimination laws are undoubtedly aimed at 'the problem of inaccurate and stigmatizing stereotypes' ... ," <u>Raytheon Co. v. Hernandez</u>, __ U.S. __, 124 S. Ct. 513, 520 n.7, 157 L. Ed. 2d 357 (2003)(Citation omitted), no such stereotypical thinking is inherent, or even implicit, in Mr. Simpson's alleged reference to plaintiffs as a "cancer," or his alleged remark that plaintiffs made him "sick," or any other comment attributed to him by plaintiffs. <u>Cf.</u> <u>Weinstock v. Columbia University</u>, 224 F.3d 33, 44 (2d Cir. 2000)("It is indefensible to conclude that an employer's use of the word 'nice' evidences gender discrimination" because, "'nice'" and 'nurturing' are simply not qualities that are stereotypically female.")(Citation omitted).

7

"Although this court must draw all inferences in favor of the plaintiff's claim, those inferences must be reasonable." Dreamcatcher Software Development, LLC v. Pop Warner Little Scholars, Inc., 298 F. Supp. 2d 276, 289 (D. Conn. 2004)(Covello, J.)(Citation omitted). See also Candelario-Ramos v. Baxter Healthcare Corp. of Puerto Rico, Inc., __ F.3d __, 2004 WL 415276, at *2 (1st Cir. March 8, 2004)("Whether the evidence in this case created a jury issue on improper motive depends simply on analyzing the sworn testimony and documents presented on summary judgment and deciding what *commonsense inferences* they permit.")(Emphasis added). Plaintiffs have come forward with no "circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002)(Citations omitted). "At best, the speculative evidence rises to the level of mere suspicion [that Mr. Simpson harbored gender-based animus], which, of course, is insufficient to defeat summary judgment." Dreamcatcher Software, 298 F. Supp. 2d at 289.[9]

### III. Negligent Supervision Claim

In the sexual harassment context, negligence means the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000)(Citation and internal quotation marks omitted). Plaintiffs do not contend that defendants offered them no means of redress; to the contrary, it is undisputed that defendants maintained strict policies prohibiting sex-based and other forms of discriminatory harassment. Nor do plaintiffs allege that once put on notice of Mr. Simpson's alleged conduct, defendants "did nothing about it."

---

[9] See also Cameron, 335 F.3d at 63 ("'[P]urely conclusory allegations of discrimination, absent any concrete particulars,' are insufficient.")(Citation omitted); Soderberg v. Gunther Int'l, Ltd., 2004 WL 57380, at *4 (D. Conn. Jan. 7, 2004)("Summary judgment against a plaintiff in an employment discrimination case is appropriate if the plaintiff offers only 'unsupported assertions,' 'conjecture or surmise,' or 'conclusory statements' to support an essential element of her case.")(Citation omitted).

Thus, plaintiffs do not dispute that in the immediate aftermath of Ms. Benton's complaint to human resources about the August 30, 2000 incident involving Ms. Cifatte, defendants conducted an investigation and disciplined Mr. Simpson. (Statement ¶ 39; Defs' Mem. at p. 5). While plaintiffs may quarrel with the ultimate effectiveness of defendants' remedial measures, Title VII jurisprudence makes plain that "[a]n employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting sexually harassing conduct." Caridad v. Metro-North R.R., 191 F.3d 283, 295 (2d Cir. 1999).

There is no support in the record for plaintiffs' naked allegation that "[t]he jury could also find that Plaintiffs repeatedly told Human Resources personnel about incidents of harassment, and told them how unhappy they were and described the harm that Mr. Simpson had caused." (Pltfs' Mem. at p. 19). Indeed, in their Local Rule 56(a)2 Statement, plaintiffs identify only a handful of occasions aside from Ms. Benton's incident-specific complaint in early September 2000, and disclosures made during the ensuing investigation, when any grievances were registered with the human resources department about Mr. Simpson. Significantly, every such complaint concerned business-related issues, such as a commission dispute, a disciplinary action, an evaluation, or the shortcomings of the customer database. (Statement ¶¶ 70, 80-81, 121, 123, 125, 129, 131-33). No gripe was registered by plaintiffs, or any of them, about conduct on Mr. Simpson's part that could remotely be construed as sexually harassing. (See also Defs' Mem. at p. 5).[10]

---

[10] Plaintiffs allege in Paragraphs 108 and 127 of their Local Rule 56(a)2 Statement that Ms. Moore informed Ms. Stevens of the human resources department about the alleged incident in Mr. Simpson's office when his rear end made momentary contact with hers. The cited passage from Ms. Moore's deposition, however, is at best ambiguous as to whether any such report was ever made. In any event, Ms. Moore acknowledged that human resources quickly responded to whatever complaint she did register at the time. (Moore Dep. at pp. 130-37).

On this record, no reasonable jury could possibly conclude that defendants failed to act in a manner designed to correct the problem, so as to be negligent. See, e.g., Caridad, 191 F.3d at 295 (by promulgating sexual harassment policy and endeavoring to investigate and remedy complaints, employer exercised reasonable care); Walton v. Johnson & Johnson Services, Inc., 347 F.3d 1272, 1288-89 (11th Cir. 2003)(same); Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27, 34-35 (1st Cir. 2003)(same); Scarberry v. ExxonMobil Oil Corp., 328 F.3d 1255, 1259 (10th Cir. 2003)(same); cf. Ayers v. State of Connecticut Judicial Branch, 91 Fair Empl. Prac. Cas. (BNA) 1161, 1163-64 (D. Conn. 2002)(jury question existed as to whether employer was negligent where sexual harassment complaints were investigated only belatedly and no remedial or disciplinary action was taken).

### III. Conclusion

For the foregoing reasons, and for the reasons stated in defendants' moving papers, there are no material facts in dispute as to any of plaintiffs' claims and, consequently, summary judgment is properly entered in defendants' favor and plaintiffs' complaint dismissed in its entirety, with prejudice.

    Respectfully submitted,

    DEFENDANTS
    PITNEY BOWES INC. and
    IMAGISTICS INTERNATIONAL INC.

    _____
    Lawrence Peikes (ct07913)
    Wiggin and Dana LLP
    Their Attorneys
    400 Atlantic Street
    P.O. Box 110325
    Stamford, CT  06911-0325
    (203) 363-7600
    (203) 363-7676 (fax)
    lpeikes@wiggin.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment was served by first-class U.S. mail, postage prepaid, on this 11th day of March, 2004, on:

>William B. Barnes, Esq.
>Rosenstein & Barnes
>1100 Kings Hwy. East
>Fairfield, CT 06432

_____
Lawrence Peikes

\15058\410\83678.2