UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBRA COSENTINO, et al., | X : | MASTER CAPTION |
| Plaintiff, | : : : | CASE NO. 301CV2129 (AVC) |
| v. | : : | |
| PITNEY BOWES INC, and IMAGISTICS INTERNATIONAL, INC., | : : : | MARCH 11, 2004 |
| Defendants. | : X | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' LOCAL RULE 56(a)2 STATEMENT

In their counter-statement submitted pursuant to D. Conn. L. Civ. R. 56(a)2, plaintiffs purport to deny certain material facts set forth in Defendants' Local Rule 56(a)1 Statement. By way of this response, defendants Pitney Bowes Inc. ("PB") and Imagistics International Inc. ("Imagistics") (collectively "defendants") demonstrate that the record evidence cited by plaintiffs in support of their denials does not establish the existence of a genuine dispute as to any material fact.

**Material Fact No. 3**: *The same performance standards, including quota requirements and daily cold call targets, applied to all of the ECO Cartridge sales representatives. There was a single commission plan applicable to the sales representatives in the ECO Cartridge Group. The same database was available to all of the sales representatives in the ECO Cartridge Group.*

As the basis for denying the first and second sentences of Material Fact No. 3, plaintiffs rely on Paragraphs 60-62, 68, 72, 77, 90, 91, 93, 105, 115-16, 117, and 119 of Part II of their Local Rule 56(a)2 Statement (hereinafter "Part II"). Upon careful scrutiny, however, the underlying testimony cross-referenced in those paragraphs does not support the denial.

Paragraphs 60-62, 68 and 72 cite testimony concerning Mr. Simpson's alleged propensity to offer special incentives *outside* the governing commission plan and then renege. None of this testimony supports the proposition that the terms of the commission plan varied from salesperson to salesperson. Paragraph 77 has nothing to do with the subject of Material Fact No. 3. Rather, the testimony cited in this paragraph concerns an antiquated telephone system that allegedly did not accurately record all of plaintiffs' cold calls.

Similarly, Paragraphs 90-91 cite to Ms. Cifatte's testimony regarding a critical memorandum and an EPD (Employee Problem Discussion) she received from Mr. Simpson, which plainly does not speak to the genuineness of Material Fact No. 3. Equally irrelevant is paragraph 93, which cross-references Ms. Moore's testimony about Mr. Simpson's alleged desire to invoke defendants' formal disciplinary policies in order to fire plaintiffs.

The balance of the Part II paragraphs cited by plaintiffs as the basis for denying the first and second sentences of Material Fact No. 3 cross-reference testimony by plaintiffs, largely in the form of self-serving opinions, about Mr. Simpson's alleged favorable treatment of Mr. Schneider, and to a lesser degree Mr. Cobb. But this has nothing whatsoever to do with the governing commission plan.

Notably, moreover, much of the testimony relied upon by plaintiffs in these paragraphs is not based on personal knowledge or constitutes inadmissible hearsay. For example, as support for their assertion in Paragraph 116 that Mr. Schneider was not an "ace" employee, plaintiffs' cite their own hearsay testimony regarding statements allegedly made to them by Mr. Schneider about the difficulty he was having meeting quota. In similar fashion, plaintiffs assert in Paragraph 115 that "[w]hen there was a dispute over an account Mr. Simpson gave Darryl [Schneider] the sale so that he could make quota," citing Ms. Buonincontra's affidavit. Ms.

Buonincontra, however, does not purport to have personal knowledge of any such fact, as required by Fed. R. Civ. P. 56(e). Cameron v. Community Aid For Retarded Children, Inc., 335 F.3d 60, 65 (2d Cir. 2003)("conclusory denials ... not based on personal knowledge [] are insufficient to defeat summary judgment.").

Plaintiffs rest their denial of the third sentence of Material Fact No. 3 on Part II, Paragraph 10, which in turn cites their own testimony about Mr. Simpson's alleged hoarding of large accounts. Even if accurate, this testimony in no way undercuts defendants' statement that the same database was available to all of the salespersons, a fact that remains undisputed in the record.

**Material Fact No. 4**: *In or around early September 2000, Benton reported to PBOS' human resources ("HR") department, and particularly Dawn Stevens, Director, Human Resources, that on August 30, 2000, Simpson had, inter alia, hollered at Cifatte in the ECO Cartridge Group work area and in so doing used one or more expletives. Benton did not tell Stevens that this incident was gender-based or otherwise a form of sexual harassment.*

Plaintiffs only deny the first sentence of Material Fact No. 4, citing Part II, Paragraph 123. This paragraph, however, cross-references testimony by Ms. Benton that actually *confirms* the accuracy of the statement in Material Fact No. 4 regarding her meeting with human resources in the aftermath of the August 30, 2000 incident involving Ms. Cifatte. Paragraph 123 otherwise cites unrelated testimony about Ms. Benton's complaint to human resources concerning her inability to meet quota. Plaintiffs cite no record evidence that remotely contradicts Material Fact No. 4.

**Material Fact No. 5:** *Benton was the first PBOS employee to register a complaint of this kind regarding Simpson with HR. Nor have there been any subsequent complaints registered with HR concerning conduct of, or actions taken by, Simpson since plaintiffs left the company.*

Plaintiffs attempt to evade admission of the first sentence of Material Fact No. 5 by claiming ignorance as to the meaning of "a complaint of this kind." The material facts are not drafted in a vacuum, and thus it is obvious that defendants' short-hand was simply a reference back to the immediately preceding factual statement. The first sentence must, therefore, be deemed admitted. And, while plaintiffs purport to deny the second sentence of Material Fact No. 5, they actually concede they have no factual basis for doing so.

**Material Fact No. 6**: *HR conducted an investigation into Benton's allegations concerning the incident that occurred in the ECO Cartridge Group work area on August 30, 2000. In the course of this investigation, Stevens and/or Georgianna Coleman, a member of her staff, interviewed, among others, Simpson and Cifatte. As a result of the HR investigation, Simpson was issued a counseling memorandum and was directed to apologize to Cifatte and the other ECO Cartridge sales representatives. Simpson made his apology at a weekly sales meeting that was attended by Coleman.*

Plaintiffs admit the first three sentences of Material Fact No. 6, but deny the last sentence on the theory that Mr. Simpson did not make a "true" apology. This denial does not meet the substance of the factual statement. Defendants did not state one way or the other whether the apology was genuine (although plaintiffs offer only irrelevant opinions on the point and not an admission by Mr. Simpson). As stated by defendants, the fact that Mr. Simpson made an apology, sincere or not, is undisputed.

4

**Material Fact No. 7**: *Simpson would, on occasion, bang his fist on a table to emphasize a point or otherwise gain the attention of the ECO Cartridge sales representatives. When Simpson did so, it was typically during weekly sales meetings or in the ECO Cartridge Group work area where all of the ECO Cartridge sales representatives would be present.*

Here, again, plaintiffs' denial does not meet the substance of defendants' factual statement. Rather, plaintiffs nitpick over the meaning of the word "typically." Nevertheless, Part II, Paragraph 28, cited by plaintiffs as the basis for their denial, in no way controverts Material Fact No. 7. Indeed, this paragraph actually confirms that plaintiffs do in fact claim Mr. Simpson banged on tables during Monday morning meetings. The testimony cited by defendants in Material Fact No. 7 establishes that to the extent Mr. Simpson did any such thing his objective was, by plaintiffs' own admission, to get the attention of the sales staff.

**Material Fact No. 8**: *During the course of the weekly sales meetings, Simpson at times praised one or more sales representatives for his or her productivity. Cosentino received such praise from Simpson on several occasions.*

Plaintiffs' partial denial of Material Fact No. 8 once again does not meet the substance of defendants' statement. Defendants have not asserted that Mr. Simpson praised all of the salespersons equally, so plaintiffs' denial that such was the case is merely gratuitous. Equally gratuitous are plaintiffs' allegations that Mr. Simpson's praise for Mr. Schneider was unwarranted while his praise for plaintiffs was "faint," and that Mr. Simpson did not praise Ms. Cosentino to the extent deserved. Defendants made no contrary representations in Material Fact No. 8. The fact actually stated by defendants is undisputed.

**Material Fact No. 10**: *More often than not, Benton, Cifatte and Buonincontra failed to meet their monthly quota.*

Although perhaps inexact in its verbiage, the term "monthly quota," as used in Material Fact No. 10, was intended to reference only the sales quota and not the cold call quota. Plaintiffs' reliance on Part II, Paragraphs 60-62 as support for denying the existence of a sales quota is misguided. The testimony cross-referenced in those paragraphs describes isolated examples of disputes between an individual plaintiff and Mr. Simpson over the allocation of commission credits. Whether or not Mr. Simpson, in any given case, misapplied the terms of the commission plan, or disagreed with plaintiffs about the specifics of any special incentive he may have offered, is immaterial in the absence of evidence that Mr. Simpson did not actually believe his position to be well-taken, of which there is none. Cameron, 335 F.3d at 65-66. ("The inaccuracy of those reports [regarding plaintiff's managerial deficiencies] does not matter if Melville believed them. Here, an inference that Melville fabricated complaints would be based on nothing but speculation, lacking in the 'concrete particulars' required to defeat summary judgment.")(Citation omitted). Plaintiffs can point to nothing in the record that undercuts the accuracy of Material Fact No. 10, which is amply supported by business records reflecting that, in fact, "[m]ore often than not, Benton, Cifatte and Buonincontra failed to meet their monthly quota."

**Material Fact No. 11**: *Simpson never sexually assaulted any of the plaintiffs, nor did he ever touch any of the plaintiffs in an overtly sexual manner. Simpson did not make sexually charged comments in the workplace, nor did he distribute sexually explicit pictures or writings to plaintiffs, or any of them.*

Plaintiffs' challenge to the accuracy of Material Fact No. 11 rests on a self-serving characterization of alleged instances of brief physical contact and a remark to the effect that Ms. Moore was "straddling the fence" and might need to take a "warm bath" as sexually charged. As

6

discussed at length in the accompanying reply brief, the law is clear that the isolated occurrences of momentary physical contact complained of by Ms. Cifatte and Ms. Moore do not constitute sexual harassment. And, as observed in defendants' opening brief, Ms. Moore's attempt to put a sexual gloss on the "straddle the fence" comment she attributes to Mr. Simpson "rests more on what she extrapolated from [the] remark than from what he actually said or could reasonably have been understood to say. A Title VII sexual harassment claim cannot rest on such unsubstantiated surmises and subjective conclusions." Dawson v. Bumble & Bumble, 246 F. Supp. 2d 301, 327 (S.D.N.Y. 2003). Considered in context, moreover, -- "Simpson was at the time miffed because he felt Moore, who he had hired to straighten out the ECO Cartridge sales team, was becoming her subordinates' advocate" (Defs' Mem. at p. 29) -- the comment cannot possibly give rise to an inference of gender-based animus, and thus cannot lay the foundation for a *genuine* issue of material fact.

**Material Fact No. 13**: *Simpson never attended a sporting event with Schneider or otherwise socialized with him outside the office at a non-work related event. While Simpson occasionally discussed sports-related topics with Schneider during the work day in his office, this was not a daily or routine occurrence and such discussions would typically last for relatively brief periods of time. Simpson on occasion had non-work related discussions with Cosentino about the Boston Red Sox. None of the other plaintiffs attempted to engage Simpson in a dialogue about sports.*

Plaintiffs do not dispute the accuracy of the third and fourth sentences of Material Fact No. 13; the gratuitous assertion that "the reason Plaintiffs did not talk to Mr. Simpson was that he harassed and abused them" is unsupported by record evidence and in any event does not meet the substance of defendants' statement.

In support of their denial of the first sentence of Material Fact No. 13, plaintiffs cite Part II, Paragraph 114. The cross-referenced testimony, however, takes the form of inadmissible hearsay accounts as to what plaintiffs were allegedly told by Mr. Schneider.[1] Plaintiffs' hearsay testimony obviously cannot serve to rebut Mr. Simpson's sworn statement in Paragraph 13 of his affidavit that, in fact, he and Mr. Schneider never attended any sporting events together or otherwise socialized outside the office. Ozenne v. University of Connecticut Health Care, 292 F. Supp. 2d 425, 434 (D. Conn. 2003)("The court cannot consider hearsay statements in opposition to a motion for summary judgment.")(Citation omitted).

Plaintiffs' denial of the fact stated in the second sentence is likewise unsupported by admissible evidence. Thus, in Part II, Paragraph 113, plaintiffs allege that: "A couple of times a week Darryl would spend a prolonged period, about an hour, in Mr. Simpson's office, talking sports." None of the plaintiffs testified in the cited passages of their depositions (or elsewhere for that matter) that they were actually present in Mr. Simpson's office when these sports-related conversations ostensibly took place. *A fortiori*, plaintiffs either lack personal knowledge as to what went on behind Mr. Simpson's office door and are simply guessing about the nature of the dialogue between Mr. Simpson and Mr. Schneider, or rest their allegation on a hearsay account of something Mr. Schneider supposedly reported. Weinstock v. Columbia University, 224 F.3d 33, 44 (2d Cir. 2000)(plaintiff "adduced no evidence sufficient to create a genuine issue of fact as to her contention that the word 'nurturing' was used" to describe her at a meeting where she was not present and thus lacked personal knowledge of any such remark).

---

[1] Notably, moreover, the cited passage from Ms. Buonincontra's deposition shows her to be equivocal on the point and reflects a lack of personal knowledge: "Well, I believe they went to sporting events occasionally. I believe [Mr. Schneider] was given Blue Fish tickets, you know, to go to the game." (Buonincontra Dep. at p. 263).

"A claim supported only by the plaintiff's bald assertions, which in this case are inadmissible hearsay, cannot withstand summary judgment." Hogan v. State of Connecticut Judicial Branch, 220 F. Supp. 2d 111, 123 (D. Conn. 2002), aff'd mem., 64 Fed. Appx. 256, 2003 WL 1894590 (2d Cir. April 17, 2003).

**Material Fact No. 16**: *Simpson was not responsible for the decision to transfer the ECO Cartridge Group's functions to Denver, nor was he consulted on the matter. Simpson learned of the work transfer that resulted in Cifatte and Moore being laid off after the fact.*

Because plaintiffs admittedly "lack information with which to admit or deny sentence one" of Material Fact No. 16, the fact must be deemed admitted. Hogan, 220 F. Supp. 2d at 114, n.1 ("the court considers admitted any statement with which the plaintiff lacks sufficient knowledge to agree or disagree.")(Citation omitted); Archie Comic Publications, Inc. v. DeCarlo, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003)("To the extent [the non-movant] denies the ability to admit or deny those assertions [in the movant's Local Civil Rule 56.1 Statement], her response also is insufficient because alleged inability to admit or deny is no excuse, at least in the absence of a sufficient Rule 56(f) affidavit, and none has been submitted here.")(Footnote omitted), aff'd mem., 2004 WL 393154 (2d Cir. March 3, 2004).

Plaintiffs' assertion in response to the second sentence of Material Fact No. 16 that "[i]t was clear that Defendant Pitney Bowes was transferring the work to Denver and getting rid of the remaining Plaintiffs" does not meet the substance of defendants' statement that "Simpson learned of the work transfer that resulted in Cifatte and Moore being laid off after the fact." In any event, nothing in Part II, Paragraph 17, upon which plaintiffs rely, provides a legitimate basis for disputing the second sentence of Material Fact No. 16. As support for their assertion that "[i]n the fall of 2001 Mr. Simpson went to Denver to train employees to perform the work of

the ECO Group" plaintiffs cite Paragraph 16 of Ms. Benton's affidavit. That paragraph, however, consists of Ms. Benton's hearsay account of statements allegedly made to her by another PB employee, which plaintiffs purport to offer for the truth. Such hearsay testimony is inadmissible and not counted in the summary judgment equation. Tyson v. Willauer, 290 F. Supp. 2d 278, 287 n.5 (D. Conn. 2003)("To the extent that plaintiffs are offering these [newspaper articles] to show the truth of the matters asserted therein, they are excluded under Rule 801(c), FRE, as hearsay.").

\* \* \* \* \* \*

As Judge Dorsey recently observed, "It is not enough to summarily proclaim that there is a genuine issue of material fact to preclude summary judgment." Carroll v. Regaglia, 292 F. Supp. 2d 324, 347 (D. Conn. 2003)(Citation omitted). Yet, upon close examination of Plaintiffs' Local Rule 56(a)2 Statement, that is precisely what plaintiffs have done here. Thus, as demonstrated above, when plaintiffs' denials of the material facts set forth in Defendants' Local Rule 56(a)1 Statement are traced back to the record, it becomes plain that there either is, in reality, no genuine dispute, or a dispute has been artificially manufactured through inadmissible hearsay or testimony not predicated on personal knowledge.

Plaintiffs, moreover, do not aid their cause by providing the Court with an extensive list of 159 so-called "Material Facts as to Which it is Contended That There Is a Material Fact to Be Tried" in Part II of their Local Rule 56(a)2 Statement. The local rule actually required plaintiffs to "include in a separate section entitled 'Disputed Issues of Material Fact' a list of each *issue of material fact* as to which it is contended there is a genuine issue to be tried." D. Conn. L. Civ. R. 56(a)2 (Emphasis added). In contravention of the rule, plaintiffs have not identified any genuine issues of material fact, but instead proffer a plethora of factual assertions, most of which are not

even cited in their response to Defendants' Local Rule 56(a)1 Statement and are thus completely detached and freestanding. Plaintiffs' "implicit assertion is that they expected this court to hunt through the entire [summary judgment] record in an effort to find any facts that might contradict [defendants'] assertions. This is not reasonable." <u>Lillbask ex rel. Mauclaire v. Sergi</u>, 193 F. Supp. 2d 503, 511 (D. Conn. 2002).

In the end, plaintiffs have failed to meet their summary judgment burden to "'set forth specific facts showing that there is a genuine issue for trial,' and present evidence that would allow a jury to find in [their] favor." <u>Grey v. City of Norwalk Board of Education</u>, __ F. Supp. 2d __, 2004 WL 231171, at *3 (D. Conn. Feb. 4, 2004)(Citations omitted). As defendants have demonstrated in their supporting briefs, on the basis of the undisputed facts, defendants are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

                Respectfully submitted,

                DEFENDANTS
                PITNEY BOWES INC. and
                IMAGISTICS INTERNATIONAL INC.

                _____
                Lawrence Peikes (ct07913)
                Wiggin and Dana LLP
                Their Attorneys
                400 Atlantic Street
                P.O. Box 110325
                Stamford, CT  06911-0325
                (203) 363-7600
                (203) 363-7676 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Defendants' Response to Plaintiffs' Local Rule 56(a)2 Statement was served by first-class U.S. mail, postage prepaid, on this 11th day of March, 2004, on:

>William B. Barnes, Esq.
>Rosenstein & Barnes
>1100 Kings Hwy. East
>Fairfield, CT 06432

_____
Lawrence Peikes

\15058\410\83476.1