UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBRA COSENTINO, et al., | X : | MASTER CAPTION |
| Plaintiff, | : : | CASE NO. 3:01CV2129 (AVC) |
| v. | : : | |
| PITNEY BOWES INC, and IMAGISTICS INTERNATIONAL, INC., | : : : | APRIL 12, 2004 |
| Defendants. | : : X | |

## NOTICE OF INTERVENING AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION

By motion dated April 7, 2004, filed pursuant to D. Conn. L. Civ. R. 7(c), defendants Pitney Bowes Inc. ("PB") and Imagistics International Inc. ("Imagistics") (collectively "defendants") sought reconsideration of the Court's Endorsement Order, dated March 25, 2004, denying their motion for summary judgment in the above-captioned sexual harassment case. A day before defendant's motion for reconsideration was filed, the Second Circuit issued its decision in Mormol v. Costco Wholesale Corp., __ F.3d __, 2004 WL 728222 (2d Cir. April 6, 2004)(copy attached hereto at Tab A), affirming summary judgment in favor of the employer with respect to the plaintiff's claims alleging quid pro quo and hostile work environment sexual harassment under Title VII. The Mormol case further substantiates the merit to defendants' summary judgment motion, and therefore strongly counsels in favor of granting the pending request for reconsideration.

At the outset of its analysis of the hostile work environment component of Ms. Mormol's two-prong sexual harassment claim, the Second Circuit, citing U.S. Supreme Court precedent, reiterated "that Title VII is violated '[w]hen the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Id. at *4 (Citation omitted). The Court of Appeals agreed with the district court that Ms. Mormol's allegations -- describing conduct far more sexually charged and offensive than anything plaintiffs in the matter *sub judice* claim to have endured -- did not meet the demanding "severe or pervasive" standard established by the U.S. Supreme Court and, consequently, ruled that plaintiff "has not created a triable issue as to whether she was subjected to a hostile work environment." Id. at *5.

Ms. Mormol alleged the following incidents of supervisory misconduct, to which plaintiffs' allegations pale in comparison: her supervisor (i) expressly conditioned the approval of her vacation request on her willingness to engage in sexual relations with him; (ii) "offered, if plaintiff would have sex with him, to punch plaintiff's time-card that night such that she would be paid for hours she was not at work"; (iii) "telephoned plaintiff during her vacation, telling her to return to work earlier than she had planned, and threatening that if she did not, she would lose her job or be transferred to work in [a less desirable] [d]epartment"; (iv) upon plaintiff's return from vacation he gave her a note that said he "would give her money, make her a full-time employee but permit her to work part-time and simply punch her card as if she were working full time, and take her on vacations and to a fitness club"; and (v) after plaintiff rejected this overture he "reduce[d] her working hours, cutting her schedule from the seven days that [he] had promised to three days." Id. at *1.

Citing a substantial body of Circuit precedent, the Court of Appeals "conclude[d] that the incidents alleged by plaintiff ... were not sufficiently severe or pervasive to create a hostile work environment. The episodes of harassment, far from being pervasive, were few and occurred over a short span of time, most of which plaintiff spent on vacation." Id. at *5. Here, too, the handful

2

of incidents actually detailed by plaintiffs that can even generously be depicted as falling within the rubric of "harassment" were episodic in nature. Significantly, moreover, as described by plaintiffs, Mr. Simpson's occasional angry outburst or insensitive remark was directed at one of them individually, almost always outside the presence of the others. This is just as critical to the analysis of each individual plaintiff's claim as was Ms. Mormol's absence from the work site on vacation, which certainly tempered the pervasiveness of the alleged harassment. Id.

As in Mormol, "[t]he harassment alleged here is not sufficiently severe to overcome its lack of pervasiveness." Id. Accordingly, based on the Mormol decision and the substantial body of case law cited by defendants in their previously filed briefs, defendants' motion for reconsideration should be granted, and summary judgment entered in defendants' favor, dismissing plaintiffs' complaints in their entirety, with prejudice.

> Respectfully submitted,
>
> DEFENDANTS
> PITNEY BOWES INC. and
> IMAGISTICS INTERNATIONAL INC.
>
> _____
> Lawrence Peikes (ct07913)
> Wiggin and Dana LLP
> Their Attorneys
> 400 Atlantic Street
> P.O. Box 110325
> Stamford, CT 06911-0325
> (203) 363-7600
> (203) 363-7676 (fax)
> lpeikes@wiggin.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Notice of Intervening Authority in Support of Defendants' Motion for Reconsideration was served by first-class U.S. mail, postage prepaid, on this 12th day of April, 2004, on:

>William B. Barnes, Esq.
>Rosenstein & Barnes
>1100 Kings Hwy. East
>Fairfield, CT  06432

*[signature]*
_____
Lawrence Peikes

\15058\410\85522.1

**EXHIBIT A**



2004 WL 728222  
--- F.3d ---  
**(Cite as: 2004 WL 728222 (2nd Cir.(N.Y.)))**

Page 1

Only the Westlaw citation is currently available.

United States Court of Appeals,  
Second Circuit.

Jessica **MORMOL**, Plaintiff-Appellant,  
v.  
**COSTCO** WHOLESALE CORPORATION,  
Defendant-Appellee,  
John ZIERMANN, Defendant.

No. 03-7409.

Argued: Feb. 19, 2004.  
Decided: April 6, 2004.

**Background:** Female employee brought sexual harassment action against employer pursuant to Title VII and state law. The United States District Court for the Eastern District of New York, Sterling Johnson, Jr., J., granted employer's motion for summary judgment, and employee appealed.

**Holdings:** The Court of Appeals, Cabranes, Circuit Judge, held that:  
(1) employer's actions did not rise to the level of a significant change in employment status; and  
(2) employer's actions were not sufficiently severe or pervasive to create a hostile work environment.

Affirmed.

**[1] Civil Rights** ☞1184

78k1184 Most Cited Cases

Actions allegedly taken by employer, including calling employee back early from an unpaid vacation, reducing hours during one week, and giving employee a disciplinary notice for being five minutes late in returning from a break, did not rise to the level of a significant change in employment status, as required to support female employee's sexual harassment claim pursuant to Title VII under a quid pro quo theory alleging that employee suffered a tangible employment actions as a result of her refusal to accede to manager's sexual requests; the disciplinary notice was never placed in employee's file, and employee did not claim any lost wages or economic harm. Civil Rights Act of 1964, § 704, 42 U.S.C.A. § 2000e-3.

**[2] Civil Rights** ☞1185

78k1185 Most Cited Cases

For purposes of a sexual harassment claim brought pursuant to Title VII, whether a reasonable person would find a given work environment to be hostile depends on the totality of the circumstances, including: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance. Civil Rights Act of 1964, § 704, 42 U.S.C.A. § 2000e-3.

**[3] Civil Rights** ☞1185

78k1185 Most Cited Cases

Manager's actions of communicating to a female employee that the employee's vacation request would not be approved if the employee did not have sex with him, and making other sexual requests, as well as writing-up employee for being five minutes late from a break, were not sufficiently severe or pervasive to create a hostile work environment, as required to support employee's sexual harassment claim pursuant to Title VII against employer; the episodes of harassment were few and occurred over a short span of time, most of which employee spent on vacation, and employee did not claim that the incidents were physically threatening or that the incidents interfered with employee's ability to do her job. Civil Rights Act of 1964, § 704, 42 U.S.C.A. § 2000e-3.

**[4] Civil Rights** ☞1147

78k1147 Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 728222
--- F.3d ---
(Cite as: 2004 WL 728222 (2nd Cir.(N.Y.)))

Page 2

It is well-settled for purposes of Title VII that even a single act can meet the threshold of hostile work environment if, by itself, it can and does work a transformation of the plaintiff's workplace, but such a single act must be extraordinarily severe. Civil Rights Act of 1964, § 704, 42 U.S.C.A. § 2000e-3.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., Judge), following entry of summary judgment for defendant on plaintiff's sexual harassment claim under Title VII. Plaintiff claimed that, while employed by defendant Costco Wholesale Corporation, she was sexually harassed by her manager in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and New York's Human Rights Law, N.Y. Exec. Law § 296. We agree with the District Court that no reasonable juror could find that plaintiff suffered a tangible employment action or faced a hostile work environment. The District Court also declined to exercise supplemental jurisdiction over plaintiff's state law claim, and ordered that claim dismissed, but the judgment itself did not reflect this dismissal.

Affirmed in part (in all substantive respects), and remanded in part solely for a clerical correction of the judgment.

Raymond Nardo, Mineola, NY, for Plaintiff-Appellant.

Lorie Almon (Brendan Sweeney, of counsel), Seyfarth Shaw LLP, New York, NY, for Defendant-Appellee.

Before: OAKES, KEARSE, and CABRANES, Circuit Judges.

CABRANES, Circuit J.

*1 Plaintiff Jessica Mormol appeals from a grant of summary judgment to defendant Costco Wholesale Corporation ("Costco"), entered by the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge* ). Plaintiff claimed that, while employed at Costco in December 1999 and January 2000, she was sexually harassed by her manager, defendant John Ziermann ("Ziermann"), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and New York's Human Rights Law, N.Y. Exec. Law § 296. Because we conclude that no reasonable juror could find that plaintiff suffered a tangible employment action or faced a hostile work environment, we affirm.

Background

At the time of the alleged incidents of harassment, which we take as true, plaintiff was employed by Costco as a part-time employee in the Bakery Department, and Ziermann was the department manager. In applying to work for Costco, Ziermann had disclosed that he had been convicted in Florida of possessing a "counterfeiting access device," but had not disclosed a conviction in Florida for sexual battery of a 15-year-old female co-worker.

Plaintiff claims that, on December 27, 1999, Ziermann told her that he would not approve a vacation request she had made if she did not have sex with him. Plaintiff further claims that Ziermann offered, if plaintiff would have sex with him, to punch plaintiff's time-card that night such that she would be paid for hours that she was not at work. Plaintiff testified at her deposition that she did not give in to Ziermann's request. A few days later, she left for a month-long unpaid vacation in Santo Domingo. Ziermann allegedly telephoned plaintiff during her vacation, telling her to return to work earlier than she had planned, and threatening that if she did not, she would lose her job or be transferred to work in the Food Service Department. According to plaintiff, she then did cut short her vacation.

According to plaintiff, on the day that she returned to work, January 22, 2000, Ziermann handed her a note. The note said, *inter alia,* that if plaintiff would have sex with him, Ziermann would give her money, make her a full-time employee but permit her to work part-time and simply punch her card as if she were working full time, and take her on vacations and to a fitness club. Plaintiff declined Ziermann's offer, and Ziermann then threatened to reassign her to the Food Service Department. Plaintiff was not reassigned to Food Service, but she claims that Ziermann did reduce her working hours, cutting her schedule for the coming week from the seven days that Ziermann had promised to three days.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

On January 23, 2000, the day after the alleged incident involving the note, Ziermann "wrote up" plaintiff for being five minutes late from a break. In this "employee corrective consultation" notice, Ziermann added by hand that the "next writeup will result in suspension and or termination."

*2 On January 24, 2000, plaintiff reported Ziermann's conduct to the warehouse management. She spoke to Costco's Assistant General Manager, and then to the General Manager, and they initiated an investigation. That same day, two managers interviewed Ziermann, who denied plaintiff's allegations. Asked about plaintiff's claim that he cut her hours from the promised seven-day week, Ziermann claimed that he had initially scheduled her to work seven days during the week beginning January 24, 2000, because he mistakenly thought that a "muffin promotion," which would require additional Bakery Department staff, was scheduled for that week. Ziermann explained that he reduced plaintiff's schedule to three days when he discovered that the muffin promotion was actually scheduled for the week beginning January 31, 2000.

As a result of the investigation, Costco suspended Ziermann on January 26, 2000, the next day after plaintiff's complaint on January 24 that he was scheduled to work. Costco ultimately fired Ziermann, effective February 3, 2000. Plaintiff claims that at some point Ziermann telephoned plaintiff's sister and threatened to kill plaintiff. At oral argument, plaintiff's counsel stated that Ziermann made the threat after Ziermann had been suspended. Plaintiff reported this incident to Costco and the police. Thereafter, Costco provided plaintiff with a security escort, a cell phone, and a two-way radio for her safety, and also offered to assist her with temporary housing and with applying for an order of protection, both of which she declined. Plaintiff eventually became a full-time employee, and was still employed full time at Costco as of the date of oral argument before us.

Plaintiff brought a Title VII claim for sexual harassment based on *quid pro quo* and hostile work environment theories. On Costco's motion for summary judgment, the District Court made "findings of fact" that plaintiff did not suffer any "tangible employment action" as a result of the alleged harassment. [FN1] The Court determined that "[a]s a result of the alleged harassment, Plaintiff's schedule for a period of one week was reduced from seven days to three or four days. Plaintiff did not, however, claim any lost wages as a part of her damages claim associated with the instant lawsuit." The Court concluded that plaintiff had failed to make out a *prima facie* case of sexual harassment, under either a *quid pro quo* or a hostile work environment theory. Finding plaintiff's federal claims without merit, the Court then declined to exercise supplemental jurisdiction over her state law claim. Finally, the Court dismissed plaintiff's claims against Ziermann, noting that "it is unclear whether Defendant Ziermann was ever properly served," and stating further that there is no individual liability under Title VII. The District Court's judgment, as entered by the Clerk, granted Costco's motion for summary judgment, but did not reflect the dismissal without prejudice of the state law claim.

Discussion

*3 In deciding a motion for summary judgment, the facts are viewed in the light most favorable to the non-moving party, drawing all reasonable inferences in her favor. *See, e.g., Young v. County of Fulton,* 160 F.3d 899, 901 (2d Cir.1998). The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review the District Court's grant of summary judgment *de novo. See, e.g., Young,* 160 F.3d at 902.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e- 2(a)(1). The central issue, therefore, is whether Costco discriminated against plaintiff in the terms and conditions of her employment because of her sex.

Courts have traditionally recognized two forms of sexual harassment: "*quid pro quo* " harassment and "hostile work environment" harassment. *See, e.g., Leibovitz v. New York City Transit Auth.,* 252 F.3d 179, 188 (2d Cir.2001). Although the terms "*quid pro quo* " and "hostile work environment" do not appear in the text of Title VII, they are useful to

2004 WL 728222                                                                                       Page 4
--- F.3d ---
(Cite as: 2004 WL 728222 (2nd Cir.(N.Y.)))

distinguish between "cases involving a threat which is carried out and offensive conduct in general." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The distinction between the two forms of sexual harassment serves "to instruct that Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment and to explain [that] the latter must be severe or pervasive." *Id.* at 752.

The first inquiry, therefore, is whether Costco explicitly altered the "terms or conditions" of plaintiff's employment because of her sex. In *Ellerth*, the Supreme Court explained that "[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Id.* at 753-54.

A tangible employment action, as defined by the Supreme Court, "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. "A tangible employment action in most cases inflicts direct economic harm," *id.* at 762, but "there is no requirement that it *must* always do so," *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 97 (2d Cir.2002) (holding that the plaintiff suffered a tangible employment action where she avoided economic harm by submitting to the supervisor's sexual advances).

*4 Plaintiff claims on appeal that she suffered a "tangible employment action," as a result of her refusal to accede to Ziermann's sexual requests, based on, *inter alia*, the following factual allegations: (1) she was called back early from her scheduled unpaid vacation in Santo Domingo, (2) her working hours were reduced during one week from a seven-day work schedule promised by Ziermann; and (3) she was given a disciplinary notice, ostensibly for being five minutes late in returning from a break. [FN2]

[1] Reviewing the record in the light most favorable to plaintiff, we conclude that she did not suffer a significant change in employment status.

Plaintiff concedes that her receipt of Ziermann's disciplinary notice did not result in any further consequences to her; under Costco policy, a disciplinary notice is not valid without the signature of the General Manager or an Assistant General Manager, which Ziermann did not obtain. In any event, Ziermann apparently never placed the disciplinary notice in plaintiff's file. Nor does plaintiff's being called back days early from a month-long unpaid vacation constitute a "significant change in benefits." Finally, while plaintiff alleges that her hours during one week were reduced--relative to the number of hours promised by Ziermann, if not relative to her typically scheduled hours--she does not claim any lost wages or assert that she suffered any economic harm. Whether taken singly or in combination, the actions allegedly taken by Costco do not rise to the level of a "significant change in employment status," as described by the Supreme Court in *Ellerth*. *Cf. Savino v. C.P. Hall Co.*, 199 F.3d 925, 932 n. 8 (7th Cir.1999) (stating that "[a] tangible employment action has to cause a substantial detriment to the plaintiff's employment relationship," and that "reassignment to a comparable office is neither sufficiently adverse nor significant").

[2] Having concluded that Costco did not *explicitly* alter the terms and conditions of plaintiff's employment--by taking an adverse employment action-- we must next determine whether it *implicitly* did so. The Supreme Court has held that Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and internal quotation marks omitted). The test for "hostile work environment" has both an objective and a subjective component: "A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it." *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.1999). Whether a reasonable person would find a given work environment to be hostile depends on the totality of the circumstances; "[c]onsiderations include: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 728222 Page 5
--- F.3d ---
(Cite as: 2004 WL 728222 (2nd Cir.(N.Y.)))

offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance ." *Id.* at 319 (citing *Harris,* 510 U.S. at 23).

*5 [3][4] We conclude that the incidents alleged by plaintiff--her communications with Ziermann on December 27, 1999 and January 22, 2000, and the "write-up" she received on January 23--were not sufficiently severe or pervasive to create a hostile work environment. [FN3] The episodes of harassment, far from being pervasive, were few and occurred over a short span of time, most of which plaintiff spent on vacation. It is, of course, "well settled in this Circuit that even a single act can meet the threshold [of hostile work environment] if, by itself, it can and does work a transformation of the plaintiff's workplace," *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir.2002), but such a single act must be "extraordinarily severe," *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000); *see also Richardson v. N.Y. State Dep't of Correctional Serv.,* 180 F.3d 426, 437 (2d Cir.1999) (recognizing that a single sexual assault may be sufficient to alter the terms and conditions of the victim's employment). The harassment alleged here is not sufficiently severe to overcome its lack of pervasiveness. *Compare Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir.1998) (finding no triable issue of hostile work environment where plaintiff's supervisor allegedly made an appreciative comment about plaintiff's buttocks and deliberately touched her breasts with papers he was holding), *with Holtz v. Rockefeller & Co.,* 258 F.3d 62, 70, 75-76 (2d Cir.2001) (finding a triable issue where a supervisor touched plaintiff in unwelcome manner on a "daily basis," made "obscene leers at her," "tried to peer down her blouse and up her skirt," and made "approximately ten or twenty" remarks about her sex life), *and Raniola v. Bratton,* 243 F.3d 610, 621 (2d Cir.2001) (finding a triable issue where plaintiff proffered evidence that, over the course of two and one- half years, she was subjected to "offensive sex-based remarks, disproportionately burdensome work assignments, workplace sabotage, and one serious public threat of physical harm"). Nor does plaintiff claim that the incidents were physically threatening or humiliating, or that they interfered with her ability to do her job. Accordingly, she has not created a triable issue as to whether she was subjected to a hostile work environment.

Because we conclude that the terms and conditions of plaintiff's employment were not altered by the alleged acts of harassment involving Ziermann, we need not consider, under principles of agency law, whether Ziermann's actions can be imputed to Costco. We therefore need not examine whether Costco "exercised reasonable care to prevent and correct promptly any sexually harassing behavior ." *Ellerth,* 524 U.S. at 765. Although we decline to address whether Ziermann's disclosure on his employment application of a non-violent felony conviction related to forgery triggered a duty on the part of Costco to investigate further for undisclosed, violent felony convictions, we would find it hard to believe that all employers have a general duty under Title VII to research state criminal records of prospective employees. It is clear that Costco responded immediately to plaintiff's complaint on January 24, 2000 with an investigation, and promptly suspended Ziermann on January 26, the next day that he was scheduled to work. Indeed, it is difficult to imagine an employer responding more promptly to an allegation of sexual harassment.

*6 Plaintiff does not challenge the District Court's dismissal of her Title VII claim against Ziermann, which dismissal, we hold, was proper. *See Gregory v. Daly,* 243 F.3d 687, 689 n. 1 (2d Cir.2001) (stating that an individual supervisor is not a proper defendant under Title VII).

Finally, plaintiff does not challenge the District Court's refusal to exercise supplemental jurisdiction over her state law claims. In its opinion, the District Court ordered dismissal of plaintiff's state law claims, presumably without prejudice. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("When the balance of ... factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (footnote omitted). However, the District Court's judgment, as entered by the Clerk, does not reflect this dismissal. Accordingly, we remand the cause to the District Court for the sole purpose of correcting the judgment on this point.

Conclusion

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 728222
--- F.3d ---
(Cite as: 2004 WL 728222 (2nd Cir.(N.Y.)))

Page 6

For the reasons stated above, the judgment of the District Court is hereby affirmed inasmuch as it grants defendant's motion for summary judgment, and the cause is remanded solely for the clerical correction of the judgment to reflect dismissal without prejudice of plaintiff's state law claims.

> FN1. We note that it was not the role of the District Court, on defendant's summary judgment motion, to make findings of fact. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We therefore review *de novo* the District Court's "findings" to determine whether there exists a genuine issue of material fact.

> FN2. Plaintiff also alleges that Ziermann told her that, if she would have sex with him, he would punch her time card for time she did not work, and would take her on vacations and to a fitness club. Plaintiff does not contend that she suffered a "tangible employment action" by Ziermann's failure, after she refused to have sex with him, to give her these benefits.

> FN3. In determining whether Costco subjected plaintiff to a hostile work environment, we do not consider the threat that Ziermann allegedly made to plaintiff's sister *after* Costco had already removed Ziermann from the workplace.

2004 WL 728222 (2nd Cir.(N.Y.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works