UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | X | MASTER CAPTION |
|---|---|---|
| DEBRA COSENTINO, et al., | : | |
| | : | CASE NO. 3:01CV2129 (AVC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PITNEY BOWES INC., and IMAGISTICS | : | |
| INTERNATIONAL INC., | : | JULY 12, 2004 |
| | : | |
| Defendants. | : | |
| | X | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 16(f)

The above-captioned litigation, now nearly three years old, has proceeded at a snail's pace largely as a consequence of plaintiffs' inactivity and repeated eleventh-hour requests for extensions of time. Plaintiffs' lack of zealousness in prosecuting their cases has now risen to new heights as they have flouted the Pretrial Order by failing and refusing to cooperate in the preparation of a joint trial memorandum. An appropriate sanction for plaintiffs' noncompliance is involuntary dismissal of their suits, with prejudice, or at the very least issuance of a preclusion order, and, additionally, an award of attorneys' fees as mandated by Fed. R. Civ. P. 16(f).

**I.   BACKGROUND**

These employment discrimination suits were initially filed in November 2001 as five separate, albeit related actions. At the request of defendants Pitney Bowes Inc. ("PB") and Imagistics International Inc. ("Imagistics") (collectively "defendants"), and by Order dated April 3, 2002, the cases were consolidated for pre-trial purposes.

In their complaints, which are virtually identical in content, plaintiffs Debra Cosentino, Geraldine Benton, Patricia Buonincontra, Kim Cifatte, and Donna Moore (collectively

"plaintiffs") claim they were generally mistreated by their former manager, Gary Simpson, allegedly on account of their gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Connecticut Fair Employment Practices Act ("FEPA"), Conn. Gen. Stat. §§ 46a-60, et seq. Plaintiffs also purport to allege a common law claim for negligent supervision.

The Scheduling Order originally entered by the Court on May 17, 2002 set a discovery cut-off date of January 3, 2003. By early December 2002, defendants had responded to plaintiffs' document requests and served each individual plaintiff with a request for production and a first set of interrogatories. Plaintiffs, however, did not timely respond to defendants' written discovery demands. (Peikes Aff. ¶ 2). Instead, on the day discovery was scheduled to conclude, plaintiffs filed their first motion for extension of the pre-trial deadlines and asked that the parties be provided sixty additional days to complete the disclosure process. The Court obliged and on January 10, 2003 entered an appropriate Order.

Notwithstanding the extension, plaintiffs nevertheless neglected to serve responses to the outstanding discovery requests. Eventually, after informal attempts to secure compliance proved fruitless, defendants filed a motion to compel. This discovery motion was coupled with a request for an extension of time to file a dispositive motion, which application was necessitated by the fact that defendants' attempts to pursue discovery were still being thwarted by plaintiff's recalcitrance. By Order dated April 25, 2003, the Court extended the dispositive motion deadline until June 2, 2003.

Plaintiffs then promptly filed a request for a further extension of the pre-trial deadlines. The Court granted this motion as well, and entered an Order, dated May 7, 2003, extending the discovery period until June 2, 2003, and re-setting the dispositive motion deadline for July 2,

2003. In the meantime, plaintiffs did not serve any further discovery demands nor did they conduct any depositions. (Peikes Aff. ¶ 2).

On May 23, 2003, the Court granted defendants' motion to compel, which went unopposed, and ordered plaintiffs to serve responses to the still outstanding interrogatories and requests for production of documents. Plaintiffs did not immediately comply with the Court's directive (Peikes Aff. ¶ 2), forcing defendants to file a second request to extend the dispositive motion deadline by an additional thirty days, or until August 4, 2003. By Order dated July 15, 2003, the Court granted defendants' motion.

Although plaintiffs never did heed the Court's mandate directing them to serve responses to defendants' written discovery demands (Peikes Aff. ¶ 2), defendants went ahead and timely filed a motion for summary judgment. Some five extensions later, on February 17, 2004, plaintiffs filed their opposition papers. Shortly after the matter was fully briefed, the Court, by Order dated March 25, 2004, denied defendants' motion for summary judgment[1] and, four days later, on March 29, 2004, issued the aforementioned Pretrial Order. Among other things, the Pretrial Order provided that the parties were to file a joint trial memorandum by April 28, 2004. At plaintiffs' request, the deadline for filing the trial memorandum was extended by thirty days until May 28, 2004.

On May 27, 2004, defendants' counsel transmitted a draft trial memorandum and proposed stipulation of facts and law (required to be included as part of the trial memorandum) to plaintiffs' counsel via e-mail and requested that counsel provide plaintiffs' witness and exhibit lists and comment on the proposed stipulations. (Peikes Aff. ¶ 3, Exh's. 1 & 2). Counsel responded by requesting consent for an additional thirty day extension of time to file the trial

---

[1] Defendants thereafter filed a motion for reconsideration which remains pending.

3

memorandum, which consent was somewhat reluctantly granted. (Peikes Aff. ¶ 3, Exh. 3). Plaintiffs' motion for such an extension was not actually filed until June 4, 2004, a week after the deadline for submitting the trial memorandum had expired, but the Court, by Order dated June 14, 2004, nevertheless granted the motion and extended the deadline for filing the trial memorandum until July 6, 2004.[2]

As of July 1, 2004, plaintiffs' counsel still had not provided a list of witnesses and exhibits or commented on defendants' proposed stipulations of fact and law. Accordingly, on that date, defense counsel sent an e-mail to plaintiffs' counsel reminding him of the upcoming July 6 deadline for submitting the joint trial memorandum and inquiring as to whether plaintiffs had made any progress on their sections of the pleading. No reply was forthcoming. (Peikes Aff. ¶ 4, Exh. 4).

On July 7, 2004, one day after the twice extended deadline for filing the trial memorandum had expired, defendants' counsel called the office of plaintiffs' counsel and left a substantive message advising that the deadline had now been missed and requesting a return call. That request was not honored and as of the date of this motion nothing further has been heard from plaintiffs' counsel. (Peikes Aff. ¶ 4).

II.   **ARGUMENT**

"In an era of burgeoning case loads and thronged dockets, effective case management has become an essential tool for handling civil litigation." Town Ventures, Inc. v. City of Westfield, 296 F.3d 43, 45 (1st Cir. 2002). "It is self-evident that 'courts cannot function if litigants may, with impunity, disobey lawful orders.' For that reason, courts must be given considerable leeway in exercising their admitted authority to punish laggardly or noncompliant litigants."

---

[2] In the meantime, on June 1, 2004, defendants, as a cautionary measure, filed their proposed jury instructions and voir dire questions.

Chamorro v. Puerto Rican Cars, Inc., 304 F.3d 1, 4 (1st Cir. 2002). "The Civil Rules recognize this reality; they afford district courts substantial authority to enforce case-management orders." Town Ventures, 296 F.3d at 45.

It is, then, axiomatic that "[a] court has inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct or for disobeying the court's orders 'as long as [he] receives an appropriate hearing.'" Mickle v. Morin, 297 F.3d 114, 125 (2d Cir. 2002) (citations omitted). Where, as in the matter *sub judice*, a party neglects to comply with a pretrial order, Rule 16(f) of the Federal Rules of Civil Procedure expressly provides for the imposition of sanctions:

> If a party or party's attorney fails to obey a scheduling or pretrial order, ... or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f).

Hence, by operation of rule, "[c]ourts may impose sanctions for failure to file a pretrial statement," 3 Moore's Federal Practice § 16.92[6][c] (Matthew Bender 3d ed. 2004) (footnote omitted), as well as "for failure to comply with pretrial orders." Id. at § 16.92[6][d] (footnote omitted). Sanctions have routinely been imposed against parties or their counsel who ignore a judicial directive to, *inter alia*, produce witness and exhibit lists. Id. (footnotes omitted). "The decision whether to order sanctions under this Rule lies within the Court's sound discretion."

Bagby v. Attorney General of the State of New York, 2004 WL 324896, at *2 (S.D.N.Y. Feb. 20, 2004) (citation omitted). Plaintiffs' contumacious conduct warrants a harsh sanction.

A.  **The Sanction of Dismissal**

Courts "have made it plain that 'a litigant who ignores case-management deadlines does so at his peril.' Consequently, when noncompliance occurs, the court may choose from a broad universe of possible sanctions. This flexibility is necessary because the circumstances attendant to noncompliance are apt to differ widely. In the last analysis, then, the choice of an appropriate sanction must be handled on a case-by-case basis." Tower Ventures, Inc., 296 F.3d at 45-46 (citations omitted).

"From a plaintiff's standpoint, the most dreaded sanction is dismissal with prejudice. Although this is strong medicine, not casually to be dispensed, a court may, in appropriate circumstances, dismiss a case with prejudice for violation of a judicial order *without consideration of lesser sanctions*. Although dismissal ordinarily should be employed only when a plaintiff's misconduct is extreme, *disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal)*." Id. at 46 (citations omitted) (emphasis added). For several reasons, plaintiffs' failure to abide by the Court's Pretrial Order, and cooperate in the preparation of a joint trial memorandum, is particularly egregious and deserving of the ultimate sanction, namely dismissal with prejudice.

First of all, plaintiffs have requested, and received, two thirty day extensions of time to prepare and file the trial memorandum. With the Court's gracious indulgence, therefore, plaintiffs have had better than three months to satisfy the requirements of the Pretrial Order. "Given the extended period of time over which this case ha[s] been pending and the numerous times it was rescheduled, noncompliance is completely beyond our understanding ..., particularly

6

where the record is completely devoid of any attempt by [plaintiffs] or [their] attorney to substantially comply with the Pre[trial] Order." Matter of Maurice, 21 F.3d 767, 773 (7th Cir. 1994) (citation and internal quotation marks omitted).

Second, plaintiffs' noncompliance, despite having procured multiple extensions of time, is rendered all the more reprehensible by the fact that defendants have taken the lead in drafting the joint trial memorandum and the requisite stipulations of fact and law, thereby leaving plaintiffs with little more to do than craft witness and exhibit lists and review and comment on defendants' proposed language and stipulations. Even giving plaintiffs and their counsel the benefit of the doubt by assuming they are extremely busy (which in any event is no excuse for failing to honor the Court's orders),[3] there is no plausible reason why they cannot find the modest amount of time necessary to put together their portion of the joint trial memorandum.

Third, this is not the first time plaintiffs have disregarded a judicial mandate. Thus, as mentioned above, plaintiffs never complied with the Court's May 23, 2003 Order granting defendants' motion to compel and directing plaintiffs to respond to the interrogatories and document requests initially served by defendants in December 2002. Plaintiffs' recidivist tendencies magnify the egregiousness of their misconduct. See Cauley v. Ingram Micro, Inc., 220 F.R.D. 26, 29 (W.D.N.Y. 2004) (dismissing suit as discovery sanction where: "Plaintiff has demonstrated unexcused and willful noncompliance with two orders of this court."); Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees and Restaurant Employees Int'l Union, 212 F.R.D. 178, 224-25 (S.D.N.Y. 2003) (imposing sanction of dismissal for bad faith conduct including noncompliance with court orders).

---

[3] Chamorro, 304 F.3d at 5 ("The fact that an attorney has other fish to fry is not an acceptable reason for disregarding a court order.").

7

The "strong medicine" of dismissal with prejudice is most frequently, and appropriately, dispensed to repeat offenders, like plaintiffs. For instance, in Herbst v. Brown, 2001 WL 548721 (S.D.N.Y. May 23, 2001), aff'd mem., 23 Fed. Appx. 84, 2002 WL 24243 (2d Cir. Jan. 4, 2002), the district court dismissed the plaintiff's case as a sanction for "fail[ing] to cooperate in formulating a joint pretrial order ...," noting that, as here, progress on the case had been slowed to a crawl by the plaintiff's "failure to take any steps to prepare the case for trial." Id. at *1-2.[4] In like fashion, the sanction of dismissal was inflicted in Neufeld v. Neufeld, 172 F.R.D. 115 (S.D.N.Y. 1997) where, after refusing to appear for a court-ordered deposition, and then only doing so under threat of dismissal, and neglecting to pay a monetary sanction, the plaintiffs "failed to submit a pretrial memorandum and joint pretrial order despite the fact that the case [was] to be tried in less than a week." Id. at 119.

As in the cases cited immediately above, plaintiffs' "blatant violation of the court's order ... undermined the court's studied effort to manage its docket[,] ... breached [their] duty to the court, and wasted the court's time in the bargain." Chamorro, 304 F.3d at 5. Plaintiffs' "lollygagging throughout the proceedings" has now culminated in their noncompliance with the Pretrial Order, an offense that, considered in context, is sufficiently severe to operate as the proverbial "straw that broke the dromedary's back." Id. at 6-7. "Given that omission and what had occurred (or, more precisely put, what had not occurred) over the [nearly three]-year life of this case ...," plaintiffs have earned the harsh sanction of an Order dismissing their complaints, with prejudice. Id. at 7.

---

[4] We reiterate in this regard that plaintiffs conducted no depositions in this case and, in fact, have done little more than serve a basic set of document requests, appear for their own depositions, file an opposition to defendants' motion for summary judgment (although they have not submitted papers in response to defendants' motion for reconsideration), and file numerous boilerplate motions for extensions of time to conduct litigation tasks that, in the end, are never actually done.

B.  **Alternative Sanctions**

Even if the Court is disinclined to impose the sanction of dismissal, plaintiffs' "repeated failures ... to respond in any way to formal, written orders of the court ... cannot go unpunished." Zak v. Kenney, 197 F.R.D. 212, 213 (D. Conn. 2000). Thus, at a bare minimum, plaintiffs should be precluded from (i) calling any witnesses other than themselves to testify at trial, and (ii) introducing any exhibits not already identified as such by defendants.

"When a party or a party's attorney engages in sanctionable conduct, a judge may, on motion or his or her own initiative, issue any just order for violation of Rule 16, including an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence. The power to exclude witnesses and exhibits not disclosed in compliance with discovery and pretrial orders is essential to judicial case management." 3 Moore's Federal Practice § 16.92[5][c][i] (Matthew Bender 3d ed. 2004) (footnotes omitted).

This very sanction met with the Circuit Court's approval in Matter of Maurice, a case involving misconduct far less severe in magnitude than that engaged in by plaintiffs here. In affirming the preclusion order, the Seventh Circuit explained: "Two purposes for requiring the parties to comply with a pre-hearing (or pretrial) order include identifying witnesses and resolving evidentiary disputes in advance of trial, thus narrowing the issues and expediting the trial. When one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction." 21 F.3d at 773.

A similar Order of preclusion is undoubtedly warranted in this case, and indeed is the most lenient sanction imaginable for plaintiffs' noncompliance. See Applera Corp. v. MJ

9

Research Inc., 220 F.R.D. 13, 19-20 (D. Conn. 2004) (precluding expert testimony as a sanction for failure "to comply with the Court's scheduling order regarding both identifying experts and disclosing their reports ...").

### C.     Attorneys' Fees

Under Fed. R. Civ. P. 16(f), "[t]he court's discretion is limited by the requirement that a judge must require the party, the attorney representing the party, or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." 3 Moore's Federal Practice § 16.91[2][b] (Matthew Bender 3d ed. 2004). "The imposition of monetary sanctions under Rule 16(f) does not require a showing of prejudice in order to justify the sanctions." Id. at § 16.91[b][4] (footnotes omitted).

It is undisputed that plaintiffs' defiance of the Pretrial Order, by failing to participate in the drafting of a joint trial memorandum, violated the letter and spirit of Fed. R. Civ. P. 16. There can be no justification for plaintiffs' noncompliance, particularly in view of the facts, noted above, that (i) the Court has twice extended the original deadline for submitting the joint trial memorandum, and (ii) defendants have taken the laboring oar in drafting the trial memorandum and related pleadings required by the Pretrial Order. See EEOC v. Grief Bros. Corp., 218 F.R.D. 59, 64 (W.D.N.Y. 2003) (costs and attorneys' fees were properly awarded as a sanction for failure to produce relevant documents without substantial justification).

Nor can plaintiffs cite any "other circumstances [that] make an award of expenses unjust." Fed. R. Civ. P. 16(f). The only "other circumstances" that even come to mind would be financial hardship, but plaintiffs are, by all indications, far from destitute, and the burden associated with a monetary sanction is substantially mitigated by the fact it can be split five

ways, leaving each individual plaintiff with a relatively modest amount to pay. In the end, though, any fiscal pain to plaintiffs is, on balance, easily defensible; after all, "[d]efendants should not be required to bear the expenses caused by [p]laintiffs['] delays, which were not 'substantially justified.'" Almonte v. Coca-Cola Bottling Co. of New York, Inc., 169 F.R.D. 246, 249 (D. Conn. 1996).

Plaintiffs should therefore be ordered to "reimburse [d]efendants for any expenses, including reasonable attorney's fees, incurred as a result of [p]laintiffs['] failure to comply with the [Pretrial] Order." Id. (citation omitted). See also Holmes v. NBC/GE, 168 F.R.D. 481, 482 (S.D.N.Y. 1996) (awarding attorneys' fees as a sanction under Fed. R. Civ. P. 16(f)), aff'd mem., 133 F.3d 907 (2d Cir. 1997); Richardson v. Nassau County, 184 F.R.D. 497, 503 (E.D.N.Y. 1999) (same); Lory v. General Electric Co., 178 F.R.D. 86, 89-90 (N.D.N.Y. 1998) (same); Fonar Corp. v. Magnetic Resonance Plus, Inc., 175 F.R.D. 53, 56-57 (S.D.N.Y. 1997) (same).[5]

### III.    CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant the instant motion for sanctions and (i) dismiss plaintiffs' complaints, with prejudice, or, as a less desired alternative, preclude plaintiffs from calling any witnesses other than themselves to testify at trial and bar plaintiffs from introducing any exhibits not identified as such by defendants, and (ii) direct plaintiffs to reimburse defendants for reasonable attorneys' fees and costs incurred as a consequence of plaintiffs' noncompliance with the Pretrial Order.

---

[5] Defendants will submit appropriate documentation of fees and costs incurred as a consequence of plaintiffs' noncompliance upon entry of an appropriate Order awarding such a sanction. See Flood v. Ponderosa Steak House, 1995 WL 13249, at *2 (W.D.N.Y. Jan. 9, 1995).

Respectfully submitted,

DEFENDANTS,
PITNEY BOWES INC. and IMAGISTICS
INTERNATIONAL INC.

By: _____
　　Lawrence Peikes (ct07913)
　　Wiggin and Dana LLP
　　Its Attorneys
　　400 Atlantic Street
　　P.O. Box 110325
　　Stamford, CT  06911-0325
　　(203) 363-7600
　　(203) 363-7676 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on July 12, 2004, I caused a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 16(f) to be served by first-class U.S. mail, postage pre-paid, on:

>William B. Barnes, Esq.
>Rosenstein & Barnes
>1100 Kings Hwy. East
>Fairfield, CT 06432

_____
Lawrence Peikes

\15058\410\89473.1