UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DEBRA COSENTINO, et al., | X | MASTER CAPTION |
|  | : |  |
|  | : | CASE NO. 3:01CV2129 (AVC) |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| PITNEY BOWES INC., and IMAGISTICS | : |  |
| INTERNATIONAL INC., | : | JULY 12, 2004 |
|  | : |  |
| Defendants. | : |  |
|  | X |  |

**AFFIDAVIT OF COUNSEL IN SUPPORT OF DEFENDANTS' MOTION FOR**
**SANCTIONS PURSUANT TO FED. R. CIV. P. 16(f)**

STATE OF CONNECTICUT)
                ) ss:
COUNTY OF FAIRFIELD  )

LAWRENCE PEIKES, being duly sworn, deposes and says:

1.      I am a partner with the firm of Wiggin and Dana LLP, counsel of record for defendants Pitney Bowes Inc. ("PB") and Imagistics International Inc. ("Imagistics") (collectively "defendants"), in the above-captioned consolidated cases, am over the age of eighteen (18) and fully understand the meaning and significance of an oath. This affidavit is submitted in support of defendants' motion for sanctions pursuant to Fed. R. Civ. P. 16(f).

2.      In early December 2002, defendants served each individual plaintiff with an initial set of interrogatories and request for production of documents. Plaintiffs did not serve a timely response to these written discovery demands. Eventually, after informal efforts to secure plaintiffs' compliance with their discovery obligations proved fruitless, defendants filed a motion to compel. That motion went unopposed and was granted by the Court on May 23, 2003. Plaintiffs never complied with the Court's Order. Nor have plaintiffs conducted any discovery in

this case other than serving a request for production of documents, to which defendants timely responded in December 2002.

3.      On March 29, 2004, the Court issued a Pretrial Order directing the parties to file a joint trial memorandum by April 28, 2004. At plaintiffs' request, the deadline for filing the trial memorandum was extended by thirty days until May 28, 2004. On May 27, 2004, I transmitted a draft trial memorandum (copy attached as Exhibit 1) and proposed stipulation of facts and law (copy attached as Exhibit 2) to plaintiffs' counsel via e-mail and requested that counsel provide plaintiffs' witness and exhibit lists and comment on the proposed stipulations. Counsel responded by requesting consent for an additional thirty day extension of time to file the trial memorandum, which consent was somewhat reluctantly granted. (A copy of this e-mail exchange is annexed hereto as Exhibit 3). By Order dated June 14, 2004, the Court granted plaintiffs' motion and extended the deadline for filing the trial memorandum until July 6, 2004. In the meantime, on June 1, 2004, while plaintiffs' second motion for an extension of time was pending, defendants filed and served their proposed jury instructions and voir dire questions.

4.      As of July 1, 2004, plaintiffs' counsel still had not provided a list of witnesses and exhibits or commented on defendants' proposed stipulations of fact and law. Accordingly, on that date, defense counsel sent an e-mail to plaintiffs' counsel reminding him of the upcoming July 6 deadline for submitting the joint trial memorandum and inquiring as to whether plaintiffs had made any progress on their sections of the pleading. No reply was forthcoming. (A copy of this e-mail is annexed hereto as Exhibit 4). On July 7, 2004, one day after the twice extended deadline for filing the trial memorandum had expired, I called the office of plaintiffs' counsel and left a substantive message advising that the deadline had now been missed and requesting a

return call.  That request was not honored and as of the date of this motion nothing further has been heard from plaintiffs' counsel.

_____
Lawrence Peikes

Subscribed to and sworn before
me this 12th day of July 2004

_____
Notary Public

My commission expires on _____.

**My Commission Expires Feb 28, 2006**

3

## CERTIFICATE OF SERVICE

This is to certify that on July 12, 2004, I caused a copy of the foregoing Affidavit of

Counsel in Support of Defendants' Motion for Sanctions Pursuant to Fed. R. Civ. P. 16(f) to be

served by first-class U.S. mail, postage pre-paid, on:

> William B. Barnes, Esq.
> Rosenstein & Barnes
> 1100 Kings Hwy. East
> Fairfield, CT 06432

_____
Lawrence Peikes

\15058\410\89558.1

4

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | X | MASTER CAPTION |
| DEBRA COSENTINO, et al., | : | |
| | : | CASE NO. 3:01CV2129 (AVC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PITNEY BOWES INC, and IMAGISTICS | : | |
| INTERNATIONAL, INC., | : | MAY 28, 2004 |
| | : | |
| Defendants. | : | |
| | X | |

## JOINT PRE-TRIAL MEMORANDUM

Pursuant to the Pre-Trial Order entered by the Court on March 29, 2004, and in accordance with D. Conn. L. Civ. R. 6, plaintiffs Debra Cosentino, Geraldine Benton, Patricia Buonincontra, Kim Cifatte, and Donna Moore (collectively "plaintiffs") and defendants Pitney Bowes Inc. ("PB") and Imagistics International Inc. ("Imagistics") (collectively "defendants") submit this Joint Pre-Trial Memorandum.

## 1.    TRIAL COUNSEL:

For plaintiffs:

William B. Barnes, Esq.
Rosenstein & Barnes
1100 Kings Hwy. East
Fairfield, CT 06432
(203) 367-7922
(203) 367-8110 (fax)

For defendants:

Lawrence Peikes (ct 07913)
Wiggin and Dana LLP
400 Atlantic Street
P.O. Box 110325
Stamford, CT 06911-0325
(203) 363-7600
(203) 363-7676 (fax)

## 2.    JURISDICTION:

Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and its state law analogue, the Connecticut Fair Employment Practices

Act ("FEPA"), Conn. Gen. Stat. §§ 46a-60, et seq. The Court has federal question jurisdiction over plaintiffs' Title VII claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' FEPA claims, as well as their common law claims for negligent supervision, pursuant to 28 U.S.C. § 1367(a). Personal jurisdiction is not contested.

**3.** **JURY/NON-JURY:**

Plaintiffs have made a demand for trial by jury.

**4.** **LENGTH OF TRIAL:**

The parties anticipate it will require three to four days to conduct a trial in this matter.

**5.** **FURTHER PROCEEDINGS:**

Other than a charge conference and argument as to motions in limine, the parties do not anticipate the need for any further proceedings prior to trial. However, defendants' motion for reconsideration of the Court's Order, dated March 25, 2004, denying summary judgment remains pending.

**6.** **NATURE OF CASE:**

In Count One, plaintiffs allege they were subjected to gender-based harassment by their supervisor, Gary Simpson, thereby creating a hostile work environment in violation of Title VII and the FEPA.. Plaintiffs further allege in Count Two that defendants were negligent in their supervision of Mr. Simpson. As a remedy, plaintiffs seek to recover lost wages, compensatory damages for alleged emotional distress, punitive damages, and attorneys' fees and costs.

**7.** **TRIAL BY A MAGISTRATE JUDGE:**

The parties have not stipulated to have the matter tried before a Magistrate Judge.

**8.** **LIST OF WITNESSES:**

A.    Defendants may call any or all of the following witnesses to testify at trial. This list does not necessarily include rebuttal or impeachment witnesses.

1.    Gary Simpson, Imagistics International Inc., 100 Oakview Drive, Trumbull, CT 06611 – Mr. Simpson will refute plaintiffs' testimony as to the various incidents and events upon which their claims are based, and further testify regarding the functions of the ECO Cartridge Group, the compensation programs, plaintiffs' Performance of their job duties, plaintiffs' attitudinal problems, complaints registered by plaintiffs and defendants' response, and other matters pertinent to the claims and defenses alleged in this action.

2.    Daryl Schneider, [last known address] – Mr. Schneider will testify regarding his duties and responsibilities, the atmosphere in the ECO Cartridge Group work area, Mr. Simpson's treatment of the employees in the ECO Cartridge Group, plaintiffs' negative attitudes, plaintiffs' job performance, and other pertinent matters.

3.    Georgianna Coleman, [last known address] – Ms. Coleman will testify regarding any complaints received by the Human Resources department regarding Mr. Simpson's conduct, and the investigations and corrective measures taken in response to those complaints.

4.    Mary Iaffaldano, [last known address] – Ms. Iaffaldano will testify regarding the atmosphere in the ECO Cartridge Group work area, plaintiffs' negative attitudes, plaintiffs' job performance, and Mr. Simpson's treatment of his subordinates.

5.    Dawn Stevens, 100 Oakview Drive, Trumbull, CT 06611 – Ms. Stevens will testify regarding pertinent human resources and personnel policies, any complaints received by the Human Resources department about Mr. Simpson, actions taken in response to those complaints, and the decision to transfer the ECO Cartridge Group's functions to Denver.

3

6.    Janice McManus, [last known address] – Ms. McManus will testify regarding pertinent human resources and personnel policies, any complaints received by the Human Resources department about Mr. Simpson, actions taken in response to those complaints, and the decision to transfer the ECO Cartridge Group's functions to Denver.

7.    Brenda West, [last known address] – Ms. West will testify regarding plaintiffs' job performance and attitudes, plaintiffs' complaints and disparaging comments regarding Mr. Simpson, Mr. Simpson's lack of involvement in managing the ECO Cartridge Group after he was replaced by Ms. West, and the decision to transfer the ECO Cartridge Group's functions to Denver.

8.    Doug Oakes, Pitney Bowes Inc., 1 Elmcroft Road, Stamford, CT 06904 – Mr. Oakes will testify regarding plaintiff Moore's report to him about Mr. Simpson, and the responsive actions taken.

9.    John Connor [last known address] – Mr. Connor will testify regarding his experience and observations while working in the ECO Cartridge Group.

10.    Paxton Cobb, [last known address] – Mr. Cobb will testify regarding his experience and observations while working in the ECO Cartridge Group.

11.    Dick Wajert, [last known address] – Mr. Wajert will testify regarding communications with plaintiffs about Mr. Simpson.

12.    Paul Gorman, [last known address] – Mr. Gorman will testify regarding communications with plaintiffs about Mr. Simpson.

13.    Gus Stepp, Pitney Bowes Inc., 1 Elmcroft Road, Stamford, CT 06904 – Mr. Stepp will testify regarding complaints he received from plaintiffs regarding Mr. Simpson and actions taken in response to those complaints.

4

14. Debra Cosentino, 89 Country Place, Shelton, CT 06484 – If called, Ms. Cosentino will testify regarding her claims and allegations.

15. Geraldine Benton, _____ – If called, Ms. Benton will testify regarding her claims and allegations.

16. Patricia Buonincontra, _____ – If called, Ms. Buonincontra will testify regarding her claims and allegations.

17. Kim Cifatte-Convertito, _____ – If called, Ms. Cifatte will testify regarding her claims and allegations.

18. Donna Moore, 7 Sunset Drive, Trumbull, CT 06611 – If called, Ms. Moore will testify regarding her claims and allegations.

B. Plaintiffs' may call any or all of the following witnesses to testify at trial. This list does not necessarily include rebuttal or impeachment witnesses.

1. Debra Cosentino

2. Geraldine Benton

3. Patricia Buonincontra

4. Kim Cifatte-Convertito

5. Donna Moore

6.

7.

8.

9. **EXHIBITS:**

A. Defendants expect to offer the following exhibits at trial:

5

D. Exh. 1:  Letter from Gary Simpson to Geri Benton dated August 10, 1999 (PB-000262-263)

D. Exh. 2:  Memo from Vice President Human Resources to All Copier and Fax Region Sales Vice Presidents and Service Region Directors dated January 4, 1999 (PB-000265-268)

D. Exh. 3:  Geri Benton - Compensation memo from Director of Aftermarket sales dated December 28, 1999 (PB-000356)

D. Exh. 4:  Aftermarket Supply Sales Rep Bonus Program (PB-000355)

D. Exh. 5:  Memo to ECO Sales Reps from Gary Simpson re:  Commissions dated February 10, 2000 (PB-000360-361)

D. Exh. 6:  Non-Exempt Performance Appraisal of Geraldine Benton from Gary Simpson dated October 9, 2000 (PB-000251-257)

D. Exh. 7:  Memo to Gary Simpson from Geri Benton dated September 10, 2000 (PB-000457-459)

D. Exh. 8:  Letter from Lillian Gwyn, The New York Times to Don Poster re: Geri Benton dated August 14, 2000 (PB-000385)

D. Exh. 9:  Memo from Gary Simpson to ECO/Sales Technical/Admin Groups re: Daily Breaks dated August 31, 2000 (PB-000623-624)

D. Exh. 10:  Memo from Gary Simpson to Geri Benton re:  Breaks/Work Hours dated September 14, 2000 (PB-000470-471)

D. Exh. 11:  Non-Exempt Performance Appraisal of Geraldine Benton from Donna Moore dated September 17, 2001 (PB-000227-232)

D. Exh. 12:  Transfer Application from Geraldine Benton dated March 1, 2001 (PB-000342)

D. Exh. 13:  Transfer Application from Geraldine Benton dated February 28, 2001 (PB-000343)

D. Exh. 14:  Transfer Application from Geraldine Benton dated April 11, 2001 (PB-000345)

D. Exh. 15:  Memo from Donna Moore to Geri Benton/Kim Cifatte re:  Notice Upon Departure dated May 1, 2001 (PB-000344)

D. Exh. 16:  Memo from Donna Moore to Geri Benton/Kim Cifatte re:  Negative Attitudes dated May 1, 2001 (PB-000519)

D. Exh. 17:  Memo from Gary Simpson to Geri Benton re:  "final" listing of potential commissionable accounts dated September 10, 2001 (PB-000415)

D. Exh. 18:  Memo from Dawn Stevens to Geri Benton re:  Confidential Agreement dated April 6, 2001 (PB-000346)

D. Exh. 19:  Confidential Interview dated March 21, 2001 (PB-000347)

D. Exh. 20:  Letter from Geraldine Benton dated April 10, 2001 (PB-000354)

Exh. 21:  Letter from Gary Simpson to Patricia Buonincontra dated June 4, 1998 (PB-000871)

D. Exh. 22:  Pitney Bowes Copier Systems Sexual Harassment Policy signed by Patricia Buonincontra dated February 2, 1998 (PB-000682)

D. Exh. 23:  Aftermarket Supply Sales Rep Bonus Program (PB-000962)

D. Exh. 24:  Non-Exempt Performance Appraisal for Patricia Buonincontra from Gary Simpson dated September 16, 1998 (PB-000665-669)

D. Exh. 25:  Non-Exempt Performance Appraisal for Patricia Buonincontra from Gary Simpson dated October 18, 1999 (PB-000656-658)

D. Exh. 26:  Memo from Gary Simpson to Pat Buonincontra re:  Behavior dated December 30, 1999 (PB-000651)

D. Exh. 27:  Memo from Gary Simpson to ECO Sales Reps re:  Commissions dated April 14, 2000 (PB-000964)

D. Exh. 28:  Memo from Gary Simpson to Pat Buonincontra re:  9900 Series ECO Conversions (PB-000650)

D. Exh. 29:  Memo from Gary Simpson to Pat Buonincontra re:  Performance dated June 5, 2000 (PB-000649)

D. Exh. 30:  Memo from Gary Simpson to Pat Buonincontra re:  Week of June 12th Phone Activity dated June 23, 2000 (PB-000648)

D. Exh. 31:  Memo from Gary Simpson to ECO Sales Reps re:  Telephone Activity Through July 21st dated July 26, 2000 (PB-001005)

D. Exh. 32:  Memo from Gary Simpson to Pat Buonincontra re:  Breaks/Work Hours dated September 14, 2000 (PB-000647)

D. Exh. 33:  Non-Exempt Performance Appraisal for Patricia Buonincontra from Gary Simpson dated September 14, 2000 (PB-000639-644)

D. Exh. 34:  Handwritten note re:  Pat Buonincontra (PB-000642)

D. Exh. 35:  Confidential Interview to Pat Buonincontra from Dawn Stevens dated September 15, 2000 (PB-000959)

D. Exh. 36:  Memo from Gary Simpson to Pat Buonincontra re:  Company Policy/Guidelines dated November 30, 2000 (PB-000663)

D. Exh. 37:  2001 ECO Sales Compensation Program (PB-000963)

D. Exh. 38:  Memo from Gary Simpson to Pat Buonincontra re:  3 Point Accounts dated February 2, 2001 (PB-001000)

D. Exh. 39  Memo from Gary Simpson to Pat Buonincontra re:  Poor Performance dated March 9, 2001 (PB-001027-1028)

D. Exh. 40:  Transfer Application of Pat Buonincontra dated February 21, 2001 (PB-000635)

D. Exh. 41:  Letter from Cheryl A. Calsetta to Pat Buonincontra dated March 21, 2001 (PB-000637-638)

D. Exh. 42:  Letter from Gary Simpson to Debra J. Daniel-Cosentino dated February 22, 1999 (PB-000010-11)

D. Exh. 43:  Pitney Bowes Office Systems Affirmative Action/Equal Opportunity Policy Statement (PB-000113-117)

D. Exh. 44:  Confidential Interview for Debbie Cosentino from Dawn A. Stevens dated September 1, 2000 (PB-000122)

D. Exh. 45:  Non-Exempt Performance Appraisal for Debra Cosentino from Gary Simpson dated February 28, 2000 (PB-000018-23)

D. Exh. 46:  Aftermarket Supply Sales Rep Bonus Program (PB-000155)

D. Exh. WW:  Memo from Debra Cosentino to Dawn Stevens re:  Complaints dated September 18, 2000 (PB-000125)

D. Exh. 47:  Letter from Debra Cosentino to Charlie Schaeffer of Mr. Laser dated October 24, 2000 (PB-000153)

9

D. Exh. 48: Letter from Gary Simpson to Charles Schaeffer – Mr. Laser re: Toner Cartridge dated November 8, 2000 (PB-000152)

D. Exh. 49: Memo from Gary Simpson to ECO Sales Reps re: 1st Quarter Commission Results dated April 25, 2000

D. Exh. 50: Memo from Gary Simpson to Debra Cosentino re: Performance dated June 2, 2000 (PB-000165)

D. Exh. 51: Memo from Gary Simpson to Debra Cosentino re: Week of June 12th Phone Activity

D. Exh. 52: Memo from Gary Simpson to ECO Sales Reps re: Telephone Activity for June dated July 26, 2000

D. Exh. 53: Memo from Gary Simpson to ECO Sales Reps re: Year 2000 Results dated September 14, 2000

D. Exh. 54: Memo from Gary Simpson – 2000 Turkey Bash Results

D. Exh. 55: Memo from Debra Cosentino to Gary Simpson re: Notice of Resignation dated November 27, 2000 (PB-000001)

D. Exh. 56: Transfer Application of Kim Cifatte dated August 11, 1998

D. Exh. 57: Letter from Gary Simpson to Kim Cifatte dated November 2, 1998

D. Exh. 58: Non-Exempt Performance Appraisal of Kim Cifatte from Gary Simpson dated October 19, 1999

D. Exh. 59: Memo from Gary Simpson to Kim Cifatte re: Performance dated June 5, 2000

D. Exh. 60: Memo from Gary Simpson to Kim Cifatte re: Performance dated June 8, 2000

10

D. Exh. 61:  Memo from Gary Simpson to Kim Cifatte re:  Inappropriate Comments dated September 5, 2000

D. Exh. 62:  Memo from Gary Simpson to Kim Cifatte re:  Breaks/Work Hours dated September 14, 2000

D. Exh. 63:  Non-Exempt Performance Appraisal of Kim Cifatte from Gary Simpson dated December 6, 2000

D. Exh. 64:  Memo from Gary Simpson to Kim Cifatte re:  Company Policy/Guidelines dated November 30, 2000

D. Exh. 65: 3 Pointers Kim

D. Exh. 66: Transfer Application of Kim Cifatte dated February 16, 2001

D. Exh. 67: Transfer Application of Kim Cifatte dated April 11, 2001

D. Exh. 68:  Confidential Interview of Kim Cifatte from Georgianna Coleman dated March 21, 2001

D. Exh. 69: Meeting February 2001 – New Supervisor

D. Exh. 70: Memo from The ECO Program Employees to Georgianna Coleman re:  Threat of Loss of Jobs

D. Exh. 71: Letter from Kim Cifatte to Gary Simpson dated March 8, 2001

D. Exh. 72:  Memo from Gary Simpson to Kim Cifatte re:  Poor Performance dated March 9, 2001

D. Exh. 73: Employee Problem Discussion – Kim Cifatte dated April 6, 2001

D. Exh. 74:  Memo from Doris Owens - Business Case for Imagistics International Combine ECO Group with Supplyline dated December 4, 2001

D. Exh. 75: Letter from Gary Simpson to Donna Moore dated January 10, 2001

11

D. Exh. 76:  Donna Moore – Objectives

D. Exh. 77:  Supervisor – ECO Sales Program Monthly Bonus Plan from Gary Simpson

D. Exh. 78:  Email from Georgianna Coleman to Gary Simpson dated February 26, 2001

D. Exh. 79:  Memo from Gary Simpson to Donna Moore re:  Hewlett Packard Quota Target dated March 12, 2001

D. Exh. 80:  Memo from Donna Moore to Geri Benton/Kim Cifatte re:  Negative Attitudes dated May 1, 2001 with attached email from Gary Simpson to Donna Moore and Georgianna Coleman re:  Questions from Kim Cifatte dated April 30, 2001

D. Exh. 81:  Memo from Gary Simpson to Donna Moore re:  Weekly Business Review dated May 30, 2001

D. Exh. 82:  Memo from Gary Simpson to Donna Moore re:  Phone Logs dated June 20, 2001

D. Exh. 83:  Email from Donna Moore to Gary Simpson re:  Phone Reports dated June 19, 2001 and reply email from Gary Simpson to Donna Moore re:  Phone Reports dated June 21, 2001

D. Exh. 84:  Letter from Gary Simpson to Doris dated July 9, 2001

D. Exh. 85:  Letter dated July 23, 2001

D. Exh. 86:  Complaint & Jury Trial Demand – Donna Moore v. Pitney Bowes, Inc., and Imagistics International, Inc. dated January 31, 2001

B.      Plaintiffs expect to offer the following exhibits at trial:

P. Exh. 1:

P. Exh. 2:

P. Exh. 3:

P. Exh. 4:

P. Exh. 5:

P. Exh. 6:

P. Exh. 7:

P. Exh. 8:

P. Exh. 9:

P. Exh. 10:

**10.**    **TRIAL TO COURT/JURY:**  A written stipulation of uncontroverted facts and law is submitted herewith.

    a)    Court:  Not Applicable

    b)    Jury:

        i)    Proposed Voir Dire Questions: The parties' proposed voir dire questions are submitted herewith.

        ii)    Proposed Jury Instructions: The parties' proposed jury instructions as to controlling substantive principles of law are submitted herewith.

    c)    Opening Statements:  Counsel for both plaintiffs and defendants wish to make an opening statement.

Respectfully submitted,

PLAINTIFFS,                              DEFENDANTS,
DEBRA COSENTINO, ET AL.                  PITNEY BOWES INC. and IMAGISTICS
                                         INTERNATIONAL INC.


By:_____            By:_____
    William B. Barnes, Esq.                 Lawrence Peikes (ct 07913)
    Rosenstein & Barnes                     Wiggin and Dana LLP
    1100 Kings Hwy. East                    Its Attorneys
    Fairfield, CT  06432                    400 Atlantic Street
    (203) 367-7922                          P.O. Box 110325
    (203) 367-8110 (fax)                    Stamford, CT  06911-0325
                                            (203) 363-7600
                                            (203) 363-7676 (fax)


\15058\410\85829.1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | X | MASTER CAPTION |
| DEBRA COSENTINO, et al., | : | |
| | : | CASE NO. 301CV2129 (AVC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PITNEY BOWES INC., and IMAGISTICS | : | |
| INTERNATIONAL INC., | : | MAY 28, 2004 |
| | : | |
| Defendants. | : | |
| | X | |

**STIPULATION OF UNCONTROVERTED LAW AND FACTS**

Pursuant to the Pre-Trial Order entered by the Court on March 29, 2004, the parties to the

above-captioned matter submit the following Stipulation of Uncontroverted Law and Facts:

**I.    Stipulations of Law**

The parties stipulate and agree that the following legal principles apply to the claims and

defenses alleged in this action:

**A.    Sexual Harassment/Hostile Work Environment Claims**

1.    The same standards and elements of proof apply to plaintiffs' federal claims under

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and their

state claims under the Connecticut Fair Employment Practices Act ("FEPA"), Conn. Gen. Stat.

46a-60, et seq. Craine v. Trinity College, 259 Conn. 625, 637 n.6, 791 A.2d 518 (2002); Thames

Talent, Ltd. v. Commission on Human Rights and Opportunities, 265 Conn. 127, 139, 827 A.2d

659, 667 (2003).

2.    To prevail on their claims of sexual harassment, plaintiffs must prove: "'(1) that

the workplace was permeated with discriminatory intimidation that was sufficiently severe or

pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003).

3.    "In a hostile work environment case, which involves 'offensive conduct in general,' the alterations in the terms and conditions of employment are constructive rather than explicit; therefore, the conduct must be severe or pervasive to be actionable." Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 91 (2d Cir. 2002).

4.    "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' ... In short, a plaintiff alleging a hostile work environment 'must demonstrate either a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment.'" Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id.

5.    "Whether a reasonable person would find a given work environment to be hostile depends on the totality of the circumstances: '[c]onsiderations include: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance.'" Mormol v. Costco Wholesale Corp., ___ F.3d ___, 2004 WL 728222, at *5 (2d Cir. April 6, 2004).

6.    "[I]n order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." Alfano, 294 F.3d at 374.

7.    An employer is vicariously liable for a sexually hostile work environment "when a 'supervisor with immediate (or successively higher) authority over the employee' has engaged in the complained of conduct ...," Mack, 326 F.3d at 123, and "behavior illegal under Title VII culminates in a supervisor's tangible employment action ..." Id. at 124.

8.    "[I]n the absence of a tangible employment action, [defendants are] entitled to an affirmative defense '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or avoid harm otherwise.'" Mack, 326 F.3d at 127-28.

9.    "A tangible employment action, as defined by the Supreme Court, 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Mormol, at *3.

**B. Negligent Supervision**

1.    "Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." Stokes v. Lyddy, 75 Conn. App. 252, 257, 815 A.2d 263, 266 (2003).

2.    "[T]he test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was

3

likely to result?" Baptiste v. Better Val-U Supermarket, Inc., 262 Conn. 135, 139, 811 A.2d 687,

691 (2002). See also Higgins v. Metro-North Railroad Co., 318 F.3d 422, 427 (2d Cir. 2003).

3.      In the employment context, "[a] defendant does not owe a duty of care to protect a

plaintiff from another employee's tortious acts unless the defendant knew or reasonably should

have known of the employee's propensity to engage in that type of tortious conduct." Abate v.

Circuit-Wise, Inc., 130 F. Supp. 2d 341, 344 (D. Conn. 2001).

## II.    STIPULATION OF FACTS

The parties stipulate and agree that the following facts are true:

1.      Plaintiffs are former colleagues in the ECO Cartridge Group of defendant Pitney

Bowes' office systems division ("PBOS").

2.      The ECO Cartridge Group was responsible for selling reconditioned facsimile

machine toner cartridges to PBOS' customers.

3.      Plaintiffs Cosentino, Benton, Buonincontra and Cifatte were all employed in the

ECO Cartridge Group as telemarketers; plaintiff Moore was hired in February 2001 as a

supervisor.

4.      From its inception, and through the end of September 2001, the ECO Cartridge

Group was managed by Gary Simpson, at the time PBOS' Director, After-Market Sales.

5.      Plaintiffs received a base salary and were eligible for a monthly production-based

bonus, or commission.  Under the operative compensation structure, plaintiffs were required to

generate a minimum of twenty (20) orders from new ECO Cartridge Group customers to earn a

monthly commission.  If twenty (20) and twenty-five (25) orders were received in a given

month, the employee received a commission payment of $667.00.  Monthly orders in excess of

twenty-five (25) triggered higher commission payments: $750.00 for orders totaling between

twenty-five (25) and thirty (30) in a month; $833.00 for monthly orders of between thirty (30) and thirty-five (35); $917.00 for orders between thirty-five (35) and forty (40); $1,000.00 for orders between forty (40) and fifty (50); and $1,250.00 for orders in excess of fifty (50).

6.      In December 2000, plaintiff Cosentino tendered her resignation.

7.      In October 2001, plaintiff Benton took an early retirement.

8.      In March 2001, plaintiff Buonincontra resigned from her position in the ECO Cartridge Group and accepted a job as a Collection Specialist with Pitney Bowes Credit Corporation.

9.      In September 2001, Brenda West replaced Mr. Simpson as head of the ECO Cartridge Group.

10.      In December 2001, the ECO Cartridge Group's functions were transferred to a business unit in Denver and the positions held by the remaining employees in the ECO Cartridge Group, including plaintiffs Cifatte and Moore, were eliminated.  Plaintiffs Moore and Cifatte were laid off and received severance benefits.

PLAINTIFFS,
DEBRA COSENTINO, ET AL.

DEFENDANTS,
PITNEY BOWES INC. and IMAGISTICS
INTERNATIONAL INC.


By:_____

    William B. Barnes, Esq.
    Rosenstein & Barnes
    1100 Kings Hwy. East
    Fairfield, CT  06432
    (203) 367-7922
    (203) 367-8110 (fax)

By:_____

    Lawrence Peikes (ct 07913)
    Wiggin and Dana LLP
    Its Attorneys
    400 Atlantic Street
    P.O. Box 110325
    Stamford, CT  06911-0325
    (203) 363-7600
    (203) 363-7676 (fax)

\15058\410\87669.1

## Peikes, Lawrence

**From:**  Peikes, Lawrence
**Sent:**  Thursday, July 01, 2004 2:18 PM
**To:**  'wbarnes@rosenbar.com'
**Subject:** Cosentino, et al. v. Imagistics

Bill: Have you made any headway on the joint pre-trial and/or reviewed our proposed stipulations of
The new deadline is next week.  Thanks.

Lawrence Peikes
Wiggin and Dana
400 Atlantic Street
Stamford, CT 06901-3234
203-363-7609 (direct)
203-363-7676 (fax)
lpeikes@wiggin.com