UNITED STATES DISTRICT COURT        FILED
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DEBRA COSENTINO, et al., | X : | MASTER CAPTION 2005 JAN -7 A 11: 27 |
| | : | CASE NO. 3:01cv2129 (AVC) DISTRICT COURT |
| Plaintiff, | : | HARTFORD, CT. |
| v. | : | |
| PITNEY BOWES INC., and IMAGISTICS INTERNATIONAL INC., | : : | JANUARY 6, 2005 |
| Defendants. | : X | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE CASES FOR TRIAL

No doubt with an eye towards tilting the playing field in their favor, plaintiffs move pursuant to Fed. R. Civ. P. 42(a) for an Order consolidating the above-captioned sexual harassment cases for trial, as they were for pre-trial purposes. Plaintiffs' one-sided interpretation of Fed. R. Civ. P. 42(a), however, is painfully simplistic and ultimately flawed.[1]

In palliative fashion, plaintiffs dismiss the possibility that a consolidated trial of their uniquely personal claims before a common jury would engender "specific risks of prejudice and possible confusion," and blithely opine that "[a]ny general risks of prejudice and possible confusion can readily be handled by instructions and jury interrogatories which ask the jury to separately consider the case of each Plaintiff." (Pltfs' Mem. at p. 3). Plaintiffs' cavalier treatment of the prospects for prejudice and confusion is understandable -- after all, they are not the ones who stand to be adversely affected by consolidation -- but Fed. R. Civ. P. 42(a)

---

[1] For reasons that are not entirely clear, each plaintiff has filed her own motion for consolidation. The motion papers are substantively identical, however, and, therefore, we address plaintiffs' arguments co-extensively in a single brief.

demands a far more searching probe of the issues than the cursory, and conclusory, analysis offered by plaintiffs.

It is indeed incumbent upon the district court to "examine the special underlying facts with close attention before ordering a consolidation." In re Repetitive Stress Injury Litigation, 11 F.3d 368, 373 (2d Cir. 1993)(Citation and internal quotation marks omitted). Here, "the special underlying facts" reveal consolidation of plaintiffs' suits for trial to be entirely inappropriate.

I.   **INTRODUCTION**

Plaintiffs Cosentino, Benton, Buonincontra and Cifatte were all employed by Pitney Bowes Inc. ("PB") and/or Imagistics International Inc. ("Imagistics") (collectively "defendants") in the ECO Cartridge Group as telemarketers. Cosentino resigned in December 2000 and Moore was thereafter brought on board in February 2001 as a supervisor. From its inception, and through the end of September 2001, the ECO Cartridge Group was managed by Gary Simpson, at the time PB's Director, After-Market Sales.

Although plaintiffs generally aver that Mr. Simpson was an abusive and heavy-handed boss, and purport to attribute Mr. Simpson's allegedly harsh demeanor to their gender, the factual underpinnings of their individual sexual harassment claims are quite distinct. Plaintiffs' cases do of course share a common perceived villain (Mr. Simpson), and certain alleged acts of abuse directed at one plaintiff occurred in the presence of another plaintiff, but each individual plaintiff's claim is uniquely focused on her own personal interactions with Mr. Simpson, substantially more often than not behind closed doors or in private discussion.

Given the overlap in players, and to a far lesser extent events, it made perfect sense to consolidate plaintiffs' cases for pre-trial purposes so as to streamline discovery and motion

practice, and thereby exploit economies of scale to the benefit of all parties and the detriment of none. A consolidated jury trial, by sharp contrast, would, as discussed more fully below, artificially, and deceptively, magnify the quality and quantity of evidence each plaintiff is capable of mustering, thereby imbuing a propitious gloss on their claims with inevitably prejudicial consequences for defendants.

Because considerations of fundamental fairness, and the significant risk of juror confusion, substantially outweigh the modest efficiency gains a single trial might theoretically generate, plaintiffs' motions should be denied.

## II. ARGUMENT

"Fed. R. Civ. P. 42(a) provides that '[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.' There is broad discretion to determine whether the actions call for consolidation." United States v. 43.47 Acres of Land, 45 F. Supp. 2d 187, 194 (D. Conn. 1999)(Citation omitted).

"This discretion, however, is not unfettered." Solvent Chemical Co. v. E.I. DuPont de Nemours & Co., 242 F. Supp. 2d 196, 221 (W.D.N.Y. 2002)(Citation omitted). "A judge must balance the gains in judicial efficiency with any threats of prejudice and confusion to determine the most efficient method of disposition that preserves access to a fair and impartial trial. The burden is on the moving party to prove that consolidation is warranted. The movant must prove that the two actions are based on common questions of law or fact and that considerations of efficiency outweigh any prejudice or confusion that might result from consolidation." Ocean Ships, Inc. v. Stiles, 2003 WL 22741457, at *1 (S.D.N.Y. Nov. 19, 2003)(Citations omitted).

"Possible, or even likely, efficiency gains ... do not outweigh the need for a fair and impartial trial." Taft v. Ackermans, 2003 WL 402789 at *1 (S.D.N.Y. Feb. 20, 2003)(Citation omitted). This is because, as the Second Circuit has cautioned, "[t]he benefits of efficiency can never be purchased at the cost of fairness." Malcolm v. National Gypsum Co., 995 F.2d 346, 350 (2d Cir. 1993). Consequently, "[w]hile 'considerations of judicial economy favor consolidation,' those considerations 'must yield to a paramount concern for a fair and impartial trial." Solvent Chemical Co., 242 F. Supp. 2d at 221 (Citation omitted).

Setting aside the particulars of these cases for the moment, the undeniable fact of the matter is that conjoining multiple employment discrimination claims before a single jury invariably raises acute concerns about potential juror confusion and prejudice to the employer. Cf. Haskell v. Kaman Corp., 743 F.2d 113, 122 (2d Cir. 1984)(testimony of six former company officers on behalf of ADEA plaintiff regarding circumstances of their own terminations was unduly prejudicial and should have been excluded), quoting Moorhouse v. Boeing Co., 501 F. Supp. 390, 393 n.4 (E.D. Pa.)("even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his own contention that defendant laid him off because of his age."), aff'd, 639 F.2d 774 (3d Cir. 1980).

Such concerns were the driving force behind the Ninth Circuit's decision in Coleman v. Quaker Oats Co., 232 F.3d 1271 (9th Cir. 2000), affirming an order severing for trial ten ADEA cases that had been joined together in a single complaint. Severance was found to be warranted even though the claims arose out of the same transaction or occurrence in that "[a]ll ten [plaintiffs] were fired in the RIF's and all ten alleged age discrimination." The Court of Appeals agreed that the district court "properly considered the potential prejudice to Quaker created by the parade of terminated employees and the possibility of factual and legal confusion on the part

4

of the jury," and was more than justified in concluding "that Quaker would be prejudiced by having all ten plaintiffs testify at one trial." Id. at 1296-97 (Citations omitted). See also Wynn v. National Broadcasting Co., 234 F. Supp. 2d 1067, 1089 (C.D. Cal. 2002)("Severance is also appropriate for the more compelling reason of preventing unfair prejudice to Defendants that would inevitably result if all of Plaintiffs' [discrimination] claims were litigated in one lawsuit."); Fleming v. Home Depot U.S.A., Inc., 83 Fair Empl. Prac. Cas. (BNA) 1132, 1134-35 (S.D. Fla. 1998)(severing for trial several discrimination claims because "any possible benefits to be derived from a common trial are more than offset by the confusion to the jury and prejudice to the defendant from proceeding with these cases jointly.").

As Coleman suggests, and as one district court in this Circuit cogently observed in denying a motion to consolidate a pair of Title VII cases: "Consolidation is not warranted merely because two separate plaintiffs allege distinct claims under the same general theory of law or statute.... Indeed, because [employment discrimination] claims are so dependent upon the specific factual circumstances alleged in each case, consolidation would often be unwarranted even had both plaintiffs alleged the same general type (i.e. sex, race...) of discrimination. Moreover, even if some evidence may be relevant in both cases, that alone does not warrant consolidation of the two actions." Sidari v. Orleans County, 174 F.R.D. 275, 281-82 (W.D.N.Y. 1996).

Hostile work environment claims are by nature extraordinarily fact-specific -- even more so than garden-variety Title VII cases of the sort at issue in Sidari -- and hence are particularly ill-suited for a consolidated trial. "To prevail on a claim of sexual harassment based on a hostile work environment, a plaintiff must establish two elements: (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions

of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004)(Citations, internal quotation marks and alterations omitted).

"The first element of a hostile work environment claim has both an objective and subjective component: the misconduct must be severe or pervasive enough to create an objectively hostile or abusive working environment, and the victim must also subjectively perceive that environment to be abusive." Id. "[C]ourts determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998)(Citation omitted). To fairly apply these factors, a fact-finder must be singularly focused on each individual sexual harassment claimant's unique circumstances.[2]

Typical of the sexual harassment genre, these cases are highly fact-intensive. Thus, "[t]he evidence presented by plaintiffs, if believed, illustrates that female employees have been subjected to sexual harassment of varying degrees, which may or may not support a hostile environment claim." Elkins, 219 F.R.D. at 424. For instance, certain, but not all, of the plaintiffs accuse Mr. Simpson of withholding commissions, but the legitimacy of defendants'

---

[2] For this same basic reason, courts have been loathe to certify sexual harassment cases as class actions. See, e.g., Elkins v. American Showa, Inc., 219 F.R.D. 414, 423-24 (S.D. Ohio 2002)("Given the variations in the frequency and the severity of the behavior to which different female workers were subjected, the Court must conclude that commonality is lacking... The existence of a common question of law (all plaintiffs bring their claims under a hostile environment theory) does not suffice to establish commonality for purposes of certifying a class since the existence of that common legal theory does nothing to advance the litigation."); Cox v. Indian Head Industries, Inc., 187 F.R.D. 531, 534 (W.D.N.C. 1999)(due to variations in the nature of the harassment alleged by putative class members, "It cannot be said that 'as goes the claim of the named plaintiff, so go the claims of the class.' Thus, without negating the seriousness of the allegations, there are unique factual circumstances pertinent to each class member.")(Citations omitted).

6

reason for denying a commission payment on any particular occasion would need to be assessed on a case-by-case basis. Two plaintiffs, namely Benton and Cifatte, contend that Mr. Simpson issued them formal disciplinary and counseling memoranda as a means of harassment, but no other plaintiff raises a similar concern. To be sure, much of the alleged harassment involved criticism of plaintiffs' productivity (other than Cosentino who was generally prolific and hence showered with praise), which fluctuated significantly from month-to-month and plaintiff-to-plaintiff.

The factual discrepancies, however, extend far deeper than matters of compensation, discipline and performance -- plaintiffs' core allegations differ dramatically. By way of example, Moore, and to a lesser extent, Cifatte, claims Mr. Simpson made momentary contact with her person, but none of the other plaintiffs cite so much as a single instance of physical touching. Buonincontra's claim rests largely on a one-on-one encounter with Mr. Simpson unobserved by any of her co-plaintiffs. The focal point of Cifatte's claim is a tongue-lashing she allegedly endured at the hands of Mr. Simpson in front of her fellow plaintiffs (other than Moore) that continued behind closed doors in Mr. Simpson's office. This seminal incident necessarily impacted Cifatte in a far different way than it did the others. In like fashion, Benton and Buonincontra testified that they took particular offense to Mr. Simpson's alleged characterization of the ECO Cartridge sales employees as a "cancer" because they had recently lost loved ones to this disease.

Each plaintiff will naturally attempt to prove her case largely through her own testimony regarding the uniquely personal experiences she had with Mr. Simpson and the affect of these experiences on her own particular working environment and psyche. Were these cases consolidated for trial, thereby conjoining all of plaintiffs' personalized proffers before a single

jury, each plaintiff's claim would inevitably lose its individuality and all of the various allegations would inexorably merge together in the minds of the jurors. As such, "[a] single trial would present the jury with the hopeless task of trying to discern who did and said what to whom and for what reason." Henderson v. AT&T Corp., 918 F. Supp. 1059, 1063 (S.D. Tex. 1996). Assuredly, then, "[a] lumping together of such claims, which amounts to guilt by association, would unfairly prejudice the defendants." Sidari, 174 F.R.D. at 282.

In Sidari, as here, the plaintiffs argued that consolidation was warranted in large measure because they intended to testify on each other's behalf. The district court found the point unpersuasive, observing that "[one plaintiff] can still be a witness on behalf of [the other] (and vice versa) without consolidation of the two cases." Id. at 282. Ultimately, the Sidari court concluded that: "Although it is clear that the plaintiffs in each case ... would like to use each others claims to bolster their own, each lawsuit must stand on its own." Id. That same truism precludes consolidation of plaintiffs' cases for trial.

Plaintiffs' alarmist contention that, absent consolidation, "[t]here is a high risk of inconsistent adjudications of common factual and legal issues in five separate trials" (Pltf's Brief at p. 3), is entirely off base. Given the individualized nature of each plaintiff's case, there is literally no risk of inconsistent adjudications because a finding for or against any particular plaintiff does not speak at all to the validity or invalidity of any other plaintiff's claim. In other words, "[i]t cannot be said that 'as goes the claim of [one] plaintiff, so go the claims of the [others].'" Cox, 187 F.R.D. at 534 (Citation omitted).

Equally impertinent is plaintiffs' assertion that consolidation is appropriate because "[t]he same witnesses would, without exception, testify in each of the five cases." (Pltfs' Brief at p. 3). To begin with, plaintiffs' representation in this regard is not even accurate. Obviously,

8

Cosentino and Moore cannot testify on each other's behalf because they never even worked together. While the others are not similarly constrained, plaintiffs' suggestion that, absent consolidation, they would face the prospect of repeatedly parroting their testimony over and over again is entirely misguided.

Because a plaintiff "who was not herself a target of the alleged harassment, was not present when the harassment supposedly occurred, and did not even know of the harassment while it was ongoing" cannot "prove that an environment existed at work that was hostile to her because of her sex," Leibovitz v. New York City Transit Authority, 252 F.3d 179, 190 (2d Cir. 2001), a co-plaintiff's testimony as a third-party witness would necessarily be restricted to those facts that are within the scope of her own personal knowledge and pertinent to the particular case at hand. As such, the prospect of duplicative testimony only arises as to those select few incidents of alleged harassment common to more than one plaintiff.

To illustrate the point, Moore's testimony regarding the alleged touching incident in Mr. Simpson's office would not be admissible in any other plaintiff's case. So too with, *inter alia*, Buonincontra's testimony about her angry exchange with Mr. Simpson and Benton's testimony regarding her alleged battles with Mr. Simpson over commissions. Yet, were the cases consolidated, the jury would hear evidence regarding every incident of alleged harassment, no matter how isolated, individualized, or personal. This smacks of unfairness.[3]

In these "circumstances consolidation would complicate the judicial proceedings rather than promote judicial efficiency. Consolidation of these [five] cases [for trial] would likely create numerous logistical problems regarding the presentation of evidence which may be

---

[3] Nor is it true that "[t]he exhibits would be the same in each case." (Pltfs' Brief at pp. 3-4). While there are some documents common to all of the cases, such as policy statements and broadly disseminated memoranda, for the most part the key documents pertain to individual performance, counseling, discipline and the like, and are therefore plaintiff-specific.

9

admissible (or even relevant) in one case, but not the other." Sidari, 174 F.R.D. at 282. On balance, therefore, the modest time-savings a consolidated trial might produce do not outweigh the obvious disadvantages and inequities. While a single trial could be expected to conclude within a couple of weeks, plaintiffs' assertion that individualized trials would in the aggregate cover 25-30 days is ungrounded in reality. None of these cases are terribly complicated. As such, there is no reason why any single case would require more than three trial days to complete.

In the end, consolidation for trial is plainly unwarranted despite the existence of certain common issues of law and fact because "although consolidation may enhance judicial economy, considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial." Sidari, 174 F.R.D. at 281 (Citations omitted).

### III.  CONCLUSION

For the foregoing reasons, plaintiffs' motions to consolidate their suits for trial should be denied as incompatible with basic notions of equity and fair play.

Respectfully submitted,

DEFENDANTS,
PITNEY BOWES INC. and
IMAGISTICS INTERNATIONAL INC.

By: _____
Lawrence Peikes (ct07913)
lpeikes@wiggin.com

WIGGIN and DANA LLP
Their Attorneys
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of January 2005, a copy of the foregoing Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Consolidate Cases for Trial was served by first-class U.S. mail, postage prepaid, on:

>William B. Barnes, Esq.
>Rosenstein & Barnes
>1100 Kings Hwy. East
>Fairfield, CT 06432

_____
Lawrence Peikes

\15058\410\96479.1