UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------- X   MASTER CAPTION
DEBRA COSENTINO, et al.,                                :
                                                        :   CASE NO. 3:01CV2129 (AVC)
                      Plaintiff,                     :
                                                        :
v.                                                      :
                                                        :
PITNEY BOWES INC., and IMAGISTICS                       :
INTERNATIONAL INC.,                                     :   MARCH 10, 2005
                                                        :
                      Defendants.                    :
------------------------------------------------------- X

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

     Plaintiffs rest their motion for sanctions (in the form of a fee award) on the contention that defendants Pitney Bowes Inc. ("PB") and Imagistics International Inc. ("Imagistics") (collectively "defendants") failed to make a good faith effort to resolve these related employment discrimination cases during the course of a settlement conference before Magistrate Judge Smith. The full extent of plaintiffs' argument is that an absence of good faith can be inferred from defendants' unwillingness to increase the dollar amount of a previously rejected settlement offer. Defendants, however, are not obligated to settle, or even try to settle, these cases, and they ought not be sanctioned for resisting settlement of claims they sincerely believe to be devoid of merit. Plaintiffs' motion should be denied.

    **I.**    **Background**

     Plaintiffs purport to allege claims for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq. and the Connecticut Fair Employment Practices Act ("FEPA"), Conn. Gen. Stat. §§ 46a-60, et seq., as well as a common law claim for negligent supervision. The essence of plaintiffs' claim is that

the former head of the ECO Cartridge Group, Gary Simpson, was nasty to them and a difficult boss. In sweeping terms, plaintiffs allege that "Simpson lost his temper, screamed and shouted, used obscenities, hit things with his fists, pounded on tables, made sarcastic remarks and physically restrained female employees in the ECO Cartridge Group while he was their direct supervisor."

Although defendants were unsuccessful in their quest for summary judgment, they continue to be of the view that a full airing of the issues will reveal that: (i) plaintiffs did not experience anything remotely approaching the level of severity or pervasiveness required to sustain a claim for hostile work environment sexual harassment; (ii) any mistreatment plaintiffs may have endured at the hands of Mr. Simpson was rooted in his understandable frustration over their persistent lack of production and constant griping, not gender-based animus; and/or (iii) defendants made reasonable efforts to prevent and correct any harassing conduct in the workplace and plaintiffs failed to take advantage of the preventive and corrective opportunities provided them, or to avoid harm otherwise, thereby establishing an affirmative defense to plaintiffs' sexual harassment claims.

While juries are inherently unpredictable, defendants are confident that a fair application of the governing law will culminate in a favorable verdict. Because defendants believe they should, and will, ultimately prevail, and are extremely concerned about the message a pay-off to plaintiffs would send to other employees, they have always been reluctant to settle. Thus, during the course of two Court-ordered settlement conferences before PJO Murphy, and several informal discussions between counsel, defendants have made it abundantly clear they have little or no desire to resolve these cases on terms that include a meaningful monetary payment to plaintiffs. Nevertheless, plaintiffs have responded with escalating settlement demands bearing

no rational connection to even the most generous damage award they can possibly expect to recover, should they even prevail.

It was only after careful consideration that defendants decided to stand firm at the settlement conference before Magistrate Judge Smith on February 18, 2005, and not enhance their most recent settlement proposal. This could hardly have come as a shock to plaintiffs given the history of the parties' settlement discussions. Nor did defendants in any way conceal their reluctance to settle from the Court. To the contrary, defendants expressly stated in the ex parte memorandum submitted to Magistrate Judge Smith in advance of the settlement conference that they "are not ... prepared to pay anything much beyond nuisance value to resolve these spurious claims."

Defendants did not initiate these proceedings nor did defendants request a third settlement conference; they ought not be sanctioned for exercising their absolute right to litigate rather than settle.

II.    **Argument**

Undoubtedly, a court has inherent power to "assess attorney's fees and costs when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." First National Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, 118 F.3d 892, 898 (2d Cir. 1997)(Citations and internal quotation marks omitted). At the same time, however, "a court must exercise 'restraint and discretion' in imposing sanctions." Phlo Corp. v. Stevens, 2002 WL 1398652, at *1 (S.D.N.Y. Nov. 9, 2001), quoting United States v. Seltzer, 227 F.3d 36, 39 (2d Cir. 2000).

To be sure, sanctions are entirely appropriate when, for example, a party fails to appear for a settlement conference, see, e.g., Bulkmatic Transport Co., Inc. v. Pappas, 2002 WL 975625,

3

at *2 (S.D.N.Y. May 9, 2002), or needlessly and vexatiously multiples proceedings by rejecting a settlement offer that would afford complete relief, Kline v. Wolf, 702 F.2d 400, 405 (2d Cir. 1983). But, Second Circuit precedent makes plain that a litigant may not be sanctioned simply for taking a hard-line position in settlement negotiations:

> Although the law favors the voluntary settlement of civil suits, it does not sanction efforts by trial judges to effect settlements through coercion.... In short, pressure tactics to coerce settlement are simply not permissible. "The judge must not compel agreement by arbitrary use of his power and the attorney must not meekly submit to a judge's suggestion, though it be strongly urged."

Kothe v. Smith, 771 F.2d 667, 669 (2d Cir. 1985)(Citation omitted).

In Kothe, the Second Circuit ruled that a trial judge had abused his discretion in sanctioning a party for failing to settle a case prior to commencement of trial. The Court of Appeals explained that: "Rule 16 of the Fed. R. Civ. P. was not designed as a means for clubbing the parties -- or one of them -- into an involuntary compromise. Although subsection (c)(7) of Rule 16, added in the 1983 amendments of the Rule, was designed to encourage pretrial settlement discussions, it was not its purpose to 'impose settlement negotiations on unwilling litigants.'" Id. at 669 (Citations omitted). Yet, that is precisely the consequence a fee award would have here -- in effect, defendants would be compelled to pony up more money at the next settlement conference, scheduled for April 22, 2005, than they have determined these cases to be worth.

"In the absence of objective evidence of bad faith, sanctions *cannot* be justified simply because a party does not offer what the court considers a 'bonafide offer' or 'serious money.'" Guillory v. Domtar Industries Inc., 95 F.3d 1320, 1334 n.13 (5th Cir. 1996)(Emphasis added) (Citations omitted). See also Hess v. New Jersey Transit Rail Operations, Inc., 846 F.2d 114, 115-16 (2d Cir. 1988)(suggesting it would be inappropriate to sanction defendant for failing to

4

make what the court considered a "bonafide offer."). There is no evidence defendants acted in bad faith by, for instance, asking the Court to schedule another settlement conference or leading plaintiffs to believe they intended to increase the offer last put on the table. To the contrary, as alluded to above, defendants have always resisted settlement and never once suggested to plaintiffs or the Court that they were prepared to allocate any significant dollars towards an informal resolution of plaintiffs' claims.

Right or wrong, defendants are free to cap their settlement offer at an amount they, in their absolute and unfettered discretion, believe appropriate. They cannot be compelled by sanctions, or other means, to put anything more on the table. Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1482 (2d Cir. 1988)("District courts may not use the threat of sanctions to bring about a particular settlement of a case.")(Citation omitted). And, nothing in Nick v. Morgan's Foods, Inc., 99 F. Supp. 2d 1056 (E.D. Mo. 2000), aff'd, 270 F.3d 590 (8th Cir. 2001), cited by the Court in the Order scheduling the settlement conference, suggests otherwise.

The defendant in Nick appeared for a settlement conference through a "corporate representative who ... did not have any independent knowledge of the case, nor did she have authority to reconsider Morgan's Foods' position regarding settlement. The limit of Morgan's Foods' regional manager's authority was $500.00. Negotiation of any settlement amount above $500 had to be handled by Morgan's Foods' general counsel, who was not present at the ADR conference." Id. at 1058. On these facts, the district court concluded that "Morgan's Foods did not participate in good faith in the ADR process." Id. at 1063.

Here, by sharp contrast, defendants' corporate representative, Dawn Stevens, Imagistics' Director of Human Resources, is intimately familiar with plaintiffs' cases and was authorized to settle in an amount 100 times greater than the limit imposed on the Morgan's Foods

5

representative. Furthermore, as Ms. Stevens pointed out at the conference, Imagistics' General Counsel and its Chief Human Resources Officer were active participants in the process of devising defendants' settlement position. Unfortunately, both of these officers were unavailable to attend the conference because a Board of Directors meeting was scheduled for the same day. Nevertheless, they were intimately involved in formulating defendants' settlement strategy and authorized Ms. Stevens to settle these cases for an amount deemed reasonable given the facts, the anticipated cost of further litigation, and other pertinent factors. This is a far cry from the situation in Nick where the defendant plainly had no intention of dedicating any meaningful time or resources to the settlement process.

As this Court recently observed: "Whenever a representative with authority to settle attends a settlement conference, one would assume that the represented party has established certain parameters within which its representative may settle on its behalf." Omega Engineering, Inc. v. Omega, SA, 2004 WL 2191588, at *2 n.3 (D. Conn. Aug. 12, 2004). Defendants did precisely as the Court would have expected and gave their corporate representative a finite amount of authority to settle. That this figure is well below what would appear necessary to achieve a settlement is no basis for imposing sanctions.[1]

---

[1] Plaintiffs have asked that the Court shift to defendants the cost of having three attorneys attend the settlement conference, one of whom had first entered an appearance that very day and another who, by her own admission, is unfamiliar with federal court practice. Defendants, by contrast, were represented by a single attorney who has been handling the cases from the outset. In the event the Court deems an award of attorneys' fees to be warranted, that sanction should necessarily be limited to the reasonable amount billed by one lawyer. King v. Greenblatt, 560 F.2d 1024, 1027 (1st Cir. 1977)("The time of two or three lawyers in a courtroom, or conference, when one would do, may obviously be discounted.")(Citation omitted). Accord ADO Finance, AG v. McDonnell Douglas Corp., 938 F. Supp. 590, 598 (C.D. Cal. 1996); Kassover v. Computer Depot, Inc., 691 F. Supp. 1205, 1215 (D. Minn. 1987), aff'd mem., 902 F.2d 1571 (8th Cir. 1990); Ricci v. Key Bancshares of Maine, Inc., 111 F.R.D. 369, 378-79 (D. Maine 1986).

### III. Conclusion

Defendants have clearly done nothing to warrant an award of sanctions. Plaintiffs' motion for attorneys' fees should therefore be denied.

Respectfully submitted,

DEFENDANTS,
PITNEY BOWES INC. and
IMAGISTICS INTERNATIONAL INC.

_____
Lawrence Peikes (ct 07913)
lpeikes@wiggin.com
Wiggin and Dana LLP
Their Attorneys
400 Atlantic Street
P.O. Box 110325
Stamford, CT  06911-0325
(203) 363-7600
(203) 363-7676 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees was served on this 10th day of March, 2005, by first-class U.S. mail, postage pre-paid, on:

>William B. Barnes, Esq.
>Rosenstein & Barnes
>1100 Kings Hwy. East
>Fairfield, CT  06432

_____
Lawrence Peikes