UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

                                                2005 APR 22  P 3: 03

DEBRA COSENTINO, et al.,
              -Plaintiffs


         -v-                          CIVIL 3:01 CV 2129 (AVC((TPS)


PITNEY BOWES, INC., et al.,
              -Defendants


### RULING ON MOTIONS FOR ATTORNEYS' FEES

Defendants' memorandum in opposition to plaintiffs' motion for attorneys' fees (Dkt. #94) is disingenuous.[1] It argues at length that the defendants cannot be forced to settle a case. But this truism is not the issue in the skirmish now before the court.

---

[1] The memorandum accuses the undersigned of attempting to extort settlement money from the defendants. This is blatantly false. The undersigned has always acknowledged that "[t]he court cannot force a party to settle a case," and that "[w]hether a party actually settles a case is up to that party." (Dkt. #92 at 3, ¶2). The defendants were not chastised for failing to pay money. As defendants were told on February 18, 2005, the undersigned could care less whether they settle. Instead, they were taken to task by the court for failing to send to the settlement conference a representative who had authority to settle the case, in contravention of the letter and spirit of Nick v. Morgan's Foods, Inc., 99 F.Supp.2d 1056 (E.D. Mo. 2000), a case which was cited to the parties in the order scheduling the settlement conference that defendants effectively sabotaged. (See Dkt. #87).

Rather, the issue is whether a party that does not want to settle a case can sabotage a settlement conference by dispatching to the conference a representative who lacks any authority to change that party's position, and who must contact an absent decision-maker by phone before she can even negotiate on behalf of the party she is supposed to represent. Here, no matter how persuasive the arguments, or how significant the concessions the plaintiffs might have been persuaded to make at the February 18, 2005 conference, negotiations were stopped dead in their tracks when it was revealed that defendants' representative lacked the power, the authority, and the discretion to alter the defendants' position because her hands had been tied by absent decision-makers who chose to be in Phoenix, at an event they considered more important than the court-ordered settlement conference.[2]

Defendants' contempt for the plaintiffs and their attorneys is palpable. They resent that they have been forced to defend claims they regard as totally frivolous, even though Judge Covello flatly

---

[2] Defendants' decision-makers, General Counsel Mark Flynn and Tina Allen, had over one month's notice of the conference. They could have asked for a postponement of the conference to permit them to be in Phoenix on February 18th, but they chose instead to effectively boycott the conference and send a messenger, perhaps intending to teach Judge Covello and the undersigned a lesson. And the messenger defendants sent was, of all people, Dawn Stevens, the supervisor to whom the plaintiffs allegedly repeatedly complained, without much avail, about Gary Simpson's behavior.

rejected their motion for summary judgment finding:

> The record reflects, among other things, an employment environment rich in foul language and intimidation where a male supervisor: (1) treats female subordinates differently [than their male] counterpart[s]; (2) screams and pounds his fists during meetings; (3) physically restrains a female subordinate; (4) speaks of divided loyalty as "straddling a fence" with the admonition that such activity will cause soreness requiring a hot bath; and (5) utters other remarks to the effect that women are a cancer, are incapable of doing anything right, and make him sick.

They also obviously resented that they have been ordered to attend a settlement conference before the undersigned.[3] Unfortunately, defendants have allowed their distain for their adversaries, the process, and the court to cloud their judgment.

Because they believe the plaintiffs' claims are unmeritorious, they are miffed that they have had to participate in the process that Judge Covello ordered. They did not feel obliged to dispatch to the conference a representative who truly had authority to settle the case, but felt they could circumvent the requirement by the subterfuge of sending someone unempowered to engage in the give-and-take of settlement talks. So the defendants sent a representative who could not have settled the case even if she had

---

[3] Defendants admit as much in their memorandum in opposition to plaintiffs' motion for sanctions where they state, "Defendants did not initiate these proceedings nor did defendants request a third settlement conference. . . ." (Dkt.#94 at 3, ¶2).

wanted to.  This is not good faith, and the defendants knew it. They knew it from reading <u>Nick v. Morgan's Foods, Inc.</u>, 99 F.Supp.2d 1056 (E.D. Mo. 2000), which the undersigned cited to them in the order scheduling the February 18, 2005 conference.

There, U.S. District Judge Sipple perceptively wrote in part:

> At the risk of restating the obvious, the Court will review why attendance of a corporate representative with settlement authority is so important.
>
> *During the ADR conference, all parties have the opportunity to argue their respective positions.  In the Court's experience, this is often the first time that parties, especially corporate representatives, hear about the difficulties they will face at trial. As a practical matter this may also be the first time that firmly held positions may be open to change.  For ADR to work, the corporate representative must have the authority and discretion to change her opinion in light of the statements and arguments made by the neutral and opposing party.*
>
> *Meaningful negotiations cannot occur if the only person with authority to actually change their mind and negotiate is not present. Availability by telephone is insufficient because the absent decision-maker does not have the full benefit of the ADR proceedings, the opposing party's arguments, and the neutral's input. The absent decision-maker needs to be present and hear first hand the good facts and the bad facts about their case.*
>
> *Instead, the absent decision-maker learns only what his or her attorney chooses to relate over the phone.  This can be expected to be largely a recitation of what has been conveyed in previous discussions.   Even when*

> the attorney attempts to summarize the strengths of the other side's position, there are problems. First, the attorney has a credibility problem: the absent decision-maker wants to know why the attorney's confident opinion expressed earlier has now eroded. Second, the new information most likely is too much to absorb and analyze in a matter of minutes. It is quite likely that the telephone call is *Under this dynamic it becomes all too easy for the absent decision-maker to reject the attorney's new advice, reject the new information, and reject any effort to engage in meaningful negotiations viewed as a distraction from other business being conducted by the absent decision-maker. In that case the absent decision-maker will be preoccupied with some other matter demanding her attention at the time she is asked to evaluate new information in a telephone call. Confronted with distractions and inadequate time to evaluate the new information meaningfully, the absent decision-maker's easiest decision is to summarily reject any offer and get back to the business on her desk. Even a conscientious decision-maker cannot absorb the full impact of the ADR conference when they are not present for the discussion. The absent decision-maker cannot participate in good faith in the ADR conference without being present for the conference.*

Id. at 1062-63 (emphasis added).

General Counsel Flynn and Ms. Allen disserved the company for which they work by not attending the February 18, 2005 conference and sending in their stead an individual whose instructions forbade her to negotiate, to change her mind, to be persuaded, or to execise discretion. She had no discretion. She was a warm body

with a cell phone and instructions to call Phoneix. Flynn and Allen are not free to so squander public resources. Before Judge Covello conducts a lengthy jury trial, with its attendant drain on scarce public resources, he is entitled by virtue of his office to require the parties' good faith participation in a settlement conference before a U.S. Magistrate Judge. The defendants subverted Judge Covello's, and the undersigned's, efforts in this regard. While Ms. Allen may not have known any better, General Counsel Flynn certainly should have. By their actions, the defendants wasted the court's time and that of plaintiffs' counsel. Accordingly, they will pay reasonable counsel fees.

The plaintiffs' lawyers, of course, attempt to take advantage of the situation by seeking fees for not one, but *three* lawyers who attended the February 18, 2005 conference. This is excessive for exactly the reasons stated in defendants' memorandum.[4] The undersigned can discern no reason why defendants presently should be forced to pay the fees of three lawyers. In the event the plaintiffs prevail on the merits at trial, they may seek to be compensated for the time spent by the other two attorneys attending the aborted conference.

The court finds that attorney's fees in the amount of $1,050

---

[4] The court must agree with the defendants in this very limited regard. (See Dkt. #94 at 6 n.1).

should be, and it hereby is, awarded to Attorney William Barnes. The undersigned is familiar with the prevailing rates of attorney's fees in this district. The court finds that William Barnes's $350 hourly rate is wholly reasonable given his long experience at the bar. The court further finds from his submission that Attorney Barnes spent 1 hour preparing for the conference and 1 hour attending the conference. He also spent 2 hours travelling to and from the conference. Travel time is normally compensated at 50% of a lawyer's normal hourly rate. Petronella v. Acas, Civ. 3:02 CV 1047, 2004 WL 1688525 (D.Conn. Jan. 23, 2004), citing Wilder v. Bernstein, 975 F.Supp. 276, 283-84 (S.D.N.Y. 1997); Rose v. Heintz, 671 F.Supp. 901, 905 (D. Conn. 1987). Attorney Barnes is therefore awarded $1,050. This amount shall be paid to Mr. Barnes forthwith.

Dated at Hartford, Connecticut, this 22nd day of April, 2005.

_____
Thomas P. Smith
United States Magistrate Judge