UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| DEBRA COSENTINO, et al., | X : | MASTER CAPTION |
|  | : | CASE NO. 301CV2129 (AVC) |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| PITNEY BOWES INC., and IMAGISTICS INTERNATIONAL INC., | : : | JUNE 20, 2005 |
|  | : |  |
| Defendants. | : |  |
|  | X |  |

## STIPULATION OF UNCONTROVERTED LAW AND FACTS

Pursuant to the Pre-Trial Order entered by the Court on March 29, 2004, the parties to the above-captioned matter submit the following Stipulation of Uncontroverted Law and Facts:

**I.    Stipulations of Law**

The parties stipulate and agree that the following legal principles apply to the claims and defenses alleged in this action:

**A.    Sexual Harassment/Hostile Work Environment Claims**

1.    The same standards and elements of proof apply to plaintiffs' federal claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and their state claims under the Connecticut Fair Employment Practices Act ("FEPA"), Conn. Gen. Stat. §§ 46a-60, et seq. Craine v. Trinity College, 259 Conn. 625, 637 n.6, 791 A.2d 518 (2002); Thames Talent, Ltd. v. Commission on Human Rights and Opportunities, 265 Conn. 127, 139, 827 A.2d 659, 667 (2003).

2.    To prevail on their claims of sexual harassment, plaintiffs must prove: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or

pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003). See also Antonopoulos v. Zitnay, 360 F. Supp. 2d 420, 426 (D. Conn. 2005).

3. "In a hostile work environment case, which involves 'offensive conduct in general,' the alterations in the terms and conditions of employment are constructive rather than explicit; therefore, the conduct must be severe or pervasive to be actionable." Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 91 (2d Cir. 2002).

4. "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.' ... In short, a plaintiff alleging a hostile work environment 'must demonstrate either a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of her working environment.'" Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). "This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. See also Dawson v. Bumble & Bumble, 398 F.3d 211, 223 (2d Cir. 2005).

5. The perspective from which the evidence must be assessed is that of a reasonable person in the plaintiff's position, considering all the circumstances including the social context in which particular behavior is alleged to have occurred and is allegedly experienced by its target. Petrosino v. Bell Atlantic, 385 F.3d 210, 221-222 (2d Cir. 2004).

6. "Whether a reasonable person would find a given work environment to be hostile depends on the totality of the circumstances: '[c]onsiderations include: (1) the frequency of the

2

conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance.'" Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004). See also Jackson v. Health Resources of Rockville, Inc., 357 F. Supp. 2d 507, 519 (D. Conn. 2005); Presley v. Pepperidge Farm, Inc., 356 F. Supp. 2d 109, 120 (D. Conn. 2005)(Covello, J.).

7. No single factor is required. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). The factors must be considered cumulatively so that the court may obtain a realistic view of the work environment. Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001). The focus of the inquiry is the nature of the environment itself. Id. A plaintiff can establish a hostile work environment by showing "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000). See also Miller v. Edward Jones & Co, 355 F. Supp. 2d 629, 636-637 (D. Conn. 2005).

8. Hostility and pervasiveness should not be determined purely on the number of incidents. Raniola, 243 F.3d at 617. There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment. Alfano, 294 F.3d at 379. The question is not the number of incidents, but whether the harassment pervaded and colored the environment; permeated the atmosphere and set the tone. Hayut v. State University of New York, 352 F.3d 733, 746 (2d Cir. 2003).

9. While the standard for establishing a hostile work environment is high, the Second Circuit has cautioned against setting the bar too high, noting that "while a mild, isolated

3

incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000), quoting Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997). The environment need not be "unendurable" or "intolerable." Id. Nor must the victim's "psychological well-being" be damaged. Fitzgerald v. Henderson, 251 F.3d 345, 358 (2d Cir. 2001). Proof of physical harm is not required in order to sustain a hostile work environment claim. See Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 440 (2d Cir. 1999); Dunbar v. County of Saratoga, 358 F. Supp. 2d 115, 124 (N.D.N.Y. 2005). In short, "'the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.'" Whidbee, 223 F.3d at 70 quoting Torres, 116 F.3d at 631. Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003).

10. "[I]n order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." Alfano, 294 F.3d at 374. See also Anderson v. England, 359 F. Supp. 2d 213, 217 (D. Conn. 2005). However, harassing conduct need not be motivated by a sexual desire to support an inference of discrimination on the basis of sex. A plaintiff's ability to make out a claim for sex-based harassment is dependent on whether there is evidence from which a reasonable trier of fact could conclude that the hostile work environment was created because of the plaintiff's gender. Miller v. Edward Jones & Co., 355 F. Supp. 2d 629, 638 (D. Conn. 2005).

11. An employer is vicariously liable for a sexually hostile work environment "when a 'supervisor with immediate (or successively higher) authority over the employee' has engaged

in the complained of conduct ...," Mack, 326 F.3d at 123, and "behavior illegal under Title VII culminates in a supervisor's tangible employment action ..." Id. at 124.

12. "[I]n the absence of a tangible employment action, [defendants are] entitled to an affirmative defense '(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or avoid harm otherwise.'" Mack, 326 F.3d at 127-28. See also Luppachino v. ADP, Inc., 2005 WL 293508, at *5 (D. Conn. Jan. 21, 2005).

13. "A tangible employment action, as defined by the Supreme Court, 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Mormol, 364 F.3d at 57. "Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment action requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records and may be subject to review by higher level supervisors. A tangible employment action in most cases inflicts direct economic harm, but there is no requirement that it must always do so. For these reasons, a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." Presley, 356 F. Supp. 2d at 124.

B. **Retaliation**

14. Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

The "'objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.'" Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 291-292 (2d Cir. 1998), quoting Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988).

15. To establish a prima facie case of retaliation in violation of Title VII, the plaintiff must show that she "engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Sumner v. United States Postal Service, 899 F.2d 203, 208-09 (2d Cir. 1990). See also Fitzgerald v. Henderson, 251 F.3d 345, 358 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d at 768; Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir. 1998); Tomka v. Seiler Corp., 66 F.3d 1295, 1307 (2d Cir. 1995).

16. "Naturally, the employee has the burden to prove that his or her employer engaged in such conduct. Once the plaintiff's burden has been met, 'the burden shifts to the defendant, which is required to offer a legitimate, non-discriminatory rationale for its actions.'" Sanders v. New York City Human Resources Administration, 361 F.3d 749, 755 (2d Cir. 2004). "If the defendant meets this burden, the plaintiff must demonstrate that the defendant's explanations are a mere pretext for impermissible retaliation." Barlow v. Connecticut, 319 F. Supp. 2d 250, 261 (D. Conn. 2004).

### C. Negligent Supervision

1. "Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." Stokes v. Lyddy, 75 Conn. App. 252, 257, 815 A.2d 263, 266 (2003).

2. "[T]he test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Baptiste v. Better Val-U Supermarket, Inc., 262 Conn. 135, 139, 811 A.2d 687, 691 (2002). See also Higgins v. Metro-North Railroad Co., 318 F.3d 422, 427 (2d Cir. 2003).

3. "To prove a claim of negligent supervision under Connecticut law, 'a plaintiff must plead and prove that he suffered an injury due to the defendant's failure to supervise an employee whom the defendant had a duty to supervise. A defendant does not owe a duty of care to protect a plaintiff from another employee's tortuous acts unless the defendant knew or reasonably should have known of the employee's propensity to engage in that type of tortuous conduct.'" Burford v. McDonald's Corp., 321 F. Supp. 2d 358, 366 (D. Conn. 2004), quoting Abate v. Circuit-Wise, Inc., 130 F. Supp. 2d 341, 344 (D. Conn. 2001).

## II. STIPULATION OF FACTS

The parties stipulate and agree that the following facts are true:

1. Plaintiffs are former colleagues in the ECO Cartridge Group of defendant Pitney Bowes' office systems division ("PBOS").

2. The ECO Cartridge Group was responsible for selling reconditioned facsimile machine toner cartridges to PBOS' customers.

3. Plaintiffs Cosentino, Benton, Buonincontra and Cifatte were all employed in the ECO Cartridge Group as telemarketers; plaintiff Moore was hired in February 2001 as a supervisor.

4. From its inception, and through the end of September 2001, the ECO Cartridge Group was managed by Gary Simpson, at the time PBOS' Director, After-Market Sales.

5. Plaintiffs received a base salary and were eligible for a monthly production-based bonus, or commission. Under the operative compensation structure, plaintiffs were required to generate a minimum of twenty (20) orders from new ECO Cartridge Group customers to earn a monthly commission. If between twenty (20) and twenty-five (25) orders were received in a given month, the employee received a commission payment of $667.00. Monthly orders in excess of twenty-five (25) triggered higher commission payments: $750.00 for orders totaling between twenty-five (25) and thirty (30) in a month; $833.00 for monthly orders of between thirty (30) and thirty-five (35); $917.00 for orders between thirty-five (35) and forty (40); $1,000.00 for orders between forty (40) and fifty (50); and $1,250.00 for orders in excess of fifty (50).

6. In December 2000, plaintiff Cosentino tendered her resignation.

7. In October 2001, plaintiff Benton took an early retirement.

8. In March 2001, plaintiff Buonincontra resigned from her position in the ECO Cartridge Group and accepted a job as a Collection Specialist with Pitney Bowes Credit Corporation.

9. In September 2001, Brenda West replaced Mr. Simpson as head of the ECO Cartridge Group.

10. In December 2001, the ECO Cartridge Group's functions were transferred to a business unit in Denver and the positions held by the remaining employees in the ECO Cartridge Group, including plaintiffs Cifatte and Moore, were eliminated. Plaintiffs Moore and Cifatte were laid off and received severance benefits.

11. Plaintiffs have exhausted available administrative remedies and hence have satisfied the statutory prerequisites to suit under Title VII and the FEPA.

| PLAINTIFFS,<br>DEBRA COSENTINO, ET AL. | DEFENDANTS,<br>PITNEY BOWES INC. and IMAGISTICS INTERNATIONAL INC. |
|---|---|
| By: /s/ Barnes<br>William B. Barnes, Esq. (ct 00268)<br>Rosenstein & Barnes<br>Their Attorneys<br>1100 Kings Hwy. East<br>Fairfield, CT 06432<br>(203) 367-7922<br>(203) 367-8110 (fax) | By: /s/ Peikes<br>Lawrence Peikes (ct 07913)<br>Wiggin and Dana LLP<br>Their Attorneys<br>400 Atlantic Street<br>P.O. Box 110325<br>Stamford, CT 06911-0325<br>(203) 363-7600<br>(203) 363-7676 (fax) |

\15058\410\87669.2