UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBRA COSENTINO, ET AL, | : | 301CV2129 (AVC) |
| Plaintiffs, | : | |
| v. | : | |
| PITNEY BOWES, INC. and | : | CONSOLIDATED CASES |
| IMAGISTICS INTERNATIONAL, INC., | : | |
| Defendants. | : | |
| | : | June 17, 2005 |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

The following proposed jury instructions are divided into two groups.  The first group is proposed charges bearing upon Plaintiffs' Title VII claims.  The second group is charges bearing upon Plaintiffs' claims under the Connecticut Fair Employment Practices Act and Connecticut common law.

The instructions are numbered purely for ease of reference. The numbers do not indicate the order in which the instructions should be given or the importance Plaintiffs place on each instruction.

## CHARGES BEARING UPON TITLE VII CLAIMS

1.  PECUNIARY AND COMPENSATORY DAMAGES FOR
    HOSTILE ENVIRONMENT SEXUAL HARASSMENT

If you find that Defendants sexually harassed Plaintiffs through a hostile or offensive working environment in violation of law, it will be your duty to determine whether that harassment directly and proximately caused any harm to the Plaintiffs. If you find that harm was caused, it will be your duty to determine the damages that should be paid to the Plaintiffs by the Defendants to fairly and reasonably compensate the Plaintiffs for that harm.

Damages in sexual harassment cases based on a hostile working environment are of two kinds: pecuniary damages, that is, money awarded to compensate the Plaintiffs for purely financial harm; and nonpecuniary damages, namely money awarded to compensate the Plaintiffs for any harm that is not financial.

Financial harm is made up of such items as lost wages. Harm that is not financial is made up of emotional pain, suffering, mental anguish, inability to sleep, nightmares, loss of enjoyment of life and other nonfinancial items.

2

I will now tell you how to award damages for nonpecuniary losses such as emotional pain, suffering, mental anguish, inability to sleep, nightmares, and loss of enjoyment of life.

Damages for emotional pain, suffering, mental anguish, inability to sleep, nightmares, and loss of enjoyment of life should be awarded in an amount that fairly compensates the victims for their injuries. When awarding such damages, you should consider the duration of the injuries and their severity. You should also consider the consequences for the victims of having experienced those injuries - the long term effects on their lives - and the physical manifestations, if any, of the mental anguish inflicted by the Defendants.

The Plaintiffs do not need to have sought or obtained medical or psychiatric treatment to recover damages for emotional harm.

42 U.S.C. §1981A; <u>Johnson v. Hale</u>, 13 F.3d 1351 (9th Cir. 1994).

2.    <u>DUTY TO REPORT</u>

Ladies and gentlemen of the jury, Defendants say that they cannot be responsible for incidents of sexual harassment that were not reported to them.

If you find that harassment was known to an employee or employees of Defendants who had a duty to report those incidents to higher level management, either as a matter of explicit written policy, or as a matter of strong unwritten policy and practice, then you can find that the Defendants did know, for notice to such employees was notice to the Defendants.

<u>Distasio v. Perkin Elmer Corp.</u>, 157 F.3d 55 (2d Cir. 1998).

3.    EMPLOYER STRICTLY LIABLE FOR
      SEXUAL HARASSMENT THROUGH
      HOSTILE OR OFFENSIVE WORKING
      <u>ENVIRONMENT CREATED BY SUPERVISOR</u>

When the harasser is a supervisor, the employer is presumed

to be absolutely liable.

<u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S. Ct.

2275, 141 L. Ed. 2d 662 (1998); <u>Distasio v. Perkin-Elmer Corp.</u>,

157 F.3d 55 (2d Cir. 1998); <u>Kotcher v. Rosa and Sullivan</u>

<u>Appliance Ctr., Inc.</u>, 957 F.2d 59 (2d Cir. 1992).

4.    FACT THAT SOME DECISIONMAKERS
      <u>FEMALE NOT RELEVANT</u>

Defendants have suggested that you cannot find sex discrimination because the Human Resources employees who investigated Plaintiffs' complaints were female.  I instruct you to disregard this argument.  There could be many reasons why female human resources personnel acted as these two individuals acted.  There is no conclusive presumption that the members of one sex will never discriminate against members of their own sex. The sex of the human resources employees is just one fact of many for you to consider.

<u>Oncale v. Sundowner Offshore Servs.</u>, 523 U.S. 75, 78 (1998); <u>Feingold v. New York</u>, 366 F.3d 138, 155 (2d Cir. 2004).

5.    FAILURE TO REPORT NOT FATAL
      <u>TO HARASSMENT CLAIM</u>

Defendants say that they did not know about the incidents of sexual harassment through creation of a hostile or offensive working environment alleged by Plaintiffs because Plaintiffs did not report them.

There are many reasons why a Plaintiff might not report incidents of harassment - at all, or as required by the employer's policy.  Failure to report is not always fatal to a harassment claim.  Only failure to report that prevented the defendants from taking prompt and effective corrective action bars a harassment claim.

Failure to report is not a defense if there was no reasonable avenue of complaint.

The victim is also excused from reporting if a policy or procedure exists, but is inadequate.

A victim need not report, in the manner required by a policy, if the victim was never told of the policy, or given a copy, until after the harassment took place.

An employee need not report harassment if she has good reason to believe that reporting would be a useless act.  It may not be reasonable to require a victim to report harassment to a

person who has failed to act or who is friends with the harasser.
You may consider in this regard what steps, if any, the employer
took to investigate prior complaints of sexual harassment.  It
may not be reasonable to require an employee to report incidents
of sexual harassment if her employer has failed to respond to
earlier complaints about the same harasser.

An employee need not report harassment if she has, not just
a generalized fear, but good reason to believe, that she will be
fired, or suffer some other serious harm on the job, if she
reports it.

An employee need not follow the employer's written procedure
for making harassment complaints if under the circumstances there
was good reason not to do so.  One good reasons would be a
request from management to take complaints to someone other than
the person in the written policy.

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S. Ct.
2399, 91 L. Ed. 2d 49 (1986); Leopold v. Baccarat, Inc., 239 F.3d
243 (2d Cir. 2001); Caridad v. Metro-North Commuter R.R., 191
F.3d 283 (2d Cir. 1999); Distasio v. Perkin Elmer Corp., 157 F.3d
55 (2d Cir. 1998); Perry v. Ethan Allen, Inc., 115 F.3d 143 (2d
Cir. 1997); Karibian v. Columbia University, 14 F.3d 773 (2d

Cir.), cert. denied, 512 U.S. 1213, 114 S. Ct. 2693, 129 L. Ed. 2d 824 (1994); Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59 (2d. Cir. 1992); Morf v. Turner Bellows, Inc., 98-CV-6242, 2001 U.S. Dist. LEXIS 2655 (W.D.N.Y. 20001); Eisenhauer v. Great Lakes Plastics, 99-CV-0129E(F), 2001 U.S. Dist. LEXIS 2149 (W.D.N.Y. Feb. 23, 2001).

6.   THE FARAGHER-ELLERTH
     AFFIRMATIVE DEFENSE

It is not enough for you to find that there was sexual harassment.  You must also consider Defendants' claim that they exercised reasonable care to prevent and promptly correct any harassment by Gary Simpson and that Plaintiffs unreasonably failed to take advantage of any corrective or preventative opportunities provided by Defendants, or to avoid harm otherwise. If you find that Defendants exercised reasonable care to prevent and promptly correct sexual harassment by Mr. Simpson, and also that Plaintiffs unreasonably failed to take advantage of corrective or preventative opportunities provided by Defendants, or to avoid harm otherwise, then you will find Defendants not responsible for Mr. Simpson's acts.

Please note that since this is a defense alleged by Defendants, the burden of proof is upon the Defendants to prove each element of the defense by a preponderance of the evidence. The burden is not on the Plaintiffs to disprove the defense.  It is upon the Defendants to prove it.  If you find that Defendants have failed to establish any element of the defense, or that the evidence on the defense is evenly balanced, then you will find that the defense has not been established.

10

<u>Burlinton Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759 (2d Cir. 1998).

7. **EXPLICITLY SEXUAL CONDUCT NOT NECESSARY TO HOSTILE OR OFFENSIVE WORKING ENVIRONMENT**

You may have seen television shows, or read newspaper or magazine stories, which suggested that sexual harassment is all about desire to have sex; that is, about sexuality. Please put this idea aside for the purpose of this case. You need not find that Gary Simpson wanted to have sex with any of the Plaintiffs to find that sexual harassment has taken place. A supervisor may use sexual harassment to subordinate women, to remind them of their low status in the workplace, and to demean them.

In a hostile work environment case, the harassing conduct need not be motivated by sexual desire to support an inference of sex discrimination. It is enough that the hostility is based on the victim's sex, female.

There are times when the conduct that establishes a hostile or offensive environment is explicitly sexual. There are other times, however, when the conduct which establishes a hostile or offensive environment is hostile but not explicitly sexual. This could happen, for example, when women are verbally attacked, harassed and subjected to workplace sabotage, threatened with force, or abused in other ways, and you can, from all the evidence, connect this mistreatment to the sex of the victims.

12

Incidents motivated by sexual desire, by sexual hostility, by gender-based hostility and facially neutral hostility may and should be aggregated so long as, when taken as a whole, they show that the Plaintiff's were subjected to disadvantageous terms and conditions of employment to which male employees were not exposed.

You can connect mistreatment to the sex of the victims if the harasser used words and expressions which show such a connection. You may also connect mistreatment to the sex of the victims when female employees are mistreated and male employees are not.

Simply being treated differently from male employees may, when combined with other circumstances, establish a work environment which is hostile to female employees. This is so even if the different treatment is less favorable but not explicitly hostile. A female employee who consistently gets verbal abuse could be the victim of a hostile work environment even if the harasser never did anything which showed sexual desire. You should consider whether the workplace atmosphere, taken as a whole, undermined plaintiffs' ability to perform their jobs.

13

<u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); <u>Dawson v. County of Westchester</u>, 373 F.3d 265 (2d Cir. 2004); <u>Raniola v. Bratton</u>, 243 F.3d 610 (2d Cir. 2001); <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234 (4th Cir. 2000); <u>Smith v. Sheahan</u>, 189 F.3d 529 (7th Cir. 1999); <u>Williams v. General Motors Corp.</u>, 187 F.3d 553 (6th Cir. 1999); <u>Durham Life Ins. Co. v. Evans</u>, 166 F.3d 139 (3d Cir. 1999); <u>Lipsett v. University of Puerto Rico</u>, 864 F.2d 881 (1st Cir. 1988); <u>Hall v. Gus Constr. Co.</u>, 842 F.2d 1010, 1013-14 (8th Cir. 1988); <u>McKinney v. Dole</u>, 765 F.2d 1129, 1139 (D.C. Cir. 1985), <u>rev'd in part on other grounds sub nom.</u> <u>Stevens v. Dept. of Treasury</u>, 500 U.S. 1, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991); <u>Miller v. Edward Jones & Co.</u>, 355 F. Supp. 2d 629 (D. Conn. 2005).

8.   SEXUAL HARASSMENT THROUGH
     HOSTILE WORKING ENVIRONMENT

Plaintiffs here allege sex discrimination in the form of sexual harassment.  The sexual harassment, Plaintiffs say, was accomplished by a hostile and offensive working environment.

To decide this claim, ladies and gentlemen of the jury, you must analyze the workplace environment as a whole to determine if incidents of hostile or offensive behavior made it abusive towards the Plaintiffs.

A work environment is abusive when the harassment has reached the level that it alters the conditions of the victim's employment for the worse.

Consider the totality of the circumstances in deciding whether the environment was hostile or offensive.  Consider the social context in which particular behavior occurs and is experienced by its target.

You must assess the nature of the workplace environment as a whole, not bits and pieces of it.  Consider whether the incidents permeated the workplace atmosphere and set the tone.  Consider the number of incidents, how frequently they occurred, and how severe they were.  Look at whether the incidents were physically threatening or humiliating, or just offensive words.  Consider

15

whether the conduct unreasonably interfered with the Plaintiffs' work performance.  You may find a hostile or offensive environment from all of the incidents, taken together, even if no single incident would, taken by itself, create such an environment.  Consider the cumulative impact of the incidents upon the Plaintiffs.

The total number of offensive incidents is not determinative.  The offensiveness of the incidents must also be considered.  Even a single incident can create a hostile work environment if it transforms the Plaintiffs' workplace.  If the incidents are very offensive, fewer will be required to create a hostile or offensive environment.  There is no magic number of incidents.

You can judge whether the environment was hostile or offensive by looking at incidents that involved employees other than the Plaintiffs.  All of the hostile or offensive incidents need not have involved each Plaintiff.  The work environment for the Plaintiffs could have been adversely affected if they learned of hostile or offensive conduct second-hand.

16

The same behavior may affect both men and women. You should consider it from the perspective of a reasonable person standing in the victim's shoes. Consider how the incidents of harassment would have been felt and understood by such a person. Since the Plaintiffs here are women, you may consider the evidence from the perspective of a reasonable woman.

Incidents of harassment are sufficiently severe to alter the conditions of the Plaintiffs' employment if they made those conditions worse. You do not need to find that harassment made it impossible for the Plaintiffs to work or that it drove them to quit. The harassment does not need to have been unendurable or intolerable to have adversely affected the conditions of the Plaintiffs' employment.

Harris v. Forklift, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); Petrosino v. Bell Atl., 385 F.3d 210 (2d Cir. 2004); Dawson v. County of Westchester, 373 F.3d 265 (2d Cir. 2004); Feingold v. State of New York, 366 F.3d 138 (2d Cir. 2004); Raniola v. Bratton, 243 F.3d 610 (2d Cir. 2001); Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62

17

(2d Cir. 2000); <u>Howley v. Town of Stratford</u>, 217 F.3d 141 (2d Cir. 2000); <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560 (2d Cir. 2000); <u>Brennan v. Metropolitan Opera Ass'n, Inc.</u>, 192 F.3d 310, 321 (1999) (Newman, J., concurring in part and dissenting in part); <u>Williams v. General Motors Corp.</u>, 187 F.3d 553 (6th Cir. 1999); <u>Richardson v. New York State Department of Correctional Services</u>, 180 F.3d 426 (2d Cir. 1999); <u>Schwapp v. Town of Avon</u>, 118 F.3d 106 (2d Cir. 1997); <u>Torres v. Pisano</u>, 116 F.3d 625 (2d Cir.), <u>cert. denied</u>, 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997); <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143 (2d Cir. 1997); <u>Carrero v. New York City Housing Authority</u>, 890 F.2d 569 (2d Cir. 1989).

9.    NOTICE GIVEN BY REPORT OF
      <u>SEXUAL HARASSMENT OF OTHERS</u>

Ladies and gentlemen of the jury, Defendants say that they

cannot be responsible for incidents of sexual harassment of a

particular Plaintiff if that Plaintiff failed to report those

incidents.  The Defendants sat that notice that their employee

sexually harassed others is not sufficient; they must have had

reports from each one of the Plaintiffs.

I instruct you to disregard this argument.  Defendants were

on notice of sexual harassment by prior complaints even if each

individual Plaintiff did not complain about every incident.

<u>Davis v. United States Postal Service,</u> 142 F.3d 1334 (10th

Cir. 1998); <u>Hirasi-Doi v. U.S. West Communications</u>, 61 F.3d 777

(10th Cir. 1995); Philip J. Pfeiffer, <u>2000 Cumulative Supplement</u>

<u>to Lindemann & Grossman's Employment Discrimination Law</u> 532 & n.

267 (2000).

10.  EMPLOYER ON NOTICE OF "OPEN
     AND NOTORIOUS" HARASSMENT

The knowledge of employees will be attributed to the employer when sexual harassment is so open and notorious that it could hardly be ignored.  The employer cannot turn a blind eye to what is going on in the workplace.  If the harassing environment is open and notorious, the employer is charged with knowledge of it even if it denies knowledge.

It is no defense that the employer did not know that plaintiffs were among the people affected by a hostile environment if it knew that the hostile environment existed.

Zimmerman v. Cook Country Sheriff's Department, 96 F.3d 1017 (7th Cir. 1996); Hirase-Doi v. U.S. Communications, 61 F.3d 777 (10th Cir. 1995); Waltman v. International Paper Co., 875 F.2d 468 (5th Cir. 1989); Hall v. Gus Construction Co., 842 F.2d 1010 (8th Cir. 1988); Murphy v. New York State Executive Dept., 97-CV-1407 (LEK), 2000 U.S. Dist. LEXIS 5287 (N.D.N.Y. 2000); Rivera v. Puerto Rican Home Attendants Services, Inc., 930 F.Supp. 124 (S.D.N.Y. 1996).

11.    PSYCHOLOGICAL
       <u>INJURY NOT REQUIRED</u>

Female employees like Plaintiffs, complaining of a hostile or offensive work environment, need not allege, or prove, that they suffered psychological injury to state a sexual harassment claim.  You may, however, consider the evidence of psychological injury in determining whether the Plaintiffs felt that the workplace was abusive.  You may also consider psychological injury when awarding compensatory damages to the Plaintiffs.

<u>Dawson v. County of Westchester</u>, 373 F.3d 265 (2d Cir. 2004).

12.  WHEN KNOWLEDGE OF HARASSMENT
     <u>IS IMPUTED TO THE EMPLOYER</u>

Under Title VII, an employer need not have actual knowledge of unlawful harassment.  An employer is considered to have notice if the employer - or any of its agents or supervisory employees - should have known of the harassing conduct.  This is called constructive notice.

The knowledge of an agent or employee of an employer will be imputed to the employer when:

(A) the individual who knew was at a sufficiently high level in the company's management to qualify as a stand-in, or proxy, for the company; <u>or</u>

(B) the individual who knew had a duty to act on his or her knowledge and stop the harassment; <u>or</u>

(C) the individual who knew had a duty, whether from official policy, or as a matter of fact, to pass on the information to someone in the company who could do something about it.

<u>Distasio v. Perkin Elmer</u>, 157 F.3d 55 (2d Cir. 1998); <u>Young v. Bayer Corp.</u>, 123 F.3d 672 (7th Cir. 1997); <u>Torres v. Pisano</u>, 116 F.3d 626 (2d Cir.), <u>cert. denied</u>, 522 U.S. 997, 118 S.Ct.

563, 139 L.Ed.2d 404 (1997); <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708 (2d Cir. 1996); <u>Murray v. New York University College of Dentistry</u>, 57 F.3d 243 (2d Cir. 1995); <u>Lee v. Glessing</u>, Civil No. 99-CV-872 (HGM/GLS), 2001 U.S. Dist. LEXIS 5652 (N.D.N.Y. April 19, 2001).

13.  THE FARAGHER-ELLERTH SPECIAL DEFENSE
     DEFENSE IS NOT AVAILABLE TO DEFENDANTS
     IF SIMPSON ENGAGED IN A TANGIBLE
     EMPLOYMENT ACTION

     Defendants cannot escape liability for Gary Simpson's acts,
even if you find that the Plaintiffs failed to take advantage of
the Defendants' procedures for preventing sexual harassment, or
failed to avoid harm otherwise, if you also find that Mr. Simpson
performed a tangible employment action which harmed Plaintiffs.

     A tangible employment action taken by the supervisor becomes
the act of the employer.  Tangible employment actions are the
means by which the supervisor brings the official power of the
enterprise to bear on subordinates.  A tangible employment action
in most cases inflicts direct economic harm, but there is no
requirement that it must always do so.  Withholding and delaying
payment of commissions can be a tangible employment action.

     Min Jin v. Metro. Life Ins. Co., 310 F.3d 84 (2d Cir.,
2002); Presley v. Pepperidge Farm, Inc., 356 F. Supp. 2d 109, 124
(D. Conn. 2005).

14.  THREATS OF PHYSICAL INJURY ARE NOT REQUIRED
     TO CREATE A HOSTILE WORKING ENVIRONMENT

A plaintiff need not endure threats of physical harm to

sustain a hostile work environment claim.

Richardson v. New York State Dept. of Correctional Service,

180 F.3d 426 (2d Cir. 1999); Dunbar v. County of Saratoga, 358 F.

Supp. 2d 115 (N.D.N.Y. 2005).

## CHARGES BEARING UPON STATE LAW CLAIMS

15.  RELATION BETWEEN STATE AND
     FEDERAL ANTIDISCRIMINATION LAWS

     The principles of federal sexual harassment law apply to claims of sexual harassment under the Connecticut Fair Employment Practices Act.

     State v. Commission on Human Rights & Opportunities, 211 Conn. 464, 559 A.2d 1120 (1989).

16.   COMMON LAW DAMAGES

The rule of damages for common law claims is as follows. Insofar as money can do it, the plaintiffs are to receive fair, just and reasonable compensation for all injuries and losses, past and future, which were proximately caused by the defendants' proven negligence. Under this rule, the purpose of an award of damages is not to punish or penalize the defendants for negligence, but to compensate the plaintiffs for the resulting injuries and losses. You must attempt to put the plaintiffs in the same position, as far as money can do it, that they would have been in had the defendants not been negligent.

Our laws impose certain rules to govern the award of damages in any case where liability is proven.  Just as the plaintiffs have the burden of proving liability by a fair preponderance of the evidence, they have the burden of proving entitlement to damages by a fair preponderance of the evidence.  To that end, the plaintiffs must prove both the nature and extent of each particular loss or injury for which they seek to recover damages, and also that the loss or injury in question was proximately caused by defendants' negligence.

You may not guess or speculate as to the nature or extent of the plaintiffs' losses or injuries. Your decision must be based on reasonable probabilities in light of the evidence presented at trial. Injuries and losses for which the plaintiffs should be compensated include those they suffered up to and including the present time and those they are reasonably likely to suffer in the future as a proximate result of the defendants' negligence. Negligence is a proximate cause of a loss or injury if it is a substantial factor in bringing that loss or injury about.

Once the plaintiffs have proved the nature and extent of their compensable injuries and losses, it becomes your job to determine what is fair, just and reasonable compensation for those injuries and losses. There is often no mathematical formula in making this determination. Instead, you must use human experience and apply sound common sense in determining the amount of your verdict.

Plaintiffs who have been injured by the negligence are entitled to be compensated for all physical pain and suffering, mental and emotional suffering, loss of the ability to enjoy life's pleasures, and impairment or loss of function that they prove by a fair preponderance of the evidence to have been

28

proximately caused by the defendants' negligence.  As far as money can compensate the plaintiffs for such injuries and their consequences, you must award a fair, just, and reasonable sum. You simply have to use your own good judgment in awarding damages in this category.

Plaintiffs who have been injured by the negligence of another are entitled to be compensated for mental suffering caused by the negligence in the same manner as they are to be compensated for physical suffering.

State of Connecticut Judicial Department Web Site, Form Instruction 2-362-36, available July 10, 2001, rev. to April 1, 2001.

17.  COMMON LAW NEGLIGENCE DEFINED

Common law negligence is the failure to use reasonable care under the circumstances.  Reasonable care is the care that a reasonably prudent person would use in the same circumstances.

State of Connecticut Judicial Department Web Site, Form Instruction 2-12-3, available July 10, 2001, rev. to Dec. 31, 1998, <u>citing</u> <u>Hoelter v. Mohawk Services, Inc.</u>, 170 Conn. 495, 501 (1976).

30

18.  DIFFERENCE BETWEEN RESPONDEAT
     SUPERIOR AND NEGLIGENT SUPERVISION

The plaintiffs say that defendants are responsible for the wrongful acts of their employee, Gary Simpson, because they were negligent in supervising him.  Defendants argue that they were not negligent in supervision.

Please keep in mind during your deliberations that acting outside the scope of employment is no defense to negligent hiring and supervision.  Whether the harasser acted outside the scope of his employment is a question that depends upon the harasser's conduct.  Whether the defendants were negligent supervising the harasser is a question that depends upon the defendants' own conduct.  You could find defendants negligent in supervision, even though the harasser acted outside the scope of his employment.

18.  DUTY -FORESEEABILITY

A duty to use care exists when a reasonable person, knowing what the defendant here either knew or should have known at the time of the challenged conduct, would foresee that harm of the same general nature as that which occurred here was likely to result from that conduct.  If harm of the same general nature as that which occurred here was foreseeable, it does not matter if the manner in which the harm that actually occurred was unusual, bizarre or unforeseeable.

State of Connecticut Judicial Department Web Site, Form Instruction 2-12-7, available July 10, 2001, rev. to Dec. 31, 1998, citing Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375 (1982); Pisel v. Stamford Hospital, 180 Conn. 314, 332-33 (1980; Orlo v. Connecticut Co., 128 Conn. 231, 237 (1941).

19.   NEGLIGENCE

Negligence is the violation of a legal duty which one person owes to another to care for the safety of that person or that person's property.

State of Connecticut Judicial Department Web Site Form Instruction 2-12-1, available July 10, 2001, rev. to Dec. 31, 1998, citing Sharkey v. Skilton, 83 Conn. 503, 508 (1910).

20.  LEGAL CAUSE

If you find that the defendants were negligent in any of the
ways alleged in the plaintiffs' complaint, you must next decide
if such negligence was a legal cause of any of the plaintiff's
claimed injuries.  Legal cause has two components: cause in fact
and proximate cause.

State of Connecticut Judicial Department Web Site, Form
Instruction 2-292-29, available July 10, 2001, rev. to Dec. 31,
1998, citing Doe v. Manheimer, 212 Conn. 748, 757 (1989) (noting,
for the first time in Connecticut, that "legal cause" is an
essential element of any negligence claim, and specifying that
"causation in fact" and "proximate cause" are the two components
of "legal cause"); 2 Restatement (Second), Torts § 430 (1965)
("In order that a negligent actor shall be liable for another's
harm, it is necessary not only that the actor's conduct be
negligent toward the other, but also that the negligence of the
actor be a legal cause of the other's harm").  Form instruction
12-292-29 goes on to say that the term "a legal cause" is used in
the instruction, instead of the term "the legal cause," because
the former, though not legally required; see Tripp v. Anderson, 1
Conn. App. 433, 438-39 (1984) (so holding with respect to the

term "proximate cause"); better expresses the notion that an injury may have more than one legal cause.  <u>See generally</u>, <u>Fleming v. Garnett</u>, 231 Conn. 77, 85-86 (1994).  To establish liability for negligence, the plaintiff need only prove that a portion of the injuries complained of were legally caused by the defendant's negligence.

21.  NEGLIGENCE - PROXIMATE CAUSE

Negligence is a proximate cause of an injury if it was a substantial factor in bringing the injury about.

State of Connecticut Judicial Department Web Site, Form Instruction 2-312-31, available July 10, 2001, rev. to Dec. 31, 1998, citing Pilon v. Anderson, 112 Conn. 300, 301 (1930) ("The meaning of the term 'substantial factor' is so clear as to need no expository definition . . . . Indeed, it is doubtful if the expression is susceptible of definition more understandable than the simple and familiar words it employs"); Mahoney v. Beatman, 110 Conn. 184, 185 (1929) (first formally adopting the substantial factor test as the test for proximate cause in Connecticut); accord, Mather v. Griffin Hospital, 207 Conn. 125, 130 (1988) (most recently quoting Pilon and its progeny for the foregoing proposition).

22.  NEGLIGENCE - CAUSE IN FACT

A cause in fact is an actual cause.  The test for cause in fact is, simply, "Would the injury have occurred were it not for the defendant's negligence?"  If your answer to this question is "yes," then the defendant's negligence was not a cause in fact of the plaintiff's injuries.

State of Connecticut Judicial Department Web Site, Form Instruction 2-302-30, available July 10, 2001, rev. to Dec. 31, 1998, citing Doe v. Manheimer, 212 Conn. 748, 757 (1989) ("The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct"); Shaughnessy v. Morrison, 116 Conn. 661, 666 (1933) ("An act or omission can hardly be regarded as the cause of an event which would have happened if the act or omission had not occurred").

23.  NEGLIGENT SUPERVISION

An employer may be held liable for the wrongful acts of an employee, even those that are criminal or violent, and even those that occurred after working hours, or away from the workplace, if they resulted from the negligence of the employer in supervising that employee.

Negligent supervision looks to failure to exercise ordinary care in supervising an employee.  You should therefore look to the situation as it existed when defendants were supervising the harasser.  Did defendants negligently fail to see what was happening when an employer using due care would have seen what was happening?  Did defendants know that there were problems, or likely to be problems, and fail to adequately supervise when a reasonable person, in the employer's shoes, would have done so?

To find defendants liable you must find that the harm was foreseeable.  Would the ordinarily prudent man, in the position of the defendants, knowing what they knew or should have known, anticipate that harm of this general nature was likely to result?  You do not need to find that defendants should have known that this exact harassment would take place, but only that some harm of that general kind was likely to occur.

If you find that the harm done to the plaintiffs was emotional harm, to hold defendants liable for that emotional harm due to their negligent supervision you must find, first, that defendants knew or should have known that their failure to supervise would likely cause emotional distress to plaintiffs or people like them, and second, that such emotional distress, if caused, wold be quite serious, so serious that the victims might get sick from distress.

Please note that you are not required to find that defendants anticipated, or should have anticipated, the exact harm done, but only the general kind of harm likely to be done. Further, you are not required to find that plaintiffs actually did get sick from emotional distress, but only that defendants should have anticipated that such emotional distress would be very serious, so serious that the victims might get sick over it.

Whether a particular form or approach to supervision was negligent depends in part on the harm that might be caused in a particular situation.

Knowing failure to stop an employee from making hurtful remarks, or otherwise harassing employees, can constitute negligent failure to supervise.

To find the defendants liable for damages for negligent supervision you must, of course, find that the negligence directly caused harm to the plaintiffs.

You may award the plaintiffs compensatory damages if you find that the defendants were negligent. If you find that the defendants were grossly negligent, or worse, reckless, not caring about the harm that might be done as a result of their actions, then you may in addition award punitive damages on this claim.

<u>Nutt v. Norwich Roman Catholic Diocese</u>, 56 F.Supp. 2d 195 (D. Conn. 1999); <u>Beach v. Jean</u>, 46 Conn. Supp. 252, 746 A.2d 228 (2000); <u>Gutierrez v. Thorne</u>, 13 Conn. App. 493, 537 A.2d 527 (1988); <u>Pattavina v. Mills</u>, CV960080257S, 2000 Conn. Super. LEXIS 2241 (Aug. 23, 2000); <u>Doe v. TVCCA</u>, X04CV 93011538 S, 2000 Conn. Super. LEXIS 465 (Feb. 23, 2000); <u>Brunelle v. Reuters Analytics</u>, No. CV 970566808S, 1998 Conn. Super. LEXIS 357 (Jan. 28, 1998); <u>Doe v. X Corp.</u>, CV 93-0351397, 1997 Conn. Super. LEXIS 273 (Jan. 30, 1997).

24.  STATE AND FEDERAL PUNITIVE DAMAGES ISSUES

I have instructed you that defendants may not be subjected to a punitive damages award under federal law if they prove that they attempted in good faith to comply with the federal civil rights laws.  Proof by defendants that they attempted in good faith to comply with the federal civil rights laws is not, however, a defense to punitive damages under Connecticut state law.  As you know, plaintiffs here have made claims under both the Connecticut Fair Employment Practices Act and Connecticut common law.  I instruct you to take all factors bearing on wanton, wilful or reckless conduct into account, not just good faith attempts to comply with the federal civil rights laws, when you determine whether punitive damages under state law should be imposed upon defendants for wanton, wilful, reckless or grossly negligent conduct.

Thompson v. American Eagle Airlines, Inc., 2000 U.S. Dist. LEXIS 14932(S.D.N.Y. 2000).

THE PLAINTIFFS
DEBRA COSENTINO, ET AL


By: _____
     WILLIAM B. BARNES, ESQ.
          (CT00268)
     Rosenstein & Barnes
     P.O. Box 687
     1100 Kings Hwy. East,
     Fairfield, CT 06824
     (203) 367-7922
     E-Mail wbarnes@rosenbar.com

42